UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DANIELLE C. HENDRICKS,

                     Plaintiff,

                                             6:22-CV-1398
v.                                             (LEK/ML)

UTICA POLICE DEP'T; UTICA CITY
CRIMINAL COURT; JUDGE SABB,
Criminal Court Judge; ELIZABETH/
ALYSSA, Utica Public Defender Office;
and FRANK, Utica Public Defender,

                     Defendants.

_____

APPEARANCES:                         OF COUNSEL:

DANIELLE C. HENDRICKS
  Plaintiff, *Pro Se*
1402 West Street, Room 5
Utica, New York 13502

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>ORDER and REPORT-RECOMMENDATION</u>

      The Clerk has sent a *pro se* complaint in the above captioned action together with an

amended application to proceed *in forma pauperis* and a motion for appointment of counsel filed

by Plaintiff Danielle C. Hendricks ("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 10, 12.)

For the reasons discussed below, I (1) grant Plaintiff's amended *in forma pauperis* application

(Dkt. No. 10), (2) deny Plaintiff's motion for appointment of counsel (Dkt. No. 12), and (3)

recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety in part (1) with

leave to amend, and (2) without leave to amend.

I.      **BACKGROUND**

On December 28, 2022, Plaintiff commenced this action by filing a *pro se* Complaint

against defendants Utica Police Department, Utica City Criminal Court, Judge Sabb,

Elizabeth/Alyssa, and Frank (collectively "Defendants").  (Dkt. No. 1.)  On January 3, 2023,

United States District Judge David N. Hurd directed that the case be administratively closed

because Plaintiff failed to properly commence the action.  (Dkt. No. 2.)  Judge Hurd directed that

if Plaintiff desired to pursue the action, she must, within 30 days, either pay the filing fee or

submit a completed and signed *in forma pauperis* ("IFP") application.  (*Id.*)

On March 3, 2023, Plaintiff filed a motion for leave to proceed IFP together with an

inmate authorization form.  (Dkt. Nos. 3, 4.)  On March 3, 2023, Judge Hurd directed the Clerk

of the Court to reopen the action and restore it to the Court's active docket.  (Dkt. No. 5.)  On

March 7, 2023, United States Magistrate Judge Therese Whiley Dancks denied Plaintiff's motion

for leave to proceed IFP because it was incomplete and unsigned.  (Dkt. No. 6.)  Judge Dancks

directed Plaintiff to, within thirty days, file a signed and completed IFP application or the matter

would be administratively closed without further order.  (*Id.*)

On April 18, 2023, Plaintiff filed an amended IFP application.  (Dkt. No. 10.)  On April

20, 2023, Plaintiff filed a motion to appoint counsel.  (Dkt. No. 12.)  On May 17, 2023, Judge

Hurd reassigned this action to Senior United States District Judge Lawrence E. Kahn and the

undersigned.  (Dkt. No. 13.)

The Complaint alleges[1] that while incarcerated at the Oneida County Jail, Plaintiff was

sexually and verbally harassed and denied showers for days.  (Dkt. No. 1 at 4.)  In addition,

---

[1]      The Complaint on the docket is illegible.  However, the undersigned reviewed the
original paper Complaint filed with the Court.

Plaintiff alleges that she was arrested on September 22, 2022, but was not provided with the charge (unauthorized use of a vehicle) against her until October 22, 2022, when she was brought to Utica City Court before Defendant Sabb.  (*Id.*)  Plaintiff alleges that Defendant Sabb "added a bail on top of a [$]2,000 bail."  (*Id.*)

The Complaint alleges that the body camera worn by the arresting officer will show that Officer Fredrick forced a man from a car dealership to "file charges" against Plaintiff after he initially declined.  (Dkt. No. 1 at 4.)  Plaintiff alleges that the police report submitted does not coincide with the body camera.  (*Id.*)

Based on these factual allegations Plaintiff appears to assert the following four claims: (1) a claim that her right to due process was violated pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (2) a claim that her First Amendment rights were violated; (3) a claim that her Sixth Amendment rights were violated by the imposition of bail; and (4) a claim that her *Miranda* rights were not read to her.  (Dkt. No. 1 at 5.)  As relief Plaintiff requests that "Officer be found guilty for crimes he committed . . . [and] Judge Sabb be found [g]uilty."  (*Id.*)

## II.    PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's

---

[2]    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making *in forma pauperis* status available to any litigant

amended *in forma pauperis* application (Dkt. No. 10), the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's amended application to proceed *in forma pauperis* is granted.[3]

## III.    LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

---

who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]      Plaintiff is reminded that, although her application to proceed *in forma pauperis* has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A.    Claims Against Defendant Sabb

#### 1.    Request for Monetary Relief

To the extent that Plaintiff asserts any claims pursuant to § 1983 seeking monetary damages against Defendant Sabb—who acted as the criminal law judge—those claims are barred under the doctrine of judicial immunity.  Under this doctrine, judges are absolutely immune from a suit seeking damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).  Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature."  *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).  "[E]ven allegations of bad faith or malice cannot overcome judicial immunity."  *Bliven*, 579 F.3d at 209.  This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation."  *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).  Further, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction."  *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10

(describing actions that are judicial in nature).  However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiff asserts claims arising from the efforts of Defendant Sabb, in his capacity as a New York State criminal court judge, to address criminal charges pending against Plaintiff. Plaintiff fails to allege facts plausibly suggesting that Defendant Sabb acted beyond the scope of his judicial responsibilities.

As a result, to the extent that the Complaint seeks monetary damages against Defendant Sabb, I recommend that it be dismissed because Defendant Sabb is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i).  *Mills v. Fischer*, 645 F. 3d 176, 177 (2d Cir. 2011) (claims dismissed because of judicial immunity are frivolous for the purpose of the IFP statute, 28 U.SC. § 1915).

### 2.      Request for Declaratory/Injunctive Relief

To the extent that Plaintiff seeks criminal charges be brought against, or a criminal investigation into the actions taken by, Defendant Sabb, I recommend that those claims be dismissed.

There is no private right of action to enforce state or federal criminal statutes.  *See generally Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, 20-CV-1337, 2021 WL 3518439, at *5 (N.D.N.Y. Apr. 13, 2021) (Hummel, M.J.) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted by* 2021 WL 3204860 (N.D.N.Y. July 29, 2021) (McAvoy, J.);

*McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013)

(D'Agostino, J.) (holding that "there is no private right of action to enforce either state or federal

criminal statutes.").

      As a result, I recommend that Plaintiff's claims against Defendant Sabb be dismissed.

      **B.**     **Claims Against Defendant Utica City Criminal Court**

      Plaintiff's claims against Defendant Utica City Criminal Court are not plausible because

Defendant Utica City Criminal Court is an entity that does not have an independent legal

identity. *See Adames v. Cnty. of Suffolk Court*, 18-CV-4069, 2019 WL 2107261, at *2

(E.D.N.Y. May 14, 2019) ("Plaintiff's Section 1983 claims against the Jail, the County Court,

and DA's Office are not plausible because none of these entities have independent legal

identities.").

      It is well-established that "under New York law, departments that are merely

administrative arms of a municipality do not have a legal identity separate and apart from the

municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F.

Supp. 2d 463, 477 (E.D.N.Y. 2002); *see* N.Y. Const. Art. 6, § 1(a) ("The unified court system for

the state shall also include the district, town, city and village courts outside the city of New York,

as hereinafter provided."); *see also Trahan v. Suffolk Cnty. Corr. Fac.*, 12-CV-4353, 2012 WL

5904730, *3 (E.D.N.Y. Nov. 26, 2012) (dismissing claims against the Suffolk County Jail

because it "is an administrative arm of Suffolk County, without an independent legal identity.");

*see also Gollomp v. Spitzer*, 568 F.3d 355, 366-67 (2d Cir. 2009) ("[E]very court to consider the

question of whether the New York State Unified Court System is an arm of the State has

concluded that it is."); *Woodward v. Office of Dist. Atty.*, 689 F. Supp. 2d 655, 658 (S.D.N.Y.

2010) ("[T]he District Attorney's Office is not a suable entity[.]").  As a result, Plaintiff's Section

1983 claims against Defendant Utica City Criminal Court are not plausible and I recommend that they be dismissed without leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(b).

Given Plaintiff's pro se status and affording his Complaint a liberal construction, the undersigned has considered whether Plaintiff has alleged a plausible Section 1983 claim against New York State—because Defendant Utica City Court "is unquestionably an 'arm of the State'"—and finds that she has not.  *Gollomp*, 568 F.3d at 366.

New York State is immune from suits pursuant to 42 U.S.C. § 1983 seeking either legal or equitable relief, under the Eleventh Amendment.  *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984); *see Ognibene v. Niagara Cnty. Sheriff's Dep't*, 03-CV-0678E, 2003 WL 2443989, at *3 (W.D.N.Y. Dec. 1, 2003) ("To the extent the plaintiff names various state courts as defendants and seeks either legal or equitable relief against them under § 1983, they are immune from such suit under the Eleventh Amendment.").  As an agency or arm of the State of New York, the court is immune from suit under the Eleventh Amendment.  *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *see also Mercado v. Town of Goshen*, 20-CV-5399, 2020 WL 5210949, at *3 (S.D.N.Y. Aug. 28, 2020) ("Plaintiff sues the 'Orange County Court,' which is part of the New York State Unified Court System.  The Court therefore dismisses Plaintiff's § 1983 claims against this Defendant under the doctrine of Eleventh Amendment immunity and because these claims are frivolous."); *Curto v. Palisades Collection, LLC*, 07-CV-529S, 2008 WL 11357852, at *4 (W.D.N.Y. Mar. 10, 2008) (dismissing the plaintiff's claims against the "New York State Unified Court System, 8th Judicial District Buffalo City Court" as barred by the Eleventh Amendment); *Saint-Fleur v. City of New York,* 99-CV-10433, 2000 WL 280328, *2 (S.D.N.Y., Mar. 14, 2000) (collecting cases) ("State courts, as arms of the State, are entitled to Eleventh

Amendment immunity from suit in federal court."); *Fields v. Walthers,* 94-CV-1659, 1997 WL 204308 at *2 (N.D.N.Y. April 5, 1997) (Pooler, J.) ("For Eleventh Amendment purposes, governmental entities of the state that are considered 'arms of the state' receive Eleventh Amendment immunity.").

As a result, I recommend that Plaintiff's claims against Defendant Utica City Criminal Court be dismissed.

### C.   Claims Against Defendants Elizabeth/Alyssa and Frank

Plaintiff's claims against Defendants Elizabeth/Alyssa and Frank, in their capacities representing Plaintiff against criminal charges, should be dismissed for failure to state a claim upon which relief may be granted.

"[I]t is axiomatic that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Flores v. Levy*, 07-CV-3753, 2008 WL 4394681, at *7 (E.D.N.Y. Sept. 23, 2008) (citing, *inter alia*, *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983")); *Benjamin v. Branden*, 21-CV-4927, 2022 WL 1092681, at *2 (E.D.N.Y. Apr. 12, 2022) (collecting cases). "Section 1983 'was enacted to redress civil rights violations by persons acting under color of State law' and should not be used by clients disappointed with the performance of their attorneys." *Brooks v. New York State Supreme Court*, 02-CV-4183, 2002 WL 31528632, at *3 (E.D.N.Y. Aug. 16, 2002) (citation omitted)).

As a result, I recommend that Plaintiff's claims against Defendants Elizabeth/Alyssa and

Frank, for their actions representing Plaintiff in the criminal proceeding, be dismissed for failure

to state a claim upon which relief may be granted.[4]  28 U.S.C. § 1915(e)(2)(B)(ii).

### D.    Claims Against Utica Police Department

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't*

*of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal . . .  department does not have the capacity

to be sued as an entity separate from the municipality in which it is located."  *White v. Syracuse*

*Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.)

(citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.);

*Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y.

Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y.

1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the

municipality and has no separate legal existence.  Therefore, municipal departments like the

Department of Social Services are not amenable to suit and no claims lie directly against the

Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28,

---

[4]    The undersigned also notes that the Complaint lists the names of Defendants
Elizabeth/Alyssa and Frank in the caption, but fails to again name or assert allegations against
them.  *See Johnson v. Gonzalez*, 14-CV-0745, 2015 WL 1179384, at *6 (N.D.N.Y. Mar. 13,
2015) (Kahn, J.) (dismissing the claims against a defendant where the complaint lists the
defendant's "name in the caption, but fails to again name or assert allegations against him.");
*Serrano v. New York State Dep't of Envtl. Conservation*, 12-CV-1592, 2013 WL 6816787, at *15
(N.D.N.Y. Dec. 20, 2013) (D'Agostino, J.) (citing *Jaffer v. Chemical Bank*, 93-CV-8459, 1994
WL 392260, at *3 (S.D.N.Y. July 26, 1994) (holding that "[w]hen a complaint's caption names a
defendant but the complaint does not indicate that the named party injured the plaintiff or
violated the law, the motion to dismiss must be granted")) (dismissing the plaintiff's claims
against two defendants who were listed as parties in the complaint and in the caption, but not
elsewhere in the complaint).

2019) (Suddaby, C.J.).  Thus, Defendant Utica Police Department is not proper a party, which would be amenable to suit.

To the extent that the Complaint may be interpreted as asserting a claim against the City of Utica, Plaintiff has failed to state a claim upon which relief may be granted.

A municipality may only be named as a defendant in certain circumstances.  In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983.  A municipality may not be held liable solely because it employs a tortfeasor.  *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).  Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury.  *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation.  *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).  Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees.  *Connick*, 563 U.S. at 51.  However, municipal liability is most tenuous when a claim turns on the failure to train.  *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")).  To satisfy the statute, a municipality's failure to train its employees

12

must amount to "'deliberate indifference to the rights of persons with whom the [untrained

employees] come into contact.'"  *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388

(1989)).

There is no basis for municipal liability alleged in the Complaint.  Plaintiff essentially

complains of a single incident, during which an officer or officers employed by the Utica Police

Department did not act properly.  There is no indication that Plaintiff can assert a policy or

custom which would support municipal liability based on these facts.  In addition, none of

Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons

who would come into contact with employees of Defendant Utica Police Department.

As a result, to the extent that the Complaint may be read to allege a claim against the City

of Utica, I recommend that it be dismissed at this time.  *See Flagg v. NYS Division of Parole*, 19-

CV-0886, 2019 WL 5002215, at \*5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v.

Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals

below the policy-making level is insufficient to state a *Monell* claim."), *report and

recommendation adopted by*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

## V.      OPPORTUNITY TO REPLEAD

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se*

litigant without granting leave to replead at least once "when a liberal reading of the complaint

gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

justice so requires.").  An opportunity to replead is not required, however, where "the problem

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding*

*L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above with respect to Plaintiff's claims pursuant to 42 U.S.C. § 1983 against (1) Defendant Sabb seeking monetary damages, and (2) Defendant Utica City Criminal Court.  *See Britt v. Doe*, 22-CV-0692, 2022 WL 16579207, at *9 (N.D.N.Y. Oct. 13, 2022) (Lovric, M.J.) (recommending dismissal without prejudice and without leave to amend, the plaintiff's claims against defendants who are immune from suit), *report and recommendation adopted by*, 2022 WL 16571391 (N.D.N.Y. Nov. 1, 2022) (Sharpe, J.).  In addition, a better pleading cannot cure the deficiencies related to Plaintiff's request to pursue criminal charges against Defendant Sabb.  As a result, I recommend that these claims be dismissed without leave to replead.

However, it is not clear whether a better pleading would permit Plaintiff to assert a cognizable claim pursuant to 42 U.S.C. § 1983 against Defendant Utica Police Department,[6]

---

[5]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

[6]     Construed as against the City of Utica.

Elizabeth/Alyssa, and Frank.  Out of deference to Plaintiff's *pro se* status, I recommend that

Plaintiff be granted leave to amend the Complaint with respect to those claims.

If Plaintiff chooses to avail herself of an opportunity to amend, such amended pleading

must set forth a short and plain statement of the facts on which she relies to support any legal

claims asserted.  Fed. R. Civ. P. 8(a).  In addition, the amended complaint must include

allegations reflecting how the individuals named as Defendants are involved in the allegedly

unlawful activity.  Finally, Plaintiff is informed that any amended complaint will replace the

existing Complaint, and must be a wholly integrated and complete pleading that does not rely

upon or incorporate by reference any pleading or document previously filed with the Court.  *See*

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that

an amended complaint ordinarily supersedes the original, and renders it of no legal effect."

(internal quotation marks omitted)).

## VI.    PLAINTIFF'S MOTION TO APPOINT COUNSEL

Plaintiff has also submitted a request for appointment of counsel.  (Dkt. No. 12.)

As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of

counsel in a civil case."  *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62,

68 (2d Cir. 2011) (citations omitted).  Courts cannot utilize a bright-line test in determining

whether counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114

F.3d 390, 392-93 (2d Cir. 1997).  Instead, a number of factors must be carefully considered by

the court in ruling upon such a motion.  As a threshold matter, the court should ascertain whether

the indigent's claims seem likely to be of substance.  A motion for appointment of counsel may

be properly denied if the court concludes that the plaintiff's "chances of success are highly

dubious." *Leftridge*, 640 F.3d at 69.  If the court finds that the claims have substance, the court

should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting
> evidence implicating the need for cross-examination will be the major
> proof presented to the fact finder, the indigent's ability to present the case,
> the complexity of the legal issues and any special reason in th[e] case why
> appointment of counsel would be more likely to lead to a just
> determination.

*Terminate Control Corp.*, 28 F.3d at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62

(2d Cir. 1986)).  This is not to say that all, or indeed any, of these factors are controlling in a

particular case.  Rather, each case must be decided on its own facts.  *Velasquez v. O'Keefe*, 899

F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

In the present matter, the Court has recommended dismissal of the action.  As such, the

Court cannot find that Plaintiff's claims are likely to be of substance.  Plaintiff's motion (Dkt.

No. 12) is therefore denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No.

10) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 12) is **DENIED**

without prejudice; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND**

**WITHOUT LEAVE TO AMEND** the Complaint (Dkt. No. 1) to the extent that (1) it seeks

monetary relief from Defendant Sabb, and (2) asserts claims against Defendant Utica City

Criminal Court, who are immune from such relief pursuant to 28 U.S.C. § 1915(e)(2)(B); and it

is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** the Complaint (Dkt. No. 1) to the extent that it seeks to pursue criminal charges against Defendant Sabb, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO AMEND** the Complaint (Dkt. No. 1) to the extent that it alleges claims pursuant to 42 U.S.C. § 1983 against Defendants Utica Police Department, Elizabeth/Alyssa, and Frank, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: August 30 , 2023
      Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[7]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[8]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a

---

Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day
that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 19 of 157

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen,
Resident and Taxpayer of Town of Stuyvesant, Plaintiff,

v.

TOWN OF STUYVESANT, COLUMBIA CTY.,
N.Y.; and Valerie Bertram, Individually and as
Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box
40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI,
ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP,
Attorneys for Defendants, 9 Washington Square, Suite 201,
P.O. Box 15085, Albany, NY 12212-5085.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action
filed by William Pflaum ("Plaintiff") against the Town of
Stuyvesant ("Town") and Valerie Bertram, Town Supervisor
("Bertram") (collectively, "Defendants"), is Defendants'
motion for summary judgment pursuant to Fed. R. Civ. P. 56.
(Dkt. No. 59.) For the reasons set forth below, Defendants'
motion is granted.

**I. RELEVANT BACKGROUND**

  **A. Plaintiff's Complaint**
As a result of the Court's prior decisions (Dkt. Nos. 17,
26), Plaintiff's sole remaining claim in this action is his
First Amendment retaliation claim. More specifically, as
articulated in his Complaint (which was drafted by Plaintiff,
*pro se*, and therefore must be construed with special
solicitude), that claim alleges three separate ways he was
retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges
of ethical violations against Defendant Bertram, she (a)
"collaborated with and supported" the Town's Fire Chief
to deny and/or threaten to deny fire protection to Plaintiff,
(b) "supported and encouraged" various Town employees
to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his
business," and (c) "supported and encouraged" the Town
Assessor's "campaign to intimidate Plaintiff by linking [his]
political speech [with his] real estate assessment." (Dkt. No.
1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing
columns on his Internet blog regarding corruption among the
Town's public officials, the Town filed false criminal charges
against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for
criticizing Bertram, the Town Assessor, and the Town, the
Town Assessor used his authority to raise taxes in order to
intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

  **B. Defendants' Motion for Summary Judgment**
  **\*2** In their motion for summary judgment, Defendants
request the dismissal of Plaintiff's Complaint in its entirety.
(Dkt. No. 59.) In support of their motion, Defendants make
the following four arguments. First, Defendants argue that
there was no adverse action against Plaintiff in that there
was no actual chilling of Plaintiff's First Amendment speech
or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of
Law].)

Second, Defendants argue that, in any event, any such adverse
action was not motivated or substantially caused by Plaintiff's
First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was
not personally involved in any deprivation of fire protection
services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled
to qualified immunity. (*Id.*)

  **C. Plaintiff's Opposition Memorandum of Law**
Generally construed, Plaintiff makes five arguments in
opposition to Defendants' motion. First, Plaintiff argues that
he engaged in protected speech by creating an Internet blog
on which he publicly criticized Town officials and exposed

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 20 of 157

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law
In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a) (3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord, Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also* 📙 *N.Y. Teamsters Conference Pension &*

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 21 of 157

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

*Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting ⚑ *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendant's factual assertions); ⚑ *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

### 2. Undisputed Material Facts

**\*4** For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking

from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 22 of 157

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was

no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be

Case 6:22-cv-01398-LEK-ML Document 14 Filed 08/30/23 Page 23 of 157

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug.

Case 6:22-cv-01398-LEK-ML Document 14 Filed 08/30/23 Page 24 of 157

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at *5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two[3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit.[4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011, and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 25 of 157

dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus.[5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 26 of 157

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

# Footnotes

1    Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2    The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3    As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4    The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5    For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ...

Case 6:22-cv-01398-LEK-ML  Document 14  Filed 08/30/23  Page 27 of 157

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3518439
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,

v.

CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 04/13/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, 841 Western Avenue, Apartment 2A, Albany, New York 12203, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

#### I. In Forma Pauperis

**\*1** Plaintiff pro se Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. See Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint. Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty Against Adethia Keshia Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

The Court has reviewed plaintiff's IFP application and determines that she financially qualifies to proceed IFP for purposes of filing only. [1]

#### II. Legal Standards

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting her to proceed with her action. As plaintiff is representing himself, the court must afford plaintiff special solicitude; thus, it is to consider her claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir. 2010) (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

**\*2** Further, Rule 10 of the Federal Rules provides in pertinent part that:

[a] party must state its claims or defenses in numbered paragraphs,

each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### III. Initial Review

#### A. Plaintiff's Complaint

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, et seq. On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." Id.

Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. Included with the exhibits to the complaint is an Equal Employment Opportunity Commission ("EEOC") dismissal notice [2] noting that plaintiff's EEOC charge was not timely filed and the EEOC was closing its file. Dkt. No. 1-1. The remainder of the exhibits appended to the complaint appear to be an 80-page letter relating to apparent visa fraud that plaintiff sent to The US Department of Justice; the United States Department of Homeland Security, Immigration and Customs Enforcement; and the Federal Bureau of Investigation; as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff. Dkt. No. 1-2 at 81-82.

**\*3** The supplement plaintiff filed on March 15, 2021, is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. Id. The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State

incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021, appear to be letters plaintiff sent to the New York State Department of Labor, United States Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." See dkt. no. 7.

Plaintiff's complaint discusses Allison Carolyn Rattray, the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. Id. Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill the employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." Id. at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," force plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. Id. at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom stables has visual and audio devices inside of them." Id. at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. See generally Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have men from any where have sex with The Plaintiff because The Plaintiff was born on the day the crucifixion was

celebrated, that is Easter and Good Friday.

Id. at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC FirstCarribean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

Id. at 14. Plaintiff asks the Court for

As for plaintiff's causes of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

**\*4** Dkt. No. 1 at 69. As for a second cause of action is

employment discrimination – I chose a career path to be an Attorney-At-Law. Allison Carolyn Rattray (maiden name Smith) my (former) then manager at CIBC had be fired; told me that (1) I am not worthy to be an Attorney-at-Law because of my Race (2) I was not worthy to be in the same Profession as her. She has been defaming my character ever since.

Id. at 70. Third cause of action is listed as employment discrimination - compensation: denied increases in my salary verbally communicated to be by Ms. Cherlyn Blackman my Senior Manager of 3% in 2004; Denied Promotion communicated to be by my Human Resources Regional Director, Jerime Cjnttihs-Bell; denied fringe benefits that accompanied my five (5) CIBC Achievers awards – my salary was split and part paid to my aunt." Id. In the prayer for relief, plaintiff requests:

> (1) an Injunction(s) for Criminal Indictment(s) of Allison Carolyn (Smith) Rattray, Corporate Secretary and Legal Counsel CIBC for her forced Prostitution of The Plaintiff and Others; (2)An Injunction to prevent and stop all Prostitution or abuse of The Plaintiff; (3) Restitution(s) by CIBC for lost Incomes and fringe benefits[; and] (4) Job Reference letter from CIBC and an apology and my land Title Deed.

Id. at 71.

**B. Analysis**

First, plaintiff's complaint fails to meet the pleading requirements of Rules 8 and 10. Her complaint does not present a short and plain statement of the claim showing that she is entitled to relief. FED. R. CIV. P. 8. Further, she does not present her claims in numbered paragraphs, limited to one "circumstance" per paragraph. FED. R. CIV. P. 10. Instead, her complaint is a lengthy, disjointed, difficult to follow narrative. Her complaint clearly "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales, 167 F.R.D. at 355.

Second, plaintiff's claims, insofar as she seeks to bring them under Title VII are (1) barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII. [3] To the extent plaintiff suggests that she was discriminated against in violation of Title VII insofar as she was told that she was inadequate due to her race or denied promised promotions because of her race, dkt. no. 1 at 70, even if plaintiff could provide additional factual support and clarification for the alleged discrimination, plaintiff provides that the alleged discrimination occurred as early as 1995 until 2004, and would be beyond the statute of limitations of Title VII. Indeed, plaintiff's entire employment with defendant occurred outside of the statute of limitations as she suggests that her employment began in January 1995 and that she was terminated in March 2009. Dkt. No. 1 at 52-53. Thus, the complained-of actions occurred more than 300 days prior to when plaintiff appears to have filed a complaint with the EEOC. See Gunning v. New York State Just. Ctr. for Prot. of People with Special Needs, No. 1:19-CV-1446 (GLS/CFH), 2020 WL 5203673, at *3 (N.D.N.Y. Sept. 1, 2020) ("Title VII's statute of limitations bars claims based upon events that occurred more than 300 days prior to filing a charge of discrimination with a state or local employment agency, and, therefore, "[a] plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e–5(e)(1).") (quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004)). The undersigned notes that plaintiff does not indicate when she filed a complaint with the EEOC. However, she submits the EEOC's dismissal letter, dated September 10, 2020, which states that plaintiff did not timely file a complaint with the EEOC. Dkt. No. 1-1. As plaintiff likely filed her EEOC complaint in 2020, [4] appears to have been last employed by defendant in 2009, and complains of alleged employment discrimination occurring as early as 1995, her filing of an EEOC complaint in 2020 is clearly more than 300 days after the alleged discrimination occurred. Thus, any

cognizable Title VII claims arising out of her employment with defendant are barred by the statute of limitations.

**\*5**  However, even if the statute of limitations was not an issue, plaintiff's claims still must fail because plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails establish this Court's jurisdiction under federal question or diversity jurisdiction. [5] Plaintiff makes several disjointed, confusing claims about being sold as a prostitute against her will by defendant's employees and other nonparties, defendant's employees and others murdering innocent people, defendant's employees drinking plaintiff's blood, and being stalked and prostituted by various officials from Jamaica and employees of defendant's company. See generally dkt. nos. 1, 4, 6, 7. Plaintiff makes several allegations against her former supervisor, Ms. Rattray, and says the various physical wrongdoings Ms. Rattray committed against plaintiff were all due to "The employment agreement between The Plaintiff and CIBC FirstCarribean Jamaica." Dkt. No. 1 at 60-61. Although plaintiff's submissions seem to suggest that she was employed by defendant at some point in time, and that a supervisor told her she could not be a lawyer due to her race and denied promised salary increases for unclear reasons, nothing about the factual allegations pleadings suggest that she presents a valid employment discrimination claim under Title VII or any other statute.

The Court is at a loss as to how the allegations in the complaint relate to a valid employment discrimination claim or any valid legal claim. Plaintiff presents a difficult to comprehend series of allegations against various individuals – many of whose connections to her apparent former employer is difficult, if not impossible, to comprehend – who she alleges forced her into prostitution, performed plastic surgeries on her against her will, installed "spying devices" into plaintiff's body, forced her to undergo various injections, and involved plaintiff in murder scheme that is somehow related to her Easter birthday. See Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained allegations that appear to involve Ms. Rattray and others, such as "an abuse of a veteran of the United States Army by the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff submits dozens of pages of exhibits and supplements that appear to relate to cases filed in other courts, orders of protection obtained in other courts, unemployment insurance issues, police reports, and documents sent to various federal agencies. See dkt. nos. 4, 5, 6, 7. The relevance of this deluge of documents is entirely unclear.

Further, to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction. See generally 🚩 Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); McFadden v. Ortiz, 5:12-CV-1244(MAD/ATB), 2013 WL 1789593 (N.D.N.Y. Apr. 26, 2013) (noting that there is no private right of action to enforce either state or federal criminal statutes).

Next, plaintiff files an "emergency motion" for the Death Penalty, [6] which appears to ask the United States Supreme Court to enforce the death penalty against various individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a lease [sic]," and other similar allegations. See Dkt. No. 5. As discussed above, this Court does not have the authority or jurisdiction to sua sponte impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial.

**\*6**  Generally, in cases involving pro se plaintiffs, a court should not dismiss a complaint without granting leave to amend "at least once" "when a liberal reading of the complaint gives any indication that a valid claim might be stated." 🚩 Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." 🚩 Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also 🚩 Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be

dismissed with prejudice."). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may sua sponte dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint."). Thus, although the Court must show special solicitude to pro se litigants, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and is to exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.

Even if, arguendo, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." See Bennett v. Mnuchin, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that

"describ[e] fantastic or delusional scenarios."); Brown v. New York State Educ. Dept., 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing pro se plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be granted for purposes of filing only; and it is

**RECOMMENDED**, that plaintiff's complaint (dkt. no. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be **DISMISSED**; and it is further

**RECOMMENDED**, that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be **DISMISSED AS MOOT**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [7]

**All Citations**

Slip Copy, 2021 WL 3518439

## Footnotes

1       Plaintiff is still financially responsible for any other fees or costs she may incur.

2       It appears that the EEOC dismissal notice is dated September 10, 2020. Dkt. No. 1-1.

3       A plaintiff establishes "a prima facie case of discrimination by showing that (1) he is a member of a protected
        class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an
        adverse employment decision or action; and (4) the decision or action occurred under circumstances giving
        rise to an inference of discrimination based on his membership in the protected class." Dawson v. Bumble
        & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) overruled on other grounds Zarda v. Altitude Express, Inc.,
        883 F.3d 100 (2d Cir. 2018).

4       As the EEOC dismissal notice is dated September 10, 2020, the Court makes the reasonable inference that
        plaintiff filed her EEOC complaint some time in 2020.

5       Even if this Court were to assess this case as seeking to proceed under diversity jurisdiction pursuant to 28
        U.S.C. § 1332(a), the plaintiff has also failed to set forth a cognizable state law claim. Scherer v. Equitable
        Life Assur. Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003) (quoting 28 U.S.C. § 1332(a))
        (noting that diversity jurisdiction "confers original jurisdiction on the federal district courts with respect to 'all
        civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and
        costs, and is between ... citizens of different States.' ").

6       This "emergency motion" notes that it is presented to the United States Supreme Court, but contains a caption
        including this Court. It is unclear if this is a document plaintiff intends to submit before this Court, or before
        the United States Supreme Court. See dkt. no. 5.

7       If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3)
        additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from
        the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV.
        P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline
        is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

**End of Document**                                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3204860
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,

v.

CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 07/29/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, Albany, NY, Pro Se.

### DECISION and ORDER

THOMAS J. McAVOY, Senior United States District Judge

### I. INTRODUCTION

**\*1**  This case was before the Hon. Christian F. Hummel, United States Magistrate Judge, for an initial review of plaintiff's complaint and other filings pursuant to 28 U.S.C. § 1915(e)(2)(B). Judge Hummel recommends that plaintiff's complaint (dkt. no. 1) be dismissed with prejudice; that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed; and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *See* April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Plaintiff did not file objections directed to Judge Hummel's recommendations, and the time to do so has expired. Plaintiff did, however, file an amended complaint. For the reasons that follow, the Court adopts Judge Hummel's recommendations, and independently reviews plaintiff's amended complaint and finds it fails to assert viable causes of action.

### II. DISCUSSION

#### a. Complaint

As Judge Hummel explains, plaintiff *pro se* Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. *See* Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint.

Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty Against Adethia Keisha Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted an additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, *et seq.* On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." *Id.* Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. The exhibits include an 80-page letter relating to apparent visa fraud that plaintiff sent to the US Department of Justice, the United States Department of Homeland Security, Immigration and Customs Enforcement, and the Federal Bureau of Investigation, as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff.

The supplement plaintiff filed on March 15, 2021 is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before the Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. *Id.* The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program

Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021 appear to be letters plaintiff sent to the New York State Department of Labor, United States Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." *See* dkt. no. 7.

 **\*2** Plaintiff's complaint discusses Allison Carolyn Rattray, allegedly the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. *Id.* Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." *Id.* at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," forced plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. *Id.* at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom staples [sic] has visual and audio devices inside of them." *Id.* at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. *See generally* Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have

men from any where have sex with The Plaintiff because The Plaintiff was born on the day the crucifixion was celebrated, that is Easter and Good Friday.

*Id.* at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC First Carribean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

*Id.* at 14.

As for plaintiff's first cause of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

Dkt. No. 1 at 69. As for a second cause of action is

> employment discrimination – I chose a
> career path to be an Attorney-At-Law.
> Allison Carolyn Rattray (maiden name
> Smith) my (former) then manager at
> CIBC had me fired; told me that (1)
> I am not worthy to be an Attorney-at-
> Law because of my Race (2) I was not
> worthy to be in the same Profession
> as her. She has been defaming my
> character ever since.

*Id.* at 70. The third cause of action is listed as

> employment discrimination -
> compensation: denied increases in my
> salary verbally communicated to me
> by Ms. Cherlyn Blackman my Senior
> Manager of 3% in 2004; Denied
> Promotion communicated to me by
> Human Resources Regional Director,
> Jerime Cjnttihs-Bell; denied fringe
> benefits that accompanied my five (5)
> CIBC Achievers awards – my salary
> was split and part paid to my aunt.

*Id.* In the prayer for relief, plaintiff requests:

> (1) an Injunction(s) for Criminal
> Indictment(s) of Allison Carolyn
> (Smith) Rattray, Corporate Secretary
> and Legal Counsel CIBC for her
> forced Prostitution of The Plaintiff and
> Others; (2) An Injunction to prevent
> and stop all Prostitution or abuse of
> The Plaintiff; (3) Restitution(s) by
> CIBC for lost Incomes and fringe
> benefits[; and] (4) Job Reference letter
> from CIBC and an apology and my
> land Title Deed.

*Id.* at 71.

Judge Hummel found (a) that plaintiff's complaint fails to meet the pleading requirements of Fed. R. Civ. P. 8 and 10, *see* Dkt. 10 at 8-9; (b) plaintiff's claims under Title VII (1) are barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII, *see id.* at 9-10; and (c) apart from the Title VII claims, "plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails [to] establish this Court's jurisdiction under federal question or diversity jurisdiction." *Id.* at 10. Judge Hummel indicated that he was

> **\*3** at a loss as to how the allegations in the
> complaint relate to a valid employment discrimination
> claim or any valid legal claim. Plaintiff presents a
> difficult to comprehend series of allegations against
> various individuals – many of whose connections to her
> apparent former employer is difficult, if not impossible, to
> comprehend – who she alleges forced her into prostitution,
> performed plastic surgeries on her against her will, installed
> "spying devices" into plaintiff's body, forced her to undergo
> various injections, and involved plaintiff in a murder
> scheme that is somehow related to her Easter birthday. *See*
> Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained
> allegations that appear to involve Ms. Rattray and others,
> such as "an abuse of a veteran of the United States Army by
> the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff
> submits dozens of pages of exhibits and supplements that
> appear to relate to cases filed in other courts, orders
> of protection obtained in other courts, unemployment
> insurance issues, police reports, and documents sent to
> various federal agencies. See dkt. nos. 4, 5, 6, 7. The
> relevance of this deluge of documents is entirely unclear.

*Id.* at 11.

Judge Hummel also concluded that to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. *Id.* at 11-12.

As to plaintiff's "emergency motion" for the Death Penalty, Judge Hummel found that it appears to ask the United States Supreme Court to enforce the death penalty against various

individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a leash [sic]," and other similar allegations. *See* Dkt. No. 5. Judge Hummel concluded that "this Court does not have the authority or jurisdiction to *sua sponte* impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial." Dkt. 10 at 12.

Judge Hummel concluded that although the Court must show special solicitude to *pro se* litigants, and is to exercise "extreme caution ... in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *id.* at 14 (quoting Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted)), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis. Id.* Judge Hummel concluded:

> Even if, *arguendo*, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." *See Bennett v. Mnuchin*, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that "describ[e] fantastic or delusional scenarios."); *Brown v. New York State Educ. Dept.*, 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing *pro se* plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

**\*4** *Id.* at 14. As indicated above, Judge Hummel also recommends that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed, and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *Id.* at 15.

After examining the record, this Court has determined that the recommendations in the Report-Recommendation and Order are not subject to attack for plain error or manifest injustice. Further, even if plaintiff's amended complaint is treated as an objection, the Court has completed a *de novo* review and has determined to adopt Magistrate Judge Hummel's recommendations for the reasons stated in his report.

**b. Amended Complaint**

As indicated, plaintiff filed an amended complaint after Judge Hummel recommended that the complaint be dismissed with prejudice. After a review of the amended complaint, the Court finds that it too must be dismissed with prejudice.

Plaintiff's amended complaint is a form Title VII complaint. *See* dkt. no. 11. She indicates that the defendant is "CIBC Limited/Michael Capatide CEO CIBC." *Id.* at ¶ 3(b). [1] Plaintiff checks the boxes indicating that the defendant discriminated against her on account of her "race or color," "religion," "sex (or sexual harassment)," "national origin," and "other" indicating on the line that follows: "my right to marry; my right to life; my right to work and provide for my daily living expenses." *Id.* at ¶ 6. Where plaintiff is asked to indicate what the complained-of conduct involves, she checked the boxes for "failure to employ," "termination of employment," "failure to promote," "unequal terms and conditions of employment," "retaliation," and "other acts as specified below" after which she writes: "I am being sex trafficked by CIBC First Caribbean staff in lieu of my salary." *Id.* at ¶ 7. In the section of the amended complaint asking for the facts underlying her claims, plaintiff asserts she is being sex trafficked because she was born on Easter and that the sex trafficking is in lieu of her salary paid to her by CIBC First Caribbean Jamaica." *Id.* ¶ 8. She also asserts that "the force" of the Jamaican Police, the Jamaican Judiciary, the Jamaican Hospital, and the University of the West Indies are conspiring with her "Walker relatives used to commit crimes with my identity using identity theft of Myrna Suzette Walker employed by Jamaican government Judge Barrington Andrew Rattray & Allison Carolyn Rattray." *Id.* In addition, she asserts that "Adethia Keisha Fitten is physically cutting me to create presumed consent for the crimes organized by Judge Barrington Andrew Rattray." *Id.*

The First Cause of Action alleges "forced organized criminality using the salary that was paid to the plaintiff by CIBC First Caribbean Jamaica January 1, 1995 to March 28, 2009." It also asserts that Myrna Suzette Walker "is a thief," and that "Allison Carolyn Rattray ... hired Myrna Suzette Walker and her five (5) children and Adethia Keisha Fitten to steal and to say that the stealing was done by the plaintiff." Plaintiff also appears to indicate that "to do the stealing," Myrna Suzette Walker "and others" repeatedly physically injure plaintiff. As discussed by Judge Hummel, these allegations do not provide plaintiff with a timely Title VII cause of action, *see, e.g.,* Am. Compl. attach. 4, dkt. no. 11-4 at 1, [2] nor do they provide a basis for the relief plaintiff seeks. *See* Dkt. 11, at 5. [3]

**\*5** The Second Cause of Action asserts violations of the "Human Rights Act of 1998." The Human Rights Act of 1998 appears to be a law or act of Parliament in the United Kingdom. *See Brady v. Wks. Med. Ctr.*, No. 19-CV-00655-SM, 2019 WL 6529870, at \*2 (D.N.H. Nov. 12, 2019)("A law in effect in the United Kingdom bears that title.")(citing Human Rights Act 1998, ch. 42, http://www.legislation.gov.uk/ukpga/1998/42/contents), *report and recommendation approved*, No. 19-CV-655-SM, 2019 WL 6529459 (D.N.H. Dec. 4, 2019); *Simpson v. Dauphin Cty. Hous. Auth.*, No. 1:16-CV-01747, 2017 WL 2375702, at \*2, n. 4 (M.D. Pa. Apr. 26, 2017) ("Simpson also references a 'Human Rights Act of 1998,' which as best we can tell refers to an Act of Parliament of the United Kingdom, not applicable in this jurisdiction."), *report and recommendation adopted*, No. 1:16-CV-1747, 2017 WL 2362510 (M.D. Pa. May 31, 2017). The Human Rights Act of 1998 does not provide plaintiff with a viable cause of actions against the defendant for any events occurring in the Northern District of New York over which this Court would have jurisdiction. *See Brady*, 2019 WL 6529870, at \*2.

The Third Cause of Action is confusing but appears to be a claim seeking unpaid wages. *See* dkt. no. 11 at 4 (stating at the start of Third Cause of Action: "The right to my paycheck."). Plaintiff asserts that her aunt Myrna Suzette Walker "assisted by CIBC First Caribbean staff Allison Carolyn Rattray has been falsely selling me as a whore in lieu of my current income(s) from JC Penney, Aerotek, Walmart, Fidelis Care and more." However, Myrna Suzette Walker, Allison Carolyn Rattray, JC Penney, Aerotek, Walmart, or Fidelis Care are not defendants in this action. Further, plaintiff does not assert when it was that she worked at JC Penney, Aerotek, Walmart, or Fidelis Care, or when or where it was that Myrna

Suzette Walker and Allison Carolyn Rattray purportedly took actions preventing plaintiff from receiving her wages from these employers. The claim in this regard fails to assert a viable cause of action under Title VII. In addition, in nearly incomprehensible fashion plaintiff ends the Third Cause of Action by asserting: "The rapes of me by co-workers is [sic] recorded and published. Walmart staff a [sic] man named Donnell she [sic] gave permission to live in my apartment as well as Fidelis Care Health Insurance staff- Rashid Rardon." These allegations fail to provide a sufficient basis for the Court to discern any viable cause of action under Title VII or any other law or statute over which the Court would have jurisdiction.

Accordingly, for the reasons set forth above plaintiff's amended complaint will be dismissed. Because the allegations in the amended complaint are factually frivolous, and because plaintiff filed an amended complaint that did not cure the pleading defects pointed out by Judge Hummel, dismissal will be with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be futile.

### III. CONCLUSION
For the reasons discussed above, the Court **ACCEPTS AND ADOPTS** Judge Hummel's recommendations in the April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Thus, it is hereby

**ORDERED** that plaintiff's complaint (dkt. No. 1) is **DISMISSED with prejudice**; and it is further

**ORDERED** that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) is **DENIED and DISMISSED**; and it is further

**ORDERED** that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) is **DENIED and DISMISSED as moot**.

Based on the Court's review of the amended complaint, it is hereby

**ORDERED** that plaintiff's amended complaint (dkt. No. 11) is **DISMISSED with prejudice**.

The Clerk of the Court may mark this file as closed.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 3204860

## Footnotes

1    At paragraph 3(a) asking to identify the defendant, plaintiff writes: "Not Applicable"

2    Dkt. no. 11-4 is a letter from Maureen Kielt, Director of the EEOC Buffalo Local Office to plaintiff in the matter
     of *Walker v. CIBC* confirming that plaintiff indicated that her "last date of harmed occurred on March 24,
     2009, when [she] was terminated," thus making her EEOC administrative claim against CIBC untimely. Dkt.
     No. 11-4 at 1.

3    In the Prayer for Relief, plaintiff requests the Court to grant the following relief:

     1. The plaintiff <u>do</u> <u>not</u> [sic] want to be a party to the religious killing business of Myrna Suzette Walker;
     her five children; and CIBC First Caribbean Jamaica staff, Allison Carolyn Rattray and her husband Judge
     Barrington Andrew Rattray, Supreme Court of Jamaica;

     2. The plaintiff do not [sic] want cocaine nor any thing to ingest from anyone, by force or otherwise.

     3. The plaintiff wants full restitution socially, physically, professionally.

     Dkt. 11, at 5 (emphasis in original).

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1789593
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Alexander McFADDEN, Plaintiff,
v.
Jose D. ORTIZ, Executive Officer Chase JP
Morgan Chase & Co., and James Simon, Manager
Chase JP Morgan Chase & Co., Defendants.

No. 5:12–CV–1244 (MAD/ATB).
|
April 26, 2013.

**Attorneys and Law Firms**

Alexander McFadden, Pine City, NY, pro se.

Jose D. Ortiz, Executive Officer for Chase JP Morgan Chase & Co., Houston, TX.

James Simon, Manager for Chase JP Morgan Chase & Co., New York, NY.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

## I. INTRODUCTION

**\*1** Plaintiff *pro se* Alexander McFadden ("McFadden"), an inmate at the Southport Correctional Facility ("SCF"), filed this action pursuant to 42 U.S.C. § 1983. In his complaint, Plaintiff appears to allege that Defendants, two executives of Chase JP Morgan Chase & Co. ("Chase"), violated his constitutional rights through conduct that, in some way, involved a bank account. *See* Dkt. No. 1 at ¶ 4.

On August 7, 2012, Magistrate Judge Andrew T. Baxter issued an Order and ReportRecommendation, recommending that the Court dismiss Plaintiff's complaint in its entirety with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5. Currently before the Court are Plaintiff's objections to Magistrate Judge Baxter's August 7, 2012 Order and ReportRecommendation.

## II. BACKGROUND

In his Order and Report–Recommendation dated August 7, 2012, Magistrate Judge Baxter recommended that Plaintiff's motion to proceed *in forma pauperis* ("IFP") should be denied by the Court and, upon review of the complaint, that this action be dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5 at 9. Further, Magistrate Judge Baxter recommended that if the Court approves his report, the Court should certify that any appeal from this matter will not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3). *See id.*

Regarding Plaintiff's complaint, Magistrate Judge Baxter's Order and ReportRecommendation recommends that because there is no indication that either Defendant acted under "color of state law," and because there are no allegations that either or both Defendants "conspired" with any state actors to bring this action under section 1983, Plaintiff's complaint should be dismissed. *See* Dkt. No. 5 at 5.

Regarding Plaintiff's claim that Defendants violated New York Penal Law by offering false documents for filing, tampering with public records, and falsifying business records, Magistrate Judge Baxter recommended that because there is no private right of action to enforce either state or federal criminal statutes, Plaintiff is barred from bringing a claim to enforce these provisions of the New York State Criminal Law. *See* Dkt. No. 5 at 6.

Accordingly, Magistrate Judge Baxter recommended this Court hold that, due to Plaintiff's failure to state a claim under 42 U.S.C. § 1983 upon which relief can be granted, combined with the courts inability to determine what venue might be appropriate, Plaintiff's motion for IFP should be denied, and Plaintiff's complaint should be dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5 at 9.

In his "objections" to Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff simply provides the Court with language from various cases discussing various types of objections and the Court's authority to review unpreserved errors. *See* Dkt. Nos. 14, 15.

### III. DISCUSSION

**A. Review of a magistrate judge's decision**

 **\*2** If a party files specific objections to a magistrate judge's report-recommendation, the district court performs a *"de novo* determination of those portions of the report of specified proposed findings or recommendations to which objections is made." 28 U.S.C. § 636(b)(1) (2006). However, if a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that were presented] to the magistrate judge," the court simply reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). At the conclusion of the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B. *In Forma Pauperis* application**

In order for a plaintiff to proceed without payment of any fees, he must first meet the financial criteria for IFP status. *See* 28 U.S.C. § 1915(a)(1). The plaintiff must submit an affidavit, including a statement of all assets, establishing his inability to pay the filing fee of $350.00. *See id.* Here, Plaintiff submitted a standard IFP application form, but answered only some of the relevant questions. Furthermore, while Plaintiff is incarcerated and has filed a motion to proceed IFP, his application states that, in the past twelve months, he has had income from "[b]usiness, profession or other self employment," and has "millions of dollars" in "cash, checking or savings accounts." *See* Dkt. No. 2 at ¶¶ 3, 4. Plaintiff, however, does not answer the question that asks him to "describe the source of money and state the amount received and what you expect you will continue to receive ." *See id.* at ¶ 3. Plaintiff answers "yes" to the questions asking whether he owns "real estate, stocks, bonds, securities, other financial instruments, automobile or any other assets." *See id.* at ¶ 5. Once again, however, Plaintiff does not complete the question by describing the property and stating its value. *See id.* Lastly, the form indicates that Plaintiff only has $9.60 in his prison account, and that during the last six months prior to this application, the average balance in his prison account was $4.03. *See* Dkt. No. 2 at 2.

If Plaintiff's claims are true and he does in fact have millions of dollars and real estate or other valuable property, then he cannot meet the financial requirements for proceeding IFP. Generally, when plaintiff has failed to properly complete the IFP request, the court will deny IFP without prejudice and allow plaintiff to resubmit the form with proper information. However, in this case, based upon the inadequacy of Plaintiff's responses, combined with his failure to state a plausible cause of action and the fact that amendment would be futile as discussed below, even if Plaintiff met the financial requirements for IFP, the Court would still find dismissal of this action to be proper.

**C. Sufficiency of the complaint**

 **1. *Legal Standard***

 **\*3** In addition to determining whether Plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if it determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

 **2. *Application***

 ***a. Color of state law***

Plaintiff brings this complaint pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. To state a claim under section 1983, a plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of her rights or privileges as secured by the Constitution of the United States. *See Annis v.*

County of Westchester, 136 F.3d 239, 245 (2d Cir.1998). Under extremely limited circumstances not alleged here, private actors, such as Defendant, may be held liable under section 1983. *See White v. Monarch Pharmaceuticals*, Inc., No. 08–CV–0430, 2009 WL 3068217, *1 (2d Cir. Sept. 28, 2009); *see also Rendell—Baker v. Kohn,* 457 U.S. 830, 838–42 (1982). The law does not reach private conduct, no matter how "discriminatory or wrongful." *Annis,* 136 F.3d at 245 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982)).

In the present matter, Plaintiff names two executives of Chase as Defendants. Along with being very difficult to determine what these Defendants allegedly did to Plaintiff, there is no indication that either Defendant acted under color of state law. Moreover, the complaint does not allege or suggest that Defendants conspired with a state actor to violate his constitutional rights. Further, Plaintiff does not allege any conduct attributable to either Defendant sufficient to establish their personal involvement in any alleged constitutional deprivation. *See* *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quotation and other citations omitted).

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss the complaint.

### b. Criminal statutes

Plaintiff states in the "Causes of Action" section of his complaint that Defendants violated the New York Penal Law regarding falsifying business records, tampering with public records, and offering false documents for filing. *See* Dkt. No. 1 (citing N.Y. PENAL LAW §§ 175.10, 175.25, and 175.35). Even if this is true, however, there is no private right of action to enforce either state or federal criminal statutes. *See* *Abrahams v. Incorporated Village of Hempstead,* No. 08–CV–2584, 2009 WL 1560164, *8 (E.D.N.Y. June 2, 2009)* (holding that dismissal of civil suit for perjury was proper because there is no private right of action for perjury under New York Law). Therefore, even assuming, *arguendo,* that Defendants violated some criminal statutes, Plaintiff may not bring a claim based on those statutes to enforce New York Criminal Law.

**\*4** As such, Magistrate Judge Baxter correctly recommended the Court find that Plaintiff has failed to allege a plausible cause of action.

### c. Venue

Venue in federal-question cases is generally determined by 28 U.S .C. § 1391(b) which provides that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). In this case, one of the Defendants is listed with a Houston, Texas address, while the other Defendant is listed as having a New York City address. *See* Dkt. No. 1 at ¶¶ 3(a) and (3)(b). Thus, neither of the Defendants reside, or are located, in the Northern District of New York. Plaintiff is incarcerated at Southport Correctional Facility, located in the Western District of New York. Therefore, since both Plaintiff and one of the Defendants are New York residents, this case could clearly not be brought as a diversity action. Moreover, under Plaintiff's section 1983 claim, venue is not proper in the Northern District of New York. All Defendants do not reside in the same state, neither Defendant is located in this district, and the complaint does not allege any conduct that occurred in the Northern District of New York.

Under 28 U.S.C. § 1406, a district court faced with a case brought "laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Second Circuit has suggested that "a district court should not dismiss for improper venue on its own motion except in extraordinary circumstances." *Concession Consultants, Inc. v. Mirisch,* 355 F.2d 369 (2d Cir.1966).

In the present matter, the Court finds and agrees with Judge Baxter's Order and ReportRecommendation that this case presents precisely the extraordinary circumstances making it proper for the Court to dismiss for improper venue *sua sponte.*

### d. Leave to amend

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it ." *Id.* (citation omitted); *see also* *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993).

**\*5** Here, the Court agrees with Magistrate Judge Baxter that any attempt by Plaintiff to amend his complaint would be futile. As discussed, although Plaintiff alleges "due process violations," section 1983 does not permit such actions to be brought against private individuals absent some involvement by the state. Moreover, Plaintiff does not have the right to enforce New York State criminal statutes.

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss Plaintiff's complaint with prejudice.

### IV. CONCLUSION

After carefully considering Magistrate Judge Baxter's Order and Report–Recommendation, the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's August 7, 2012 Order and Report–Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further **ORDERS** that Plaintiff's application to proceed *in forma pauperis* is **DENIED;** and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii); and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order in accordance with Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1789593

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Adames v. County of Suffolk Court, Not Reported in Fed. Supp. (2019)

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 45 of 157

2019 WL 2107261
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Willi ADAMES, Plaintiff,

v.

The COUNTY OF SUFFOLK COURT; Detective
Arnold Hillian, PID: 3362, Det. 1404; Timothy D. Sini,
District Attorney of Suffolk County; Suffolk County
Jail; and Suffolk County DA's Office, Defendants.

18-CV-4069(JS)(SIL)
|
Signed 05/14/2019

**Attorneys and Law Firms**

For Plaintiff: Willi Adames, pro se, A#046775189, Bergen
County Jail, E-44202, 160 South River Street, Hackensack,
New Jersey 07601.

For Defendants: No appearances.

MEMORANDUM & ORDER

Joanna Seybert, U.S.D.J.

 **\*1** On July 12, 2018, incarcerated pro se plaintiff Willi
Adames ("Plaintiff") filed a Complaint (see, D.E. 1) in
this Court pursuant to 42 U.S.C. § 1983 (" Section
1983") against the County of Suffolk Court ("County Court"),
Detective Arnold Hillian ("Det. Hillian"), Suffolk County
District Attorney Timothy D. Sini ("D.A. Sini"), the Suffolk
County Jail (the "Jail"), and the Suffolk County DA's
Office (the "DA's Office" and collectively, "Defendants"),
accompanied by an application to proceed in forma pauperis,
(IFP Mot., D.E. 2). On October 1, 2018, Plaintiff filed
an application for the appointment of pro bono counsel to
represent him in this case. (Mot., D.E. 10.)

Upon review of the declaration in support of the application
to proceed in forma pauperis, the Court finds that Plaintiff is
qualified to commence this action without prepayment of the
filing fee. See 28 U.S.C. §§ 1914(a); 1915(a)(1). Therefore,
Plaintiff's request to proceed in forma pauperis is GRANTED.

However, for the reasons that follow, Plaintiff's Section
1983 claims against the County Court, the Jail, and the

DA's Office are DISMISSED WITH PREJUDICE. Plaintiff's
 Section 1983 claims against D.A. Sini and Det. Hillian are
DISMISSED WITHOUT PREJUDICE. Given the dismissal
of the Complaint, Plaintiff's application for the appointment
of pro bono counsel is DENIED.

THE COMPLAINT [1]

Plaintiff's Complaint is submitted on the Court's Section
1983 Complaint form and is brief. The following facts, in their
entirety, are alleged:

> I was arrested on 12-16-2017 and I
> sat in Riverhead County Jail located
> in Suffolk County, New York. My
> case was dismissed on 5-2-2018.
> Docket # CR-025969-17SU. Log #
> 2017SU025969. I would like to be
> compensated for the time I was
> held in Suffolk County Jail for the
> false charges I've been accused of.
> I've spent 5 months incarcerated for
> something that never happened. I've
> lost my job, my place of residence
> and my reputation. All stemming from
> malicious prosecution where I've only
> time and time again stood by my
> innocents, plus mental health issues.

(Compl. ¶ II.) In the space on the Complaint form that calls
for a description of any claimed injuries, Plaintiff alleges:
"Mental health--experiencing nightmares, depression, can't
sleep, anxiety." (Compl. ¶ II.A.) Plaintiff also alleges that he
has received "mental health counseling." (Compl. ¶ II.A.) For
relief, Plaintiff seeks an unspecified sum "for pain suffering
false arrested on going mental health issues. And of course
my reputation as a man and farther." (Compl. ¶ III.)

DISCUSSION

I. In Forma Pauperis Application
Upon review of Plaintiff's declarations in support of his
application to proceed in forma pauperis, the Court finds

**Adames v. County of Suffolk Court, Not Reported in Fed. Supp. (2019)**

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 46 of 157

that Plaintiff is qualified to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's request to proceed in forma pauperis is GRANTED.

## II. Application of 28 U.S.C. § 1915

**\*2** Section 1915 of Title 28 requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii), 1915A(b). The Court is required to dismiss the action as soon as it makes such a determination. See id. § 1915A(b).

Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While " 'detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

## III. Section 1983

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983; accord Rehberg v. Paulk, 566 U.S. 356, 361, 132 S. Ct. 1497, 1501-02, 182 L.Ed. 2d 593 (2012). To state a claim under Section 1983, a plaintiff must " 'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " Rae v. Cty. of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

### A. Claims Against the Jail, the County Court, and the DA's Office

Plaintiff's Section 1983 claims against the Jail, the County Court, and DA's Office are not plausible because none of these entities have independent legal identities. It is well-established that "under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); Trahan v. Suffolk Cty. Corr. Fac., 12-CV-4353, 2012 WL 5904730, \*3 (E.D.N.Y. Nov. 26, 2012) (dismissing claims against the Suffolk County Jail because it "is an administrative arm of Suffolk County, without an independent legal identity."); see also Gollomp v. Spitzer, 568 F.3d 355, 366–67 (2d Cir. 2009) ("[E]very court to consider the question of whether the New York State Unified Court System is an arm of the State has concluded that it is ..."); Woodward v. Office of Dist. Atty., 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010) ("[T]he District Attorney's Office is not a suable entity[.]"). Thus, Plaintiff's Section 1983 claims against the Jail, the County Court and the DA's Office are not plausible and are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii); 1915A(b). Given Plaintiff's pro se status and affording his Complaint a liberal construction, the Court has considered whether Plaintiff has alleged a plausible Section 1983 claim against the respective municipalities, namely Suffolk County and

**Adames v. County of Suffolk Court, Not Reported in Fed. Supp. (2019)**

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 47 of 157

New York State, and finds that he has not for the reasons that follow.

### 1. Claims As Construed Against Suffolk County

**\*3** It is well-established that a municipality such as Suffolk County cannot be held liable under § 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L.Ed. 2d 611 (1978); Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." Cash v. Cty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Connick v. Thompson, 131 S. Ct. 1350, 1359, 179 L.Ed. 2d 417 (2011)); see also Monell, 436 U.S. at 690-91. "[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-691 (internal citation omitted).

To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality, see Connick, 131 S. Ct. at 1359; (2) actions taken or decisions made by municipal policymaking officials, i.e., officials with final decisionmaking authority, which caused the alleged violation of the plaintiff's civil rights, see Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004); Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000); (3) a practice "so persistent and widespread as to practically have the force of law," Connick, 131 S. Ct. at 1359; see also Green v. City of N.Y., 465 F.3d 65, 80 (2d Cir. 2006), or that "was so manifest as to imply the constructive acquiescence of senior policy-making officials," Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (internal quotation marks and citations omitted); or (4) that "a policymaking official exhibit[ed] deliberate indifference to constitutional deprivations caused by subordinates." Cash, 654 F.3d at 334 (internal

quotation marks and citations omitted); see also Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 439 (2d Cir. 2009) (A municipal custom may be found when " 'faced with a pattern of misconduct, [the municipality] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions.' ") (quoting Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) (second alteration in original)).

Here, even affording the pro se Complaint a liberal construction, there are no factual allegations from which the Court could reasonably construe a plausible Section 1983 cause of action against Suffolk County. Accordingly, Plaintiff's Complaint, as construed against Suffolk County does not allege a plausible Section 1983 claim.

### 2. Claims as Construed against New York State

Even construing Plaintiff's Section 1983 claims as against the State of New York, Plaintiff has not alleged a plausible claim. It is well-established that the Eleventh Amendment bars Plaintiff's claims seeking exclusively monetary damages against the State of New York. See Gollomp, 568 F.3d at 366 ("[T]he New York State Unified Court System is an arm of the State [ ], and is therefore protected by Eleventh Amendment sovereign immunity"); see also Quiles v. City of N.Y., No. 01–CV–10934, 2002 WL 31886117, at \*2 (S.D.N.Y. Dec. 27, 2002) ("[T]he Eleventh Amendment prohibits individuals from suing the District Attorney's Office, an arm of the state, for damages under 42 U.S.C. § 1983 arising from prosecutorial decisions.") Thus, even when construed as against the State of New York, Plaintiff has not alleged a plausible claim for relief.

### B. Claims Against Det. Hillian and DA Sini

**\*4** In order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. Farid v. Elle, 593 F.3d 233, 249 (2d Cir. 2010). The Supreme Court held in Iqbal that "[b]ecause vicarious liability is inapplicable to ... [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual

**Adames v. County of Suffolk** Court, Not Reported in Fed. Supp. (2019)

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 48 of 157

actions, has violated the Constitution." 556 U.S. at 676, 129 S. Ct. at 1948. Thus, a "plaintiff asserting a Section 1983 claim against a supervisory official in his individual capacity" must sufficiently plead that the "supervisor was personally involved in the alleged constitutional deprivation." Rivera v. Fischer, 655 F. Supp. 2d 235, 237 (W.D.N.Y. 2009). A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law and should be dismissed. Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. 2010).

Here, Plaintiff's brief Complaint does not include any factual allegations sufficient to demonstrate personal involvement by Det. Hillian and DA Sini regarding the events alleged in the Complaint. To the extent that Plaintiff seeks to impose liability against DA Sini, it appears that Plaintiff's claim is based solely on the supervisory position he holds. Wholly absent, however, are any allegations sufficient to establish any personal involvement by DA Sini in the conduct of which Plaintiff complains. A supervisor cannot be liable for damage under Section 1983 solely by virtue of being a supervisor because there is no respondeat superior liability under Section 1983. Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003). Accordingly, because Plaintiff has not alleged any factual allegations of conduct or inaction by Det. Hillian or DA Sini, Plaintiff's claims against these Defendants are not plausible and are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii); 1915A.b).

### C. Leave to Amend

Given the Second Circuit's guidance that a pro se complaint should not be dismissed without leave to amend unless amendment would be futile, Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted here. Because the defects in Plaintiff's claims against the Jail, the County Court, and the DA's Office are substantive and would not be cured if afforded an opportunity to amend, leave to amend the Complaint

against the Jail, the County Court, and the DA's Office is DENIED. However, in an abundance of caution, Plaintiff is GRANTED leave to file an Amended Complaint in order to allege any valid claims he may have against Det. Hillian, DA Sini, and/or any other proper Defendant. Any Amended Complaint shall be clearly labeled "Amended Complaint", shall bear the same docket number as this Memorandum and Order ("M&O"), 18-CV-4069(JS)(SIL), and shall be filed within thirty (30) days from the date of this M&O. Plaintiff is cautioned that an Amended Complaint completely replaces the original. Therefore, Plaintiff must include any and all claims against any Defendant(s) he seeks to pursue in the Amended Complaint.

### CONCLUSION

For the reasons set forth above, Plaintiff's application to proceed in forma pauperis is GRANTED, however the Complaint is sua sponte DISMISSED WITH PREJUDICE as against the Jail, the County Court, and the DA's Office for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). Plaintiff is GRANTED LEAVE TO FILE AN AMENDED COMPLAINT IN ACCORDANCE WITH THIS M&O WITHIN THIRTY (30) DAYS FROM THE DATE AT THE BOTTOM OF THIS PAGE. Given the dismissal of the Complaint, Plaintiff's application for the appointment of pro bono counsel is DENIED.

**\*5** The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L.Ed. 2d 21 (1962).

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2019 WL 2107261

---

**Footnotes**

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 49 of 157

**Adames v. County of Suffolk** Court, Not Reported in Fed. Supp. (2019)

1    The following facts are taken from Plaintiff's Complaint and are presumed to be true for the purposes of this Memorandum and Order. Excerpts from the Complaint as reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

**End of Document**                                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 5904730
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Vilimaa **TRAHAN**, Plaintiff,
v.
**SUFFOLK** COUNTY CORRECTIONAL
FACILITY, C.O. Phil Capozzola, # 1311, Sgt.
Horl, # 5220, Sheriff Vincent Demarco, C.O.
Christopher Garzadas, # 1170, Defendants.

No.



(JS)(ARL).
|
Nov. 26, **2012**.

\*\*\* Start Section
...

**Attorneys and Law Firms**

Vilimaa **Trahan**, Riverhead, NY, pro se.

No Appearances for Defendants.

*ORDER*

SEYBERT, District Judge.

 **\*1** On August 27, **2012**, incarcerated pro se plaintiff Vilimaa **Trahan** ("Plaintiff") filed a Complaint in this Court pursuant to 🚩 42 U.S.C. § 1983 against the defendants, **Suffolk** County Correctional Facility, C.O. Phil Capozzola, # 1311, Sgt. Horl, # 5220, Sheriff Vincent DeMarco and C.O. Christopher Garzadas, # 1170 (together, the "Defendants") accompanied by an application to proceed in *forma pauperis* and an application for the appointment of *pro bono* counsel. [1]

Upon review of Plaintiff's declaration in support of the application, the Court finds that Plaintiff's financial status qualifies him to file this action without prepayment of the filing fee. Accordingly, the application to proceed in *forma*

*pauperis* is granted. However, for the reasons that follow, the Complaint is *sua sponte* dismissed against Sheriff DeMarco and the **Suffolk** County Correctional Facility pursuant to 🚩 28 U.S.C. §§ 1915(e)(2) (B) and 1915A. The application for the appointment of *pro bono* counsel is denied at this time.

*BACKGROUND*

Plaintiff's brief handwritten Complaint submitted on the Court's civil rights complaint form alleges that he was beaten by C.O. Phil Capozzola and unidentified "S.E.R.T. Officers" on May 9, **2012** and on July 17, **2012**. (Compl. at ¶ IV.) Plaintiff claims that Sgt. Horl participated in the July 17th beating. (*Id.*) Plaintiff also claims that, on August 18, **2012**, C.O. Christopher Garzagas "used excessive force" in that he "punch[ed] me 10 times in my face after I was sprayed with pepper spray...." (*Id.*)

As a result of these assaults, Plaintiff claims to suffer migraine headaches, has an injury to his eye, has a sprained left leg and damaged nerves in his wrists, as well as abrasions and a swollen face. Plaintiff describes that he "went to Peconic Bay Outside Hospital" following the May and July beatings where he was treated. According to the Plaintiff, he was treated by "medical" for injuries he allegedly sustained from the August beating. (Compl. at ¶ IV. A. and attachments thereto.) Plaintiff seeks to recover two (2) million dollars in compensatory and punitive damages. (Compl. at ¶ V.)

*DISCUSSION*

I. *In Forma Pauperis...*
\*\*\* Start Section

... of a cause of action will not do.' " *Id.* (quoting 🚩 *Twombly, 550 U.S. at 555, 127 S.Ct. at 1955).*

III. 🚩 *Section 1983*

🚩 Section 1983 provides that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of

the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must " 'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " *Rae v. Cnty. of Suffolk,* 693 F.Supp.2d 217, 223 (E.D.N.Y.2010) (quoting *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999)). Section 1983 does not create a substantive right; rather, to recover, a plaintiff must establish the deprivation of a separate, federal right. *See Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999).

In addition, in order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. *Farid v. Elle,* 593 F.3d 233, 249 (2d Cir.2010). The Supreme Court held in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) that "[b]ecause vicarious liability is inapplicable to ... [section] 1983 suits, a plaintiff must plead that...

*** Start Section
....2010) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' ") (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). A supervisor cannot be liable for damage under Section 1983 solely by virtue of being a supervisor because there is no *respondeat superior* liability under Section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003).

Here, Plaintiff's Complaint does not include any factual allegations sufficient to demonstrate any personal involvement by Defendant DeMarco. Accordingly, the Section 1983 claims asserted against his are not plausible and are dismissed pursuant to 28 U.S.C. ¶¶ 1915(e)(2)(B) and 1915A.

B. *Claims Against the Suffolk County Correctional Facility*

Though Plaintiff names the Suffolk County Correctional Facility as a defendant, it does not have an independent legal identity apart from Suffolk County and, thus, lacks the legal capacity to be sued. "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep' t,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002); *see also In re Dayton,* 786 F.Supp.2d 809, 818 (S.D.N.Y.2011); *Hawkins v. Nassau Cnty. Corr. Facility,* 781 F.Supp.2d 107, 109 at n. 1 (E.D.N.Y.2011).

Here, because the Suffolk County Correctional Facility is an administrative arm of Suffolk County, without an independent legal identity, it lacks the capacity to be sued.

Accordingly, Plaintiff's Section 1983 claim against the Suffolk County Correctional Facility is not plausible and is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

C. *Claims Against C.O. Capozzola, Sgt. Horl and C.O. Garzadas*

Plaintiff's excessive force claims against C.O. Capozzola, Sgt. Horl and C.O. Garzadas shall proceed. In accordance with the Second Circuit's guidance that " *'sua sponte* dismissal of *pro se* prisoner petitions which contain nonfrivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court' " *McEachin v. McGuinnis,* 357 F.3d 197, 200–01 (2d Cir.2004) (quoting *Moorish Sci. Temple of Am. Inc. v. Smith,* 693 F.2d 987, 990 (2d Cir.1982) (citations omitted)), the Court declines to dismiss the excessive force claims against these Defendants at...

*** Start Section
... required by law as discussed above, finds that the appointment of counsel is not warranted at this time. Even assuming that *Hodge'* s threshold requirement is satisfied, the record reflects that the legal issues presented are not unduly complex and that Plaintiff can adequately prosecute his claim *pro se*. Based on this review, Plaintiff's motion for appointment of *pro bono* counsel is denied without prejudice and with leave to renew when the case is ready for trial, if

warranted. It is Plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se. See* 28 U.S.C. § 1654.

### CONCLUSION

For the reasons set forth above, Plaintiff's application to proceed *in forma pauperis* is granted, but the Complaint is *sua sponte* dismissed as against the **Suffolk** County Correctional Facility and Sheriff DeMarco pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b). The claims against Defendants Capozzola, Horl and Garzadas shall proceed and the Clerk of the Court is directed to forward copies of the Summonses, the Complaint and this Order to the United States Marshals Service for service upon Defendants Capozzola, Horl and Garzadas forthwith. The application for the appointment of pro bono counsel is denied with leave to renew when this case is ready for trial, if so warranted at that time.

**\*5** The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 5904730

---

### Footnotes

1    The Court notes that Plaintiff did not file the required Prisoner Authorization form at the time he filed the Complaint. By letter dated August 30, **2012**, Plaintiff was advised that he needed to complete and return a Prisoner Authorization form if he wanted to proceed with his case. Plaintiff did so on September 7, **2012**.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

...

2003 WL 24243989
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Salvatore **OGNIBENE**, Plaintiff,

v.

**NIAGARA** COUNTY **SHERIFF'S** DEPARTMENT,
**Niagara** County District Attorney's Office, Samuel
Novara, Esq., Town of Wheatfield Court, **Niagara**
County Court, **Niagara** County Supreme Court, New
York State Appellate Division, 4 TH Judicial Dept.,
and New York State Court of Appeals, Defendants.

No.



03
–
CV
–
0678E
(SR).
|
Dec. 1, **2003**.

*** Start Section
...

**Attorneys and Law Firms**

Salvatore **Ognibene**, **Niagara** Falls, NY, pro se.


DECISION AND ORDER

ARCARA, J.


*INTRODUCTION*

 **\*1**  Plaintiff has filed this *pro se* action seeking relief
under  42 U.S.C. § 1983 (Docket No. 1, 3) and has
requested permission to proceed *in forma pauperis* (Docket
No. 2). Plaintiff claims that the defendants have violated his
constitutional rights in relation to an arrest that occurred on
July 10, 1997 for which plaintiff was given an Adjournment
in Contemplation of Dismissal ("ACD") [1] on November 17,
1997 in the Town of Wheatfield (New York) Town Court.
(Complaint, ¶ 5). Apparently, plaintiff later filed some type
of motion or appeal in the Town Court of Wheatfield seeking

to dismiss the ACD. (Docket No. 3, Table of Contents). [2]
This motion was denied and appeals ensued through the state
court system all the way to the New York Court of Appeals,
which denied plaintiff leave to appeal on or about September
17, **2003**. (Complaint, ¶¶ 5–10; Table of Contents, ¶¶ 2–6).
For the reasons discussed below, plaintiff's request to proceed
as a poor person is granted and the complaint is dismissed
pursuant to  28 U.S.C. § 1915(e)(2)(B).


*DISCUSSION*

Because plaintiff has met the statutory requirements of  28
U.S.C. § 1915(a), plaintiff is granted permission to proceed
*in forma pauperis*.  Section 1915(e)(2)(B) of 28 U.S.C.
provides that the Court shall dismiss a case in which *in forma
pauperis* status has been granted if, at any time, the Court
determines that the action (i) is frivolous or malicious; (ii)
fails to state a claim upon which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune
from such relief.

In evaluating the complaint, the Court must accept...

*** Start Section

... the complaint is submitted *pro se.*"  *Chance v.
Armstrong,* 143 F.3d 698, 701 (2d Cir.1998).

Based on its evaluation of the complaint, the Court finds that
plaintiff's claims must be dismissed pursuant to  28 U.S.C.
§ 1915(e)(2)(B)(ii) because they fail to state a claim upon
which relief may be granted.


*Plaintiff's Allegations*

Plaintiff alleges that his constitutional rights were violated
and therefore brings this action pursuant to  42 U.S.C. §
1983. In order to state a claim under  § 1983, plaintiff must
allege (1) that the challenged conduct was attributable at least
in part to a person acting under color of state law, and (2)
that such conduct deprived plaintiff of a right, privilege, or
immunity secured by the Constitution or laws of the United
States.  *Dwares v. **City** of New York,* 985 F.2d 94, 98 (2d
Cir.1993).

Plaintiff names as defendants: (1) the **Niagara** County **Sheriff's** Department ("**Sheriff's** Department"), the law enforcement agency that responded to his daughter's "911" telephone call, which occurred while plaintiff was admittedly striking her in his home on July 10, 1997, and took plaintiff into custody (Complaint, Statement of Claim, ¶¶ 1–3); (2) the **Niagara** County District Attorney's Office ("DA's Office") that, assumably, prosecuted plaintiff following this arrest; (*id.,* ¶¶ 4–5); (3) Samuel J. Novara, plaintiff's defense counsel in the proceedings in Town Court (*id.,* ¶ 6); (4) the Town of Wheatfield Town Court ("Wheatfield Town Court"), "Presiding" Town Justice Robert Cliffe, where plaintiff was prosecuted and obtained an ACD on November 17, 1997 (*id.,* ¶ 5); (5) the **Niagara** County Court ("County Court"), "Presiding" Judge, Hon. Peter Broderick, the court to which plaintiff appealed on or about April 14, 2000 (Complaint; Table of Contents, ¶ 3); (6) the New York Supreme Court, **Niagara** County ("State Supreme Court"), "Presiding" Justice, Hon. John Lane, the court to which plaintiff appealed on or about February 16, 2001 and which denied his request for relief on or about June 13, 2001 (Table of Contents, ¶ 3); (7) the New York State Supreme Court, Appellate Division, Fourth Department ("Appellate Division"), "Presiding" Justice Pine, and Justices Hayes, Hurlburt, Kehoe and Burns, the court to which plaintiff further appealed and which dismissed plaintiff's appeal on April 23, 2002 for failure to prosecute (Complaint, Statement of Claim, ¶ 8; Table of Contents, ¶ 6 A—B); and (8) the New York Court of Appeals ("Court of Appeals"), "Presiding" Justice, Hon. Judith Kaye, which denied plaintiff leave to appeal on or about September 17, **2003**. (Complaint, ¶ 10; Table of Contents, ¶ 7).

**\*2** The plaintiff's complaint, liberally construed, appears to allege a violation of plaintiff's civil rights based upon claims of false arrest and false imprisonment on July 10–11, 1997 arising out of his arrest (Complaint, Statement of Claim, ¶¶ 2–4), and the "faulty procedures" of the prosecutor and the courts. The complaint also alleges that the prosecutor and the courts named as defendants failed to insure that plaintiff obtained his *Miranda* warnings and his "right" to give a statement, and that they failed to insure that he obtained his various Sixth Amendment rights, such as the right to a speedy public trial, the right to an impartial jury, the right to notice of the charges against him, the right to confront witnesses, the right to compulsory process, and the right to counsel. (*Id.,* ¶¶ 4–10). The complaint also includes a claim of either a

violation of § 1983 or legal malpractice or both against plaintiff's defense attorney. (*Id.,* ¶ 6).

### Claims against **Sheriff's** Department, DA's Office and Wheatfield Town Court

Plaintiff's claims against the **Sheriff's** Department, the DA's Office and the Wheatfield Town Court must be dismissed. First, plaintiff's § 1983 claims against these three defendants accrued at the earliest on July 10, 1997 when he was arrested, and at the latest either on November 17, 1997, when the charges against him were resolved by means of an ACD (Complaint, Statement of Claim, ¶¶ 3–5; Table of Contents, ¶¶ 1–2), or on March 28, 2000, when a motion plaintiff made in the Town Court was denied. (Table of Contents, ¶ 2). The statute of limitations for an action filed under 42 U.S.C. § 1983 in a federal court sitting in New York is three years. *Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Jewell v. County of Nassau,* 917 F.2d 738, 740 (2d Cir.1990). Therefore, any and all claims against these defendants are time barred.

Second, the claims against the **Sheriff's** Department, the DA's Office, and the Wheatfield Town Court must also be dismissed because there is no allegation that any of the individual government officials, such as the Town Justice, deputies or assistant prosecutors, were acting pursuant to a policy or custom of the Town of Wheatfield or **Niagara** County. In the absence of such an allegation, the complaint fails to state a claim for relief and must be dismissed. *See Monell v. New York* **City** *Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities are not subject to § 1983 liability solely on the basis of a respondeat *superior* theory. *Collins v.* **City** *of Harker Heights,* 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Monell,* 436 U.S. at 694.

Additionally, to the extent that the plaintiff may have intended to sue the Town Justice individually (Complaint, Defendant's Information), in addition to or instead of the Town Court, the Town Justice would be entitled to absolute judicial immunity. *See Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (internal quotations and citation omitted). The same would be true with respect to the District

Attorney or any Assistant District Attorneys involved in the prosecution of plaintiff. Prosecutors are entitled to absolute immunity from suits brought under § 1983 "arising out of [their] prosecutorial duties that are 'intimately associated with the judicial phase of the criminal process.' " *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)), *cert. denied,* 520 U.S. 1115 (1997). Accordingly, the claims against the **Sheriff's** Department, the DA's Office, the Wheatfield Town Court and, to the extent he is a defendant herein, the Town Justice, Robert B. Cliffe, are dismissed.

### *Claims against County Court, State Supreme Court, Appellate Division, and Court of Appeals*

**\*3** Plaintiff's complaint purports to allege that these courts somehow violated his numerous Sixth Amendment rights. In reality, however, what plaintiff is alleging is that these courts were in error when they denied or dismissed his various requests to overturn the ACD disposition of the charges arising from the July 10, 1997 incident. These claims too must be dismissed.

To the extent the plaintiff names various state courts as defendants and seeks either legal or equitable relief against them under § 1983, they are immune from such suit under the Eleventh Amendment. *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). As agencies or arms of the State of New York, the courts are immune from suit under the Eleventh Amendment. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114; *see also Saint–Fleur v. City of New York,* 2000 **WL** 280328, *2 (S.D.N.Y., Mar.14, 2000) (collecting cases); *Fields v. Walthers,* No. 94–CV–1659, 1997 **WL** 204308 at *2 (N.D.N.Y. April 5, 1997) ("For Eleventh Amendment purposes, governmental entities of the state that are considered 'arms of the state' receive Eleventh Amendment immunity."). Accordingly, plaintiff's claims against the County Court, the State Supreme Court, the Appellate Division, and the Court of Appeals must be dismissed.

### *Claims against Samuel Novara*

The complaint names Samuel Novara, plaintiff's defense counsel, as a defendant, and either alleges a § 1983 claim or a state common law legal malpractice claim, or both, against him. In any event, the claim or claims pled against this defendant must be dismissed. First, assuming that plaintiff intended to sue defense counsel under § 1983, such a claim must be dismissed because criminal defense counsel are not "state actors" for purposes of the "state action" requirement of § 1983. *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). Second, assuming that plaintiff intended to sue his defense counsel for legal malpractice in relation to the handling and disposition of his criminal matter, this Court declines to exercise supplemental jurisdiction, 28 U.S.C. § 1367, over said claim because all the federal claims have been dismissed at the initial stage of the litigation. *See Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir.**2003**); 28 U.S.C. § 1367(c)(3); *see also Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir .2001) (noting that dismissal of pendent state law claims is appropriate where all federal claims have been dismissed and "it appears that the state issues substantially predominate") (internal quotation marks omitted). Accordingly, the complaint is dismissed without prejudice as against defendant Novara.

### *CONCLUSION*

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a). Accordingly, plaintiff's request to proceed *in forma pauperis* is granted and, for the reasons discussed above, the complaint is dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), except with respect to the state common law legal malpractice claim against defendant Samuel Novara, which is dismissed without prejudice.

**\*4** The...

2020 WL 5210949
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Matthew Louis MERCADO, Plaintiff,

v.

TOWN OF GOSHEN; Orange County
Courts & Correctional Facility; Judge
Freehill; Da Janine Kovacs, Defendants.

20-CV-5399 (LLS)
|
Signed 08/28/2020

**Attorneys and Law Firms**

Matthew Louis Mercado, Goshen, NY, pro se.

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

**\*1** Plaintiff, currently detained at the Orange County Correctional Facility, brings this *pro se* action under 42 U.S.C. § 1983, alleging that Defendants have violated his federal constitutional rights. By order dated August 13, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis.* [1]

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see* Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

The following allegations are taken from the complaint, which is not a model of clarity. Since January 1, 2020, Plaintiff has been "fals[e]ly & illegally detained & unlawfully imprisoned by the Goshen County Court System." (ECF No. 1, at 4.) He was indicted for burglary in the second degree, references being on probation, and maintains that under the "new bail reform law," he should have been released. He writes, "I am not filing suit on State's Bail Reform now I am filing suit for my being illegally detained, false imprisonment unlawfully imprisoned are all violations of my constitutional right which have all been violated." (*Id.*)

**\*2** Plaintiff further state that he has "grieved the Courts Judges DA's & filed suit & also A Habias [sic] Corpus." (*Id.* at

5.) He seeks monetary compensation and immediate release from custody.

Plaintiff attaches to his complaint a letter addressed "[t]o whom it may concern," which restates many of the facts in the complaint and also states, "I have written a grievance & civil suit & both had informed me to go this way 1st as to file a writ of habeas corpus to gain my relief. So I did no response as of yet." (*Id.* at 7.) Plaintiff also attaches a news clipping about the bail reform law including his handwritten notes; the first page of an affirmation filed in his criminal case in the state court by Orange County Assistant District Attorney Janine Kovacs (named as a defendant here); and a document by the Center for Court Innovation explaining the bail reform law.

Plaintiff's submission also includes a document labeled "Matthew Mercado VS Orange County Courts; D.A. Janine Kovacs & Judge Robert Freehill," which appears to be part of an amended complaint that Plaintiff filed in a previous case, *Mercado v. Orange Cnty. Cts.*, ECF 1:19-CV-11905, 11 (S.D.N.Y. Mar. 23, 2020). (*Id.* at 15-16.) In that action, Plaintiff asserted claims against the "Orange County Courts," two female District Attorneys, Judge Robert Freehill, the "Orange County Legal Aid Society & District Attorney," and the New Windsor Police Department. By order dated January 28, 2020, Chief Judge McMahon dismissed Plaintiff's claims against Judge Freehill and the assistant district attorneys on immunity grounds, and dismissed his claims against the Orange County Courts as barred by the Eleventh Amendment. Chief Judge McMahon granted Plaintiff leave to amend his complaint to detail his Fourth Amendment claims against individual police officers. ECF 1:19-CV-11905, 8. In response to the order, Plaintiff submitted two amended complaints in which he named the same defendants named in his original pleadings. ECF 1:19-CV-11905, 11, 12. By order dated March 23, 2020, Chief Judge McMahon dismissed the action on the same grounds that she dismissed the original complaint. ECF 1:19-CV-11905, 13. It is unclear why Plaintiff included a pleading from his previous action in his submission. In any event, though Plaintiff names some of the same defendants in this action, his claims here appear to be slightly different.

## DISCUSSION

Because Plaintiff invokes the Due Process Clause and asserts claims of false imprisonment, the Court construes those claims as arising under 42 U.S.C. § 1983. To state a claim

under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

### A. Claims against the Town of Goshen

When a plaintiff sues a municipality under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

**\*3** Because Plaintiff fails to allege any facts suggesting that the Town of Goshen has a policy, custom, or practice that caused a violation of his constitutional rights, the Court dismisses Plaintiff's claims against the Town of Goshen. 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Claims against Orange County Courts and Correctional Facility

The Court must dismiss Plaintiff's claims against the Orange County Courts and Correctional Facility as barred by the Eleventh Amendment. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh

Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.*

New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 40 (2d Cir. 1977). Moreover, "the New York State Unified Court System is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity." *Gollomp,* 568 F.3d at 368 (citation omitted); *see Brown v. Astoria Fed. Sav. & Loan Ass'n,* 444 F. App'x 504 n.1 (2d Cir. 2011) (summary order) (claims against New York Supreme Court barred by the Eleventh Amendment) (citing *Gollomp,* 568 F.3d at 368).

Plaintiff sues the "Orange County Court," which is part of the New York State Unified Court System. The Court therefore dismisses Plaintiff's § 1983 claims against this Defendant under the doctrine of Eleventh Amendment immunity and because these claims are frivolous. [2] *See Montero v. Travis,* 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989))).

The Court must also dismiss any claims Plaintiff may be asserting against the Orange County Correctional Facility as an entity separate from the Orange County Court. Section 1983 provides that an action may be maintained against a "person" who has deprived another of rights under the "Constitution and Laws." 42 U.S.C. § 1983. The Orange County Correctional Facility is not a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58 (1989) (state is not a "person" for the purpose of § 1983 claims); *Whitley v. Westchester Cnty. Corr. Fac. Admin.,* No. 97-CV-420 (SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997) (correctional facility or jail not a "person" within the meaning of § 1983). The Court therefore dismisses any claims Plaintiff may be asserting against the Orange County Correctional Facility. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. Claims against Judge Freehill and Assistant District Attorney Kovacs**

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco,* 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt,* 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation...." *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir. 1994). In addition, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

**\*4** Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 9-10; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

Additionally, prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York,* 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons,* 509 U.S. 259 (1993) (holding that absolute immunity is analyzed under "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it"). In addition, prosecutors are absolutely immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein,* 555 U.S. 335, 344 (2009).

Here, Plaintiff's claims against Judge Freehill and ADA Kovacs are based on actions taken within the scope of their official duties and associated with the conduct of a trial. The Court therefore dismisses Plaintiff's claims against these defendants because they seek monetary relief against a defendant who is immune from suit and as frivolous. 28 U.S.C. § 1915(e)(2)(b)(i), (iii); *see Collazo v. Pagano*, 656 F. 3d 131, 134 (2d Cir. 2011) (holding that claim against prosecutor is frivolous if it arises from conduct that is "intimately associated with the judicial phase of the criminal process").

**D. Pending state-court proceedings**

To the extent that Plaintiff, in seeking injunctive relief, asks this Court to intervene in his pending state-court proceedings, the Court must dismiss those claims. In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held that a federal court may not enjoin a pending state-court criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Heicklen v. Morgenthau*, 378 F. App'x 1, 2 (2d Cir. 2010) (quoting *Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973)). *Younger* abstention seeks to avoid federal court interference with ongoing state criminal prosecutions, state-initiated civil enforcement proceedings, and state civil proceedings that involve the ability of state courts to perform their judicial functions. *Jones v. Cnty. of Westchester*, 678 F. App'x 48, 49-50 (2d Cir. 2017) (summary order). Thus, abstention is appropriate in only three categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013).

If a "federal lawsuit implicates the way that New York courts manage their own ... proceedings — a subject in which "the states have an especially strong interest" — a State's interest is most likely implicated, warranting abstention under *Younger*. *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir. 1973)). When any of these types of proceedings are pending in state court, the *Younger* doctrine bars federal courts from ordering injunctive

relief that interferes with the state court proceedings. "State proceedings are pending for *Younger* purposes until all appellate court remedies have been exhausted." *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 290 n.6 (S.D.N.Y. 2000).

**\*5** Plaintiff's request that this Court intervene in his state-court proceedings implicates how the state court manages its proceedings. *Younger* abstention therefore applies, and this Court will not intervene in those proceedings. *Falco*, 805 F.3d at 428.

**E. *Habeas* relief**

To the extent Plaintiff seeks release from custody, the Court liberally construes his submission as a *habeas corpus* petition filed under 28 U.S.C. § 2241. Under § 2241(c)(3), *habeas corpus* relief is available to a person "in custody in violation of the Constitution or laws or treaties of the United States." A prisoner in state custody generally must challenge his confinement in a *habeas corpus* petition under 28 U.S.C. § 2254, but such relief is available under § 2241 to a state pretrial detainee challenging his custody as unlawful under the Constitution or federal law. *See Robinson v. Sposato*, No. 11-CV-0191, 2012 WL 1965631, at \*2 (E.D.N.Y. May 29, 2012); *see also Hoffler v. Bezio*, 831 F. Supp. 2d 570, 575 (N.D.N.Y. 2011), *aff'd on other grounds*, 726 F.3d 144 (2d Cir. 2013); *Marte v. Berkman*, No. 11-CV-6082 (JFK), 2011 WL 4946708, at \*5 (S.D.N.Y. Oct. 18, 2011), *aff'd on other grounds sub nom.*, *Marte v. Vance*, 480 F. App'x 83 (2d Cir. 2012) (summary order).

Before seeking § 2241 *habeas corpus* relief, however, a state pretrial detainee must first exhaust his available state-court remedies. *See United States ex rel. Scranton v. New York*, 532 F.2d 292, 294 (2d Cir. 1976) ("While [ § 2241] does not by its own terms require the exhaustion of state remedies as a prerequisite to the grant of federal habeas relief, decisional law has superimposed such a requirement in order to accommodate principles of federalism."). In the pretrial context, such exhaustion includes seeking *habeas corpus* relief in the state courts and, if necessary, appealing all the way up to the New York Court of Appeals, the State of New York's highest court. *See N.Y.C.P.L.R. § 7001, et seq.*

Plaintiff states that he has filed a petition for *habeas corpus* in the state court, but has not yet received a response.

Exhaustion of remedies requires more than merely filing a state-court *habeas* petition. To exhaust his state-court remedies, Plaintiff's state *habeas* petition must be denied by the New York Supreme Court, Orange County, and he must appeal that denial all the way up to the New York Court of Appeals. Because Plaintiff does not show that he exhausted his available state-court remedies before filing his § 2241 petition in this Court, the Court denies without prejudice any application for relief under § 2241.

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione, 657 F.3d 116, 123–24 (2d Cir. 2011); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).* Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

**CONCLUSION**

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

**\*6** SO ORDERED.

**All Citations**

Slip Copy, 2020 WL 5210949

**Footnotes**

1    Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed *in forma pauperis. See* 28 U.S.C. § 1915(b)(1).

2    *See also Zuckerman v. Appellate Div., Second Dep't, Supreme Court,* 421 F.2d 625, 626 (2d Cir. 1970) (holding that a state court is not a "person" for the purpose of § 1983 liability).

Curto v. Palisades Collection, LLC, Not Reported in Fed. Supp. (2008)

2008 WL 11357852
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Patricia J. CURTO, Individually and on behalf
of all others similarly situated, Plaintiff,

v.

PALISADES COLLECTION, LLC, Pressler and
Pressler, LLP, Sheldon H. Pressler, Richard A.
Franklin, Jennifer B. Kwak, Phillip Marshall, New
York State Unified Courts System 8th Judicial District
Buffalo City Court, and John/Jane Does, Defendants.

07-CV-529S
|
Signed March 7, 2008
|
Filed 03/10/2008

**Attorneys and Law Firms**

Patricia J. Curto, West Seneca, NY, pro se.

Justin H. Homes, Sessions, Fishman, Nathan & Israel,
L.L.P., Metairie, LA, Michael Del Valle, Sessions, Fishman
& Nathan of New York, LLC, Amherst, NY, Mitchell L.
Williamson, Pressler & Pressler, LLP, Cedar Knolls, NJ,
for Defendants.

### ORDER

MICHAEL A. TELESCA, United States District Judge

### INTRODUCTION

**\*1** Plaintiff, Patricia Curto, an experienced pro se litigant,[1]
brings this action pursuant to the Fair Debt Collection
Practices Act ("FDCPA"), 15 U.S.C. § 1592 et seq., and
⚑ 42 U.S.C. §§ 1983, ⚑ 1985 and 1986, seeking monetary
damages and declaratory and injunctive relief (Amended
Complaint—Docket No. 3), and has also moved for leave to
proceed in *forma pauperis*. (Docket No. 2).

Plaintiff alleges that defendants Palisades collection, LLC,
Pressler and Pressler, LLP, Sheldon H. Pressler, Richard
A. Franklin and Jennifer Kwak (collectively, the "private
defendants") violated the FDCPA when they initiated two

actions against plaintiff in Buffalo City Court to obtain *a*
money judgment from her. The amended complaint also
asserts claims pursuant to ⚑ 42 U.S.C. §§ 1983, ⚑ 1985
and 1986 against defendant Phillip M. Marshall ("Judge
Marshall"), stated to be a judge of the "hew York State Unified
Court System Judge in the Buffalo City Court," and the
New York State Unified Court System. Plaintiff alleges that
Judge Marshall violated and conspired with other defendants
to violate plaintiff's constitutional and statutory rights in
connection with his handling of a lawsuit chat Palisades
Collection filed against plaintiff in Buffalo City Court. The
complaint also names "John/Jane Does" as defendants, and
the claims against them are specified below.

Plaintiff's application to proceed as a poor person is granted,
but for the reasons set forth below, her claims against Phillip
Marshall, the New York State Unified Court System and
"John/Jane Does" are dismissed pursuant to 29 U.S.C. §
1915(e)(2)(B), and her request that this action be certified as
a class action is denied.

### DISCUSSION

### Claims Against Palisades Collection, LLC, Pressler and
### Pressler, LLP, Sheldon H. Pressler, Richard A. Franklin,
### Jennifer B. Kwak

Plaintiff has obtained waivers of service pursuant to Fed. R.
Civ. Proc. 4(d) from the private defendants. Each of those
defendants has answered the complaint (Docket Nos. 10,
11) and plaintiff's action against these five defendants is
proceeding.

### Claims Against Phillip Marshall

In the section of the amended complaint captioned
"PARTIES," plaintiff recites that defendant Phillip M.
Marshall "is a New York State Unified Court System Judge
in the Buffalo City Court; Village of Orchard Park Court
judge; a private practice lawyer; resides in Orchard Park
NY." (Amended Complaint at ¶ 10). Clarification of Judge
Marshall's judicial status is sat forth in the motion to dismiss
that has been submitted by defendants Marshall and the New
York State Unified Court System, which states that Phillip
Marshall is an Acting Buffalo City Court Judge, (Docket No.
26 at 2).[2]

**\*2** In the section of the amended complaint containing
plaintiff's factual allegations, she states that after the dismissal

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 62 of 157

Curto v. Palisades Collection, LLC, Not Reported in Fed. Supp. (2008)

by Buffalo City Court Judge Givens of an action to recover on a debt commenced against plaintiff by defendant Palisades collection ("Palisades"), [3] Palisades filed a second action in Buffalo City Court on May 24, 2007, where it came before defendant Buffalo City Court Judge Marshall on July 20, 2007 upon plaintiff's motion to dismiss. Plaintiff alleges that Judge Marshall adjourned the proceedings upon the request of one of the private defendants until August 20, 2007, even though he "knew he had to dismiss sua sponte the complaint filed in Buffalo City Court...." (Amended Complaint at ¶ 17). Plaintiff further alleges that another judge, not named in the amended complaint, subsequently dismissed the action on the adjourned date of August 20, 2007. (Amended Complaint at ¶ 19). She alleges that Judge Marshall's adjournment of the proceeding, as described above, was "made without authority/jurisdiction," violated her federal constitutional and statutory rights, and was indicative of a conspiracy with the other defendants to violate her due process and equal protection rights. (Amended Complaint at ¶ 18). Judge Marshall's adjournment of plaintiff's motion to dismiss the City Court action, and his failure to dismiss the action *sua sponte an* July 20, 2007 appears to be the only specific non-conclusory allegation in support of her claims against him.

Plaintiff's claims against Judge Marshall are barred by the doctrine of absolute judicial immunity. It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. *See, e.g.,* Mireles v. Waco, 502 U.S. 9, 112 S. Ct. 236, 116 L.Ed.2d 9 (1991).

> Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."

*Id.*, at 10, 297 (quoting Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871)). Absolute judicial immunity "protects judges acting in their individual and judicial capacities." Miller v. County of Nassau, 467 F. Supp. 2d 308, 313 (E.D.N.Y. 2006) (emphasis added). The protection of immunity is not pierced by allegations that the judge acted in bad faith or with malice, Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967), even though "unfairness and injustice to a litigant may

result on occasion," Mireles, 502 U.S. at 9, 112 S. Ct. at 286.

The Supreme Court has developed a two-part test for determining whether a judge is entitled to absolute immunity. *See* Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978). First, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " *Id.* at 356-57, 98 S.Ct. at 1105 (quoting Bradley, 80 U.S. (13 Wall.) at 351 (1871)). Second, a judge is immune only for actions performed in his judicial capacity. *Id.* at 360, 98 S.Ct. at 1106; *see also* Maestri v. Jutkofsky, 360 F.2d 50 (2d Cir. 1988) (finding no immunity where town justice issued arrest warrant for conduct which took place within neither his town nor an adjacent town, thereby acting in the absence of all jurisdiction), *cert. denied,* 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193 (1989); Gregory v. Thompson, 500 F.2d 59, 62 (9th Cir. 1974) (finding no immunity where judge assaulted litigant).

**\*3** "Because 'some of the most difficult and embarrassing questions which a judicial officer is called upon to consider [\*16] and determine relate to his jurisdiction ...' the scope of the judge's jurisdiction must be construed broadly when the issue is the immunity of the judged." Stump 435 U.S. at 356, (quoting Bradley 80 U.S. (13 Wall.) 335). In Stump, the United States Supreme Court determined that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " 435 U.S. at 356-57 (quoting Bradley, 80 U.S. at 351) [emphasis supplied]. The critical difference between acts taken in excess of authority, to which immunity attaches, and those taken in the clear absence of all jurisdiction was clearly articulated in Bradley:

> A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 63 of 157

Curto v. Palisades Collection, LLC, Not Reported in Fed. Supp. (2008)

clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

80 U.S. at 351-52. [4]

Here, the amended complaint does not allege that Judge Marshall lacked subject matter jurisdiction over the action filed in Buffalo City Court, [5] and his alleged adjournment of plaintiff's motion to dismiss, a function routinely performed by a judge when acting in a judicial capacity, does not constitute a judicial action taken "in the clear absence of all jurisdiction."

Plaintiff's allegations that Judge Marshall conduct in refusing to immediately grant her motion to dismiss and in adjourning the City Court action was "discriminatory, abusive, hostile," and that he "conspired with" other defendants to violate her rights(Amended Complaint at ¶¶ 18, 19) do not serve to take his actions outside the protection afforded by the doctrine of judicial immunity. As stated by the Supreme Court in Bradley, a judge will not be deprived of immunity even where it is alleged that his actions are alleged to have been done "maliciously or corruptly." Id. at 351. [6]

**\*4** To the extent that the amended complaint may be construed as requesting injunctive relief against Judge Marshall, the absolute immunity afforded the defendant, as described above, extends to claims for injunctive relief. Hubbard v. J.C. Penny Dep't Store, 05-CV-6042CJS(P), 2005 U.S. Dist. LEXIS 40907, at \*5 (W.D.N.Y. 2005) (discussing 1996 amendments to § 1983). Moreover, no injunctive relief can be had where, as here, plaintiff has failed to state a claim for constitutional deprivation. Curto v. Bender,

04-CV-26S, 2005 U.S. Dist. LEXIS 6236, at \*43, n. 15 (W.D.N.Y. 2005).

**Claims Against the New York State Unified Court System 8th Judicial District**

Plaintiff's official capacity claims against the "New York State Unified Court System, 8th Judicial District Buffalo City Court" are barred by the Eleventh Amendment, See Davis v. New York, 106 Fed. Appx. 82, 2004 U.S. App. LEXIS 12389, at \* \*4 (2d Cir. 2004) (unpublished) (the Eleventh Amendment bars claims against the New York State Unified Court System) (citing Pennhurst State Sch. & Hosp. v. Alderman, 465 U.S. 89, 100, 79 L.Ed. 2d 67, 100 S. Ct. 900 (1984)); Singleton v. State of New York, 98 Civ. 0414, 1998 U.S. Dist. LEXIS 11842, at \*6 (S.D.N.Y. 1998) (New York City Criminal Court is immune from suit under the Eleventh Amendment).

Plaintiff also asserts claims for injunctive relief against the Unified Court System, including an order directing a *review* of all consumer credit complaints pending in Buffalo City Court and dismissal of all complaints where the defendant does not reside in Buffalo or a municipality contiguous to the city. (Amended Complaint at p. 13).

Plaintiff's claims for injunctive relief are denied as the amended complaint makes none of the showings necessary to obtain such relief. Plaintiff has not, for instance, established that she will suffer any irreparable harm if she is not granted injunctive relief with respect to collection actions in City Court, given the success she has had obtaining the dismissal of such actions in the past. See Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) (party seeking injunctive relief must demonstrate irreparable harm "before other requirements for the issuance of an injunction will be considered"), Moreover, plaintiff's request for injunctive relief may be regarded as moot, in light of the dismissal of her claims against the defendant, see, e.g., Kinlaw v. Pataki, 9:07-CV-1314 (GLS) (GJD), 2003 U.S. Dist. LEXIS 3414, at \*5 (N.D.N.Y. 2008), and inasmuch as the two actions brought against her in Buffalo City Court have been dismissed, and the amended complaint does not allege a Likelihood of imminent future injury.

**Claims Against John/Jane Does**

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 64 of 157

Curto v. Palisades Collection, LLC, Not Reported in Fed. Supp. (2008)

The caption to the amended complaint lists "John/Jane Does" as defendants, and the section of the complaint captioned "PARTIES" states that their identities will be determined during discovery. (Amended Complaint at ¶ 12). The Court has reviewed the plaintiff's references to John or Jane Does in the body of her complaint, and determines that the claims against all "John/Jane Doe" defendants must be dismissed.

Plaintiff identifies one "John Doe" defendant as the court officer who was present at plaintiff's alleged appearance in Buffalo City Court on July 20, 2007, and who is alleged to have instructed her to sit down, and who later "scolded/reminded" her and another person to stop talking, even though lawyers in the courtroom were permitted to talk. On the basis of these allegations, plaintiff alleges that court officer John Doe "conspired [with Judge Marshall] and did violated (sic) ... Curto's rights to equal protection, due process and etc.; their actions or lack of action was discriminatory, abusive, hostile, unlawful, unconstitutional and etc." (Amended Complaint at ¶ 19).

 *5  To the extent that court officer John Doe was assisting the court in the performance of judicial functions, he is immune from suit. Moreover, the claims against court officer John Doe fail to state a claim and are frivolous. *See* Bliven v. Hunt, 418 F. Supp. 2d 135, 138 (E.D.N.Y. 2005) (dismissing on the grounds of immunity and as frivolous claims against John Doe judges and court clerks). Subsequent allegations that "Jane Doe/John Doe" is/are conspiring with defendant Marshall and "with all the other defendants" to violate plaintiff's rights (Amended Complaint at ¶¶ 31, 32) are equally frivolous.

Plaintiff makes numerous references to "John/Jane Doe" in those sections of the amended complaint in which she sets forth her claims under the FDCPA against the private defendants. She in essence attempts to "piggyback" the Doe defendants on to each of her claims against the named defendants by adding the language "and John/Jane Doe" to each of her claims against the named defendants. (Amended Complaint at ¶¶ 22, 26). However, the amended complaint is completely devoid of allegations as to who these "John/Jane Doe" defendants might be, and how they facilitated or conspired with the named defendants to facilitate the violation of plaintiff's rights. Plaintiff cannot simply add "and John/Jane Doe" to each of her allegations against the named defendants without providing at least some pertinent information as to these defendants. *See* Bliven, 418 F. Supp. 2d at 138-135 ("Plaintiff's complaint is entirely devoid of

allegations as to who these defendants ere or how they were involved is the deprivation of his rights. While Plaintiff is not obligated to provide names, he must at least provide basic information describing these individuals' relevance to this lawsuit.")(citation omitted).

The amended complaint may also be construed as asserting a claim against a "John Doe" process server who is alleged to have failed to effect proper service of the complaint against plaintiff filed by defendant Palisades Collection, and to have falsely sworn in his service affidavit that he had confirmed plaintiff's proper address. (Amended Complaint at ¶¶ 14). Plaintiff also asserts that a "John Doe" process server improperly served a second complaint upon her. (Amended Complaint at ¶ 16). Plaintiff's claims against the John Doe process server(s) must likewise be dismissed for failure to state a claim under 15 U.S.C. § 1692k, or 42 U.S.C. §§ 1983, 1985 and 1986.

Accordingly, plaintiff's claims against all John/Jane Doe defendants must be dismissed.

### Motion to Certify a Class

Plaintiff requests in the amended complaint that the Court issue an order certifying her action as a class action under Rule 23 of the Federal Rules of Civil Procedure (Amended Complaint at p. 12), and one section of the amended complain, captioned "CLASS ALLEGATIONS," contains allegations in support of her request for class certification as to two classes of plaintiffs. (Amended Complaint at ¶¶ 20-34). It is well established, however, that "non-attorneys cannot represent anyone other than themselves and cannot prosecute class actions oft behalf of others. 29 U.S.C. § 1654. " '[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him.' " Daniels v. Niagara Mohawk Power Corp., 04-CV-734S(Sc), 2004 U.S. Dist. LEXIS 28607, at *1-2 (W.D.N.Y. 2004) (citing Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998)); *see also*, Miller v. Zerillo, CV 07-1719, 2007 U.S. Dist. LEXIS 96353, at *3-4 (E.D.N.Y. 2007). Accordingly, to the extent the complaint is brought as a putative class action or on behalf of anyone other than the individual plaintiffs, it is dismissed.

### State Law Claims

 *6  The amended complaint asserts non-specific state law claims against the defendants. To the extent that any such

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 65 of 157

Curto v. Palisades Collection, LLC, Not Reported in Fed. Supp. (2008)

claims are asserted against defendants Phillip Marshall, the New York State Unified Court System, and John/Jane Does, the Court declines to exercise supplemental jurisdiction over them, inasmuch as all federal claims have been dismissed. 🚩 28 U.S.C. § 1367(c)(3).

**Motion to Dismiss**

Defendants Phillip Marshall and the New York State Unified Court System have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Docket Nos. 25, 26). In view of the Court's dismissal of the claims against Judge Marshall and the Unified Court System, the motion to dismiss is denied as moot.

## CONCLUSION

Because Curto has met the statutory requirements of 🚩 28 U.S.C. § 1915(a), her request to proceed *in forma pauperis* (Docket No. 2) is granted. For the reasons set forth above, her claims are dismissed in their entirety, pursuant to 🚩 28 U.S.C. § 1915(e)(2)(B), against defendants Phillip Marshall, the New York State Unified Court System 8 $^{th}$ Judicial District Buffalo City Court and all John/Jane Does. Plaintiff's application for class certification is denied. The motion to dismiss filed by defendants Marshall and the New York State Unified Court System is denied as moot.

## ORDER

IT IS HEREBY ORDERED, that plaintiff's motion to proceed in *forma pauperis* (Docket No. 2) is granted;

FURTHER, that any and all claims brought as a class action or on behalf of other similarly situated individuals are dismissed;

FURTHER, that all of plaintiff's federal constitutional and statutory claims against defendants Phillip Marshall, the New York State Unified Court System 8 $^{th}$ Judicial District Buffalo City Court and all John/Jane Does are dismissed with prejudice pursuant to 🚩 28 U.S.C. § 1915(e)(2)(B);

FURTHER, that plaintiff's state law claims against defendants Phillip Marshall, the New York State Unified Court System 8 $^{th}$ Judicial District Buffalo City Court and all John/Jane Does are dismissed;

FURTHER, that the Clerk of the Court is directed to terminate defendants Phillip Marshall, the New York State Unified Court System 8 $^{th}$ Judicial District Buffalo City court and John/Jane Does as parties to this action;

FURTHER that the motion to dismiss (Docket No. 25) is dismissed as moot.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2008 WL 11357852

## Footnotes

1    In addition to the instant natter, plaintiff has filed seven other actions in the Western and Northern Districts of New York since 2001: <u>Curto v. Town of Orchard Park, et al.</u>, 07-CV-255 (W.D.N.Y.); <u>Curto v. Siwek</u>, 06-CV-761 (W.D.N.Y.); <u>Curto v. Bender, et al.</u>, 04-CV-26 (W.D.N.Y.); <u>Curto v. Roth</u>, 02-CV-1157 (N.D.N.Y.); <u>Curto v. Edmundson</u>, 01-CV-1824 (N.D.N.Y.); <u>Curto v. Smith</u>, 01-CV-1781 N.D.N.Y.); <u>Curto v. Smith</u>, 01-CV-1570 (N.D.N.Y.)

2    Plaintiff obtained waivers of service from defendants Phillip Marshall and the New York State Unified Court System. (Docket No. 8).

Curto v. Palisades Collection, LLC, Not Reported in Fed. Supp. (2008)

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 66 of 157

3    Plaintiff indicates that the complaint filed by Palisades alleged that her address was "20 Hazel Court, West Seneca, NY," the mailing address used by plaintiff in filing the instant lawsuit. She states that the action was dismissed by Buffalo City Court Judge Givens pursuant to § 213(a) and related provisions of the Uniform City Court Act, pursuant to which money actions may be filed in Buffalo City Court if plaintiff or defendant resides in Buffalo or, inter alia, a town contiguous to the city. Plaintiff asserts chat Judge Givens dismissed the action after taking judicial notice that the County of Erie's Internet *Mapping Service* indicated that plaintiff's address is in Orchard Park, not West Seneca, and that Orchard Park is not contiguous with Buffalo. (Amended Complaint ¶ 13).

4    Plaintiff is well-familiar with the nature and extent of judicial immunity, having had claims against New York State judges dismissed in several previous actions. *See, e.g.*, Curto v.Siwek, 06-CV-761S, 2007 U.S. Dist. LEXIS 60986, at *5-6 (W.D.N.Y. 2007) (Given plaintiff's knowledge, from the Court's dismissal of her previous action against Justice Burns, that New York State judges cannot be sued for judicial acts, her attempt to commence a very similar if not essentially identical lawsuit against Justice Burns' successor, Justice Siwek, can be properly regarded as frivolous within the meaning of ⚑28 U.S.C. § 1915(e)(2)(B). Plaintiff is accordingly cautioned that the filing of any similarly frivolous actions against state judicial officers in the future may lead the Court to consider the imposition of appropriate sanctions.").

5    Indeed, Section 202 of the Uniform City Court Act provides that City Courts "shall have jurisdiction of actions and proceedings for the recovery of money, actions and proceedings for the recovery of chattels and actions and proceedings for the foreclosure of liens on personal property where the amount sought to be recovered or the value of the property does not exceed fifteen thousand dollars exclusive of interest and costs."

6    The Court notes that plaintiff's claims that Judge Marshall conspired with other defendants would also warrant dismissal because of their entirely conclusory nature, *See, e.g.,* ⚑Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (qoting ⚑Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993)).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   6

2000 WL 280328
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Berton SAINT–FLEUR, Plaintiff,

v.

CITY OF NEW YORK, et al., Defendants.

No. 99 Civ.10433 WHP AJP.
|
March 14, 2000.

*REPORT AND RECOMMENDATION*

PECK, Magistrate J.

PAULEY, J.

**\*1** Pro se plaintiff Berton Saint–Fleur has brought this § 1983 action against the City and State of New York, his wife Betty E. Saint–Fleur, and the Jewish Child Care Association, for false imprisonment, malicious prosecution and defamation, claiming, *inter alia,* that an Assistant District Attorney coerced his wife to falsely accuse plaintiff and convince their child to accuse plaintiff of sexual abuse. [1]

The State of New York has moved to dismiss all claims against it on Eleventh Amendment immunity grounds. For the reasons set forth below, the State's motion should be granted.

*SAINT–FLEUR'S COMPLAINT* [2]

Plaintiff Berton Saint–Fleur ("Saint–Fleur") was arrested on December 22, 1996 and charged with sexual abuse of his six-year old son, Jermaine. (Cplt. ¶ IV at p. 5.) The charges were based on accusations by plaintiff's wife, defendant Betty E. Saint–Fleur, that he had forced her to have sex with Jermaine. (*Id.*) After Saint–Fleur's wife tried to recant her story, Assistant District Attorney ("ADA") Rose Mary Harlem threatened her with "immigration, losing the children and prison" if she continued to maintain her husband's innocence. (*Id.*) "The ADA did not investigate to find out what the truth was" and Saint–Fleur was brought to trial. (*Id.*) Betty Saint–Fleur testified against her husband but has admitted "in letters from jail" that her testimony was false. (Cplt. ¶ IV at p. 6.)

Saint–Fleur was acquitted of criminal charges but "found guilty" in Family Court. (Cplt. ¶ IV at p. 7; *see also* Saint–Fleur Br. at 3.) The Family Court judge stated "on records [sic] while making his decision" that Saint–Fleur was "found guilty" because he "didn't take the stand on [his] behalf." (Cplt. ¶ IV at p. 7; *see also* Saint–Fleur Br. at 1–2.)

Defendant "Jewish Child Care Association had sessions with Jermaine Saint–Fleur once a week making him live a lie and repeating sexual experiences which he never had and which he couldn't remember at time of trial, changing the story drastically. They also conspired with the ADA in their vindictiveness to get a judge to not allow [Saint–Fleur] any visits, phone calls nor mail with any of [his] kids up to date, regardless of [Saint–Fleur's] acquittal by a jury trial who reached a verdict in thirty minutes." (Cplt. ¶ IV at p. 6.)

The complaint appears to allege that Saint–Fleur was "falsely imprisoned, wrongly accused, maliciously prosecuted [and] defamed." (Cplt. ¶ IV at p. 7; *see also* Saint–Fleur Br. at 3.) Saint–Fleur's "sufferings are a direct proximate of the aforementioned corruption of the defendants ADA Rose Mary Harlem for the City of New York, John Doe for Jewish Child Care Association, Betty St. Fleur and the State of New York's appointed judges from family court and from criminal court." (Cplt. ¶ IV at p. 7; *see also* Saint–Fleur Br. at 3–4.) Saint–Fleur seeks damages and injunctive relief to terminate Court-ordered separations from his children, discontinue Betty Saint–Fleur's custody and award custody to the children's grandmother. (Cplt. ¶ V at pp. 5, 8.)

*ANALYSIS*

**I.** *THE ELEVENTH AMENDMENT BARS SAINT–FLEUR'S CLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF AGAINST THE STATE AND ITS COURT SYSTEM*

**\*2** Defendant State of New York has moved to dismiss the complaint on Eleventh Amendment immunity grounds insofar as Saint–Fleur attempts to allege claims against the State, the state court system and state judges. (State Br. at 4–6.)

A. *Eleventh Amendment Immunity Generally*

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. As the Second Circuit has explained:

> The Supreme Court has consistently held that the federal courts lack jurisdiction not only over suits against a state brought by citizens of other states, as the literal language of the Amendment provides, but also over suits against such states brought by their own citizens. Thus, *it is clear that, with few exceptions, federal courts are barred from entertaining suits by a private party against a state in its own name.*

*Dwyer v. Regan,* 777 F.2d 825, 835 (2d Cir.1985) (emphasis added); *accord, e.g., Dube v. State University of New York,* 900 F.2d 587, 594 (2d Cir.1990) (quoting *Dwyer), cert. denied,* 501 U.S. 1211, 111 S.Ct. 2814 (1991).[3]

The result would be no different if the Court were to liberally construe the pro se complaint and find that Saint–Fleur intended to sue the State Courts. (*See, e.g.,* Saint–Fleur Br. at 1–2, 5.) "For Eleventh Amendment purposes, governmental entities of the state that are considered 'arms of the state' receive Eleventh Amendment immunity." *Fields v. Walthers,* No. 94–CV–1659, 1997 WL 204308 at *2 (N.D.N.Y. April 5, 1997) (Pooler, D.J.); *accord, e.g., Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 414 (2d Cir.1999) ("An official arm of a state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself. The State Office of Court Administration is an arm of the state and therefore immune.").[4]

State courts, as arms of the State, are entitled to Eleventh Amendment immunity from suit in federal court. *See, e.g., Gu v. Municipal Gov't of New York,* No. 96–2857, 113 F.3d 1229 (table), 1997 WL 280056 at *2 (2d Cir. May 23, 1997) ("The Eleventh Amendment bars the action against the New York criminal court, which is a state agency"); *Zuckerman v. Appellate Div.,* 421 F.2d 625, 626 (2d Cir.1970) (Appellate Division is "part of the judicial arm of the State of New York"); *Vishevnik v. Supreme Court,* 99 Civ. 3611,

1999 WL 796180 at *1 (S.D.N.Y. Oct. 6, 1999) ("agencies, such as the state courts, are absolutely immune from suit [in federal court], regardless of the relief sought"); *Carp v. Supreme Court,* No. 5:98–CV–201, 1998 WL 236187 at *2 (N.D.N.Y. May 5, 1998) (Pooler, D.J.) ("the State Supreme Court and the Appellate Division are ... immune from suit under the Eleventh Amendment"); *Casaburro v. Giuliani,* 986 F.Supp. 176, 182 (S.D.N.Y.1997) (criminal court of New York City is a state agency entitled to Eleventh Amendment immunity).[5]

**\*3** The State and its agencies are protected by Eleventh Amendment immunity "whether the relief sought is legal or equitable." *Papasan v. Allain,* 478 U.S. at 276, 106 S.Ct. at 2939; *accord, e.g., Pennhurst State School & Hosp. v. Halderman,* 465 U.S. at 100, 104 S.Ct. at 908; *Missouri v. Fiske,* 290 U.S. 18, 27, 54 S.Ct. 18, 21 (1933) ("Expressly applies to suits in equity as well as at law, the [Eleventh A]mendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a state."); *Dube v. State University of New York,* 900 F.2d at 594; *DiNapoli v. DiNapoli,* 95 Civ. 7872, 1995 WL 604607 at *1 (S.D.N.Y. Sept. 22, 1995) (Sotomayor, D.J.).

Thus, absent an exception to Eleventh Amendment immunity (and none is applicable here, *see* Point I.B below), the State and the State courts are immune from Saint–Fleur's suit, both for damages and injunctive relief.

Even if Saint–Fleur were to amend to seek damages from a named state official, his claim could not stand. "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993); *accord, e.g., Minotti v. Lensink,* 798 F.2d 607, 609 (2d Cir.1986), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2484 (1987); *Samuels v. Stone,* 98 Civ. 776, 1999 WL 624549 at *4 (S.D.N.Y. Aug. 17, 1999) (Pauley, D.J.); *Jackson v. Johnson,* 30 F.Supp.2d 613, 618 (S.D.N.Y. Nov. 24, 1998) (Kaplan, D.J. & Peck, M.J.) ("It is black letter law that a suit against a state official in his official capacity seeking damages is barred by the

Eleventh Amendment absent the State's waiver or consent ...")
(citing cases); *Dean v. Abrams,* 94 Civ. 3704, 1995 WL
791966 at *4 n.5 (S.D.N.Y. Dec. 26, 1995) (Kaplan, D.J. &
Peck, M.J.). [6]

B. *No Exception to Eleventh Amendment Immunity Exists
Here*

"The Eleventh Amendment bar to suit is not absolute."
*Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S.
299, 304, 110 S.Ct. 1868, 1872 (1990). As the Supreme Court
recently explained:

> While [Eleventh Amendment]
> immunity from suit is not absolute,
> we have recognized only two
> circumstances in which an individual
> may sue a State. First, Congress may
> authorize such a suit in the exercise
> of its power to enforce the Fourteenth
> Amendment—an Amendment enacted
> after the Eleventh Amendment and
> specifically designed to alter the
> federal-state balance. Second, a State
> may waive its sovereign immunity by
> consenting to suit.

*College Sav. Bank v. Florida Prepaid Postsecondary Educ.
Expense Bd.,* 527 U.S. 666, 119 S.Ct. 2219, 2223 (1999)
(citations omitted); *see also, e.g., Port Authority Trans–
Hudson Corp. v. Feeney,* 495 U.S. at 304, 110 S.Ct. at 1872;
*Richardson v. New York State Dep't of Correctional Servs.,*
180 F.3d 426, 448 (2d Cir.1999) ("a state may be divested of
immunity and haled into federal court in one of two ways:
(1) Congress may abrogate the sovereign immunity through a
statutory enactment, ... or (2) a state may waive its immunity
and agree to be sued in federal court."); *Close v. State
of New York,* 125 F.3d 31, 36 (2d Cir.1997); *Gaynor v.
Martin,* 77 F.Supp.2d 272, 281 (D.Conn.1999); *Nash v. New
York State Executive Dep't, Div. of Parole,* 96 Civ. 8354, 1999
WL 959366 at *5 (S.D.N.Y. Oct. 20, 1999).

**\*4** Neither exception to Eleventh Amendment immunity
applies in this case.

First, it is well-settled that "the civil rights statute 42
U.S.C. § 1983 does not override the eleventh amendment."
*Minotti v. Lensink,* 798 F.2d 607, 609 (2d Cir.1986); *see,
e.g., Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139,
1145 (1979); *Edelman v. Jordan,* 415 U.S. 651, 675–77,
94 S.Ct. 1347, 1361–62 (1974); *Dube v. State University
of New York,* 900 F.2d 587, 594 (2d Cir.1990) ("Although
Congress is empowered under section five of the Fourteenth
Amendment to override Eleventh Amendment immunity
and 'to enforce "by appropriate legislation" the substantive
provisions of the Fourteenth Amendment, which themselves
embody significant limitations on state authority,' ... it is
well-settled that 42 U.S.C. § 1983 does not constitute an
exercise of that authority."). [7]

"Second, the State of New York has not waived its Eleventh
Amendment immunity from federal suit." *Estes–El v. New
York State Dep't of Motor Vehicles,* 95 Civ. 3454, 1997 WL
342481 at *3 (S.D.N.Y. June 23, 1997); *accord, e.g., Trotman
v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 39–40
(2d Cir.1977) (leading case); *DiNapoli v. DiNapoli,* 95 Civ.
7872, 1995 WL 604607 at *1 (S.D.N.Y. Sept. 22, 1995)
(Sotomayor, D.J.) ("New York has not consented to be sued
in federal court.").

As discussed above, the Eleventh Amendment applies to the
State and its agencies, including State courts, regardless of
the relief sought. Neither exception to Eleventh Amendment
immunity applies in this case. Accordingly, Saint–Fleur's
claims for damages and injunctive relief against the State (and
its courts) are barred by the Eleventh Amendment. The State's
motion to dismiss should be granted.

II. *ADDITIONALLY, TO THE EXTENT SAINT–FLUER'S
CLAIMS AGAINST THE STATE ARE INTENDED AS
CLAIMS AGAINST PARTICULAR STATE JUDGES
OR COLLATERAL ATTACKS ON FAMILY COURT
DECISIONS, THE CLAIMS WOULD BE BARRED BY
ABSOLUTE JUDICIAL IMMUNITY AND THE ROOKER–
FELDMAN DOCTRINE*

A. *Claims Against State Judges Are Barred By Absolute
Judicial Immunity*
To the extent that Saint–Fleur's pro se complaint can be
construed (or that leave to amend might be sought) to allege

claims against particular State judges (*see, e.g.,* Saint–Fleur Br. at 1–2, 5), there is an additional ground to dismiss the complaint and deny leave to amend. [8]

The common law rule of absolute judicial immunity protects judges from civil damage suits under § 1983 relating to the exercise of their judicial functions. *See, e.g., Mireles v. Waco,* 502 U.S. 9, 9–12, 112 S.Ct. 286, 287–88 (1991); *Stump v. Sparkman,* 435 U.S. 349, 355–56, 98 S.Ct. 1099, 1104 (1978); *Pierson v. Ray,* 386 U.S. 547, 553–55, 87 S.Ct. 1213, 1217–18 (1967) ("Few doctrines were far more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction," and this doctrine was not abolished by § 1983); *Montero v. Travis,* 171 F.3d 757, 760 (2d Cir.1999) ("It is ... well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages."); *Tucker v. Outwater,* 118 F.3d 930, 933 (2d Cir.) ("Since the seventeenth century, the common law has immunized judges from damage claims arising out of their judicial acts.... The Supreme Court has specifically applied the doctrine of judicial immunity to actions brought pursuant to 42 U.S.C. § 1983."), *cert. denied,* 522 U.S. 997, 118 S.Ct. 562 (1997); *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990) ("Judicial immunity is by now a well-established doctrine.... A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity ."); *Abrams v. Sprizzo,* 98 Civ. 5838, 1998 WL 778001 at *1 (S.D.N.Y. Oct. 29, 1998) (Rakoff, D.J. & Peck, M.J.), *aff'd mem.,* 201 F.3d 430 (2d Cir.1999). [9]

**\*5** Absolute judicial immunity exists "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Bradley v. Fisher,* 80 U.S. 335, 347 (1871); *accord, e.g., Mireles v. Waco,* 502 U.S. at 11, 112 S.Ct. at 288; *Cleavinger v. Saxner,* 474 U.S. 193, 199–200, 106 S.Ct. 496, 499 (1985); *Pierson v. Ray,* 386 U.S. at 554, 87 S.Ct. at 1218 (judicial "immunity applies even when the judge is accused of acting maliciously and corruptly"); *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994), *cert. denied,* 514 U.S. 1102,

118 S.Ct. 1837 (1995); *Carp v. Supreme Court,* No. 5:98–CV–201, 1998 WL 236187 at *1 (N.D.N.Y. May 5, 1998) (Pooler, D.J.). [10] Indeed, as the Supreme Court has made clear, judicial "immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco,* 502 U.S. at 11–12, 112 S.Ct. at 288 (citations omitted). [11]

Saint–Fleur has not alleged any facts suggesting that either exception to judicial immunity applies. Thus, to the extent that Saint–Fleur's claim against the State is, in reality, an attempt to sue State judges for damages, his claims are barred.

As to Saint–Fleur's claim for injunctive relief, in October 1996, as part of the Federal Courts Improvement Act ("FCIA"), Congress amended § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996, § 309(c), Pub.L. No. 104–317, 110 Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983); *see, e.g., Montero v. Travis,* 171 F.3d at 761; *Hili v. Sciarrotta,* 140 F.3d 210, 215 (2d Cir.1998); *Jones v. Newman,* 1999 WL 493429 at *6; *Ackerman v. Doyle,* 43 F.Supp.2d 265, 272 (E.D.N.Y.1999); *Kampfer v. Scullin,* 989 F.Supp. 194, 201 (N.D.N.Y.1997).

Saint–Fleur has not alleged that a declaratory decree was violated or that declaratory relief was unavailable, and thus the 1996 amendments to § 1983 would bar Saint–Fleur's claims against state judges for injunctive relief. *See, e.g., Montero v. Travis,* 171 F.3d at 761 (dismissing claim for injunctive relief against judicial officer where plaintiff alleged neither violation of declaratory decree nor unavailability of declaratory relief); *Malizia v. Westchester County Dist. Attorney's Office,* No. 98–7043, 164 F.3d 618 (table), 1998 WL 712424 at *1 (2d Cir. Oct. 1, 1998); *Ackerman v. Doyle,* 43 F.Supp.2d at 272.

B. *Collateral Attacks on Family Court Decisions Are Barred By the Rooker–Feldman Doctrine*

**\*6** Moreover, to the extent Saint–Fleur's complaint appears to be collaterally attacking the judgment of the Family Court, the action additionally is barred by the *Rooker–Feldman* doctrine, which prohibits federal district courts from reviewing final state court decisions arising out of judicial proceedings absent a federal statute (such as 28 U.S.C. § 2254 governing habeas corpus) authorizing such review. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 1317 (1983) (federal district courts lack jurisdiction "over challenges to state court decisions ... arising out of judicial proceedings even if those challenges allege that the state court's actions were unconstitutional"); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 414–16, 44 S.Ct. 149, 150 (1923); *see, e.g., Pollack v. Nash,* 58 F.Supp.2d at 305 n.3; *Ackerman v. Doyle,* 43 F.Supp.2d at 272–73; *George v. Letren,* 97 Civ. 5991, 1998 WL 684857 at \*3 & n.5 (S.D.N.Y. Sept. 30, 1998) (district court lacked jurisdiction over action challenging perceived errors in paternity and child support actions); *Pal v. Garvey,* 98 Civ. 4900, 1998 WL 427677 at \*1– 2 (S.D.N.Y. July 29, 1998) (no jurisdiction over action alleging constitutional errors in Family Court proceeding resulting in termination of plaintiff's visitation rights with granddaughter); *Sanchez–Preston v. Judge Luria,* 1996 WL 738140 at \*3 ("Because plaintiff's § 1983 claim arises out of an allegedly erroneous or unconstitutional judicial proceeding in the New York Family Court, no valid predicate for jurisdiction lies with this Court."); *Brooks–Jones v. Jones,* 916 F.Supp. 280, 281 (S.D.N.Y.1996) ("A plaintiff ... 'may not seek a reversal of a state court judgment simply by casting her complaint in the form of a civil rights action.' "); *Fariello v. Campbell,* 860 F.Supp. at 67 (no jurisdiction over § 1983 claim alleging constitutional error committed by Family Court in father's contempt proceeding); *Rogers–Fink v. Cortland County Dep't of Social Servs.,* 855 F.Supp. 45, 47 (N.D.N.Y.1994); *Levine v. County of Westchester,* 828 F.Supp. at 242 ("Plaintiff's claims [regarding child custody and sexual abuse proceedings] ..., to the extent that they arise out of or are based upon allegedly incorrect or erroneous decisions in the state courts, are not properly within the jurisdiction of this Court.").

### CONCLUSION

For the reasons set forth above, Saint Fleur's complaint should be dismissed as to New York State, its courts and its judges, and leave to amend should not be granted. In addition, the claims that Saint–Fleur purports to bring on behalf of his son Jermaine should be dismissed as to all defendants.

### *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable William H. Pauley, III, 40 Centre Street, Room 234, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Pauley. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

### All Citations

Not Reported in F.Supp.2d, 2000 WL 280328

## Footnotes

1    Berton Saint–Fleur purports to bring this suit on behalf of both himself and his minor son Jermaine Saint–Fleur. (Cplt.¶ Ill.) However, as this Court noted in a previous report and recommendation in this case, "it is doubtful that Mr. Saint–Fleur, as the non-custodial parent and whose parental rights appear to have been stripped, has standing to assert claims on behalf of the children." (Dkt. No. 11: 1/24/00 Report & Recommendation at 2.) The Court at this time sua sponte recommends that all claims brought by Berton Saint–Fleur against all parties on behalf of Jermaine Saint–Fleur be dismissed.

2    This section summarizes the relevant allegations in plaintiff Saint–Fleur's complaint, without resort to such phrases as "the complaint alleges."

3    *See also, e.g., Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1872 (1990) ("This Court has drawn upon principles of sovereign immunity to construe the [Eleventh] Amendment to 'establish that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." " '); *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939 (1986); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908 (1984); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355 (1974) ("While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought by her own citizens as well as by citizens of another State.") (citing cases).

4    *See also, e.g., United States v. City of Yonkers,* 96 F.3d 600, 619 (2d Cir.1996) (New York State Education Department and State Board of Regents entitled to Eleventh Amendment immunity); *Jackson v. Johnson,* 985 F.Supp. 422, 426 (S.D.N.Y.1997) (Kaplan, D.J. & Peck, M.J.) (New York State Department of Correctional Services entitled to Eleventh Amendment immunity, citing cases).

5    *See also, e.g., Mathis v. Clerk of the First Dep't,* 631 F.Supp. 232, 234 (S.D.N.Y.1986) ("the Appellate Division, a state court, is not amenable to suit under 42 U.S.C. § 1983 ... on the grounds that it is immune from suit by virtue of the Eleventh Amendment"); *Richards v. State of New York,* 597 F.Supp. 692, 693 (E.D.N.Y.1984) (New York Court of Appeals immune under Eleventh Amendment), *aff'd mem.,* 767 F.2d 908 (2d Cir.1985), *cert. denied,* 474 U.S. 1066, 106 S.Ct. 820 (1986).

6    "On the other hand, a suit against a state official in his official capacity based on federal law and seeking prospective injunctive relief is not barred by the Eleventh Amendment." *Jackson v. Johnson,* 30 F.Supp.2d at 618; *accord, e.g., Dube v. State University of New York,* 900 F.2d at 595; *Russell v. Dunston,* 896 F.2d 664, 667–68 (2d Cir.), *cert. denied,* 498 U.S. 813, 111 S.Ct. 50 (1990); *Minotti v. Lensink,* 798 F.2d at 609 ("The amendment does not prevent federal courts from granting prospective injunctive relief against state officials on the basis of federal claims."); *Dwyer v. Regan,* 777 F.2d at 835–36; *Lora v. Greifinger,* 96 Civ. 0628, 1997 WL 102473 at [*]3 (S.D.N.Y. Feb 27, 1997); *Thomas v. Held,* 941 F.Supp. 444, 447 (S.D.N.Y.1996). For the reasons discussed in Point II below, even if Saint–Fleur were to seek leave to amend to sue a State judge solely for injunctive relief, the claim would have to be dismissed.

7    *See also, e.g., Burgos v. Department of Children & Families,* No. 3:98CV874, 2000 WL 145737 at [*]2 (D.Conn. Feb. 7, 2000); *Adams v. Bosco,* 98 Civ. 8737, 1999 WL 165691 at [*]2 (S.D.N.Y. March 25, 1999);

*Casaburro v. Giuliani,* 986 F.Supp. 176, 182 (S.D.N.Y.1997); *Fields v. Walthers,* No. 94–CV–1659, 1997 WL 204308 at [*]2 (N.D.N.Y. April 15, 1997) (Pooler, D. J.); *Daisernia v. State of New York,* 582 F.Supp. 792, 796 (N.D.N.Y.1984) ("The Supreme Court has consistently held ... that § 1983 does not abrogate the eleventh amendment immunity of states.").

8      Saint–Fleur's brief opposing the State's motion states that "[a]lthough the judges' names are unknown, plaintiff ... raised issues regarding '[t]he State of New York's appointed judges' being the guilty parties.... After the involved, unknown names are discovered, plaintiff, with leave from this court, will then amend the complaint to enter the names of the judges." (Saint–Fleur Br. at 5.)

9      *See also, e.g., Sanchez–Preston v. Judge Luria,* No. CV–96–2440, 1996 WL 738140 at [*]4 (E.D.N.Y. Dec. 17, 1996); *Fariello v. Campbell,* 860 F.Supp. 54, 67–68 (E.D.N.Y.1994); *Levine v. County of Westchester,* 828 F.Supp. 238, 243 (S.D.N.Y.1993), *aff'd mem.,* 22 F.2d 1090 (2d Cir.1994).

10     *See also, e.g., Sanchez–Preston v. Judge Luria,* 1996 WL 738140 at [*]4; *Fariello v. Campbell,* 860 F.Supp. at 68; *Levine v. County of Westchester,* 828 F.Supp. at 243.

11     *Accord, e.g., Pollack v. Nash,* 58 F.Supp.2d 294, 303 (S.D.N.Y.1999); *Jones v. Newman,* 98 Civ. 7460, 1999 WL 493429 at [*]6 (S.D.N.Y. June 30, 1999); *Reisner v. Stoller,* 51 F.Supp.2d 430, 442 (S.D.N.Y.1999); *Amaker v. Coombe,* 96 Civ. 1622, 1998 WL 637177 at [*]3 (S.D.N.Y. Sept. 16, 1998); *Carr v. Village of New York Mills, New York,* No. CivA96CV0042, 1998 WL 187395 at [*]2 (N.D.N.Y. April 15, 1998) (Pooler, D.J.); *Sanchez–Preston v. Judge Luria,* 1996 WL 738140 at [*]4.

---

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 204308
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Charles Mason FIELDS, Plaintiff,

v.

Thomas WALTHERS and the New York
State Division of Parole, Defendants.

No. 94–CV–1659 (RSP/GJD).
|
April 15, 1997.

**Attorneys and Law Firms**

Charles Mason Fields, Fishkill, NY, Pro Se.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY, for Defendants; Anthony B. Quartararo, Assistant Attorney General, of counsel.

*ORDER*

ROSEMARY S. POOLER, District Judge.

**\*1** The above matter comes to me following a Report–Recommendation by Magistrate Judge Gustave J. DiBianco, duly filed on the 24th day of March, 1997. Following ten days from the service thereof, the Clerk sent me the entire file, including any and all objections filed by the partied herein. Objections have not been filed.

In his civil rights action, plaintiff alleged that defendants violated his constitutional rights with respect to a preliminary parole revocation hearing. The magistrate judge recommended that I grant defendants' motion for summary judgment because (1) the Eleventh Amendment of the United States Constitution prohibits plaintiffs suit against the New York State Division of Parole, and (2) plaintiff failed to demonstrate that defendant Thomas Walthers was personally involved in plaintiffs alleged constitutional violation.

After careful review of all of the papers herein, including the magistrate judge's Report–Recommendation, and no objections have been submitted thereto, it is

ORDERED, that:

1. The Report–Recommendation is hereby APPROVED.

2. The defendants' motion for summary judgment is GRANTED and the complaint is dismissed in its entirety for the reasons set forth in the magistrate judge's Report–Recommendation.

3. The Clerk serve a copy of this Order on the parties by regular mail.

IT IS SO ORDERED.

REPORT–RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Honorable Rosemary S. Pooler, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules N.D.N.Y. 72.3(c).

In the instant civil rights complaint plaintiff alleges constitutional violations with respect to his preliminary parole revocation hearing held on October 14, 1994. Plaintiff alleges that he was denied his right to counsel at his preliminary hearing.

Plaintiff seeks substantial monetary relief.

Presently before the court is the defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56 (Docket # 12). For the following reasons, this court agrees with the defendants and will recommend dismissal of the complaint.

DISCUSSION

1. *Summary Judgment:*
Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." Id. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

2. *Eleventh Amendment:*

**\*2** One of the defendants in the instant case is the New York State Division of Parole. It is well settled that absent a waiver by the state, or a valid congressional override, the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against the states. *Farid v. Smith,* 850 F.2d 917, 920–21 (2d Cir.1988) (citing *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). When Congress enacted sections 1983 and 1985, it did not abrogate the states' Eleventh Amendment immunity. *United States v. City of Yonkers,* 880 F.Supp. 212, 231 (S.D.N.Y.1995)(citing *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).

For Eleventh Amendment purposes, governmental entities of the state that are considered "arms of the state" receive Eleventh Amendment immunity. *Will v. Michigan Department of Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Komlosi v. New York State OMRDD,* 64 F.3d 810 (2d Cir.1995). The New York State Division of Parole is clearly a state entity to which the Eleventh Amendment immunity applies. Thus, the instant case must be dismissed as against the New York State Division of Parole.

3. *Personal Involvement:*

In order to be liable for damages under section 1983, the defendant must have been personally involved in the alleged constitutional violation. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

In the instant case, plaintiff sues Thomas Walthers, as the Parole Officer that was responsible for the alleged violation. However, it is clear from the transcript of the preliminary parole hearing which has been submitted as part of the defendants' motion for summary judgment, that Mr. Walthers was not even present at the plaintiff's preliminary parole revocation hearing. Additionally, it is apparent that the Parole Officer had absolutely nothing to do with the appointment or the lack of appointment of counsel. It was the Administrative Law Judge (ALJ) that did not allow plaintiff the adjournment to obtain counsel. The ALJ's rationale was that plaintiff had no absolute right to counsel at a preliminary parole revocation hearing. Defendants' Exhibit B, Transcript of Preliminary Parole Revocation Hearing at 14. It was the judge's ruling that plaintiff could proceed at that stage without an attorney. *Id.* Plaintiff then decided he would leave the room because he did not wish to proceed. He voluntarily left the hearing room, and the preliminary hearing was held without him. Id. at 15.

In any event, it is clear that defendant Walthers was not personally involved in the alleged constitutional violation. Thus, the complaint may be dismissed as to this defendant.

WHEREFORE, based on the above, it is hereby

RECOMMENDED, that defendants' motion for summary judgment (Docket # 12) be GRANTED, and the complaint be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp., 1997 WL 204308

---

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4394681

Only the Westlaw citation is currently available.

United States District Court,

E.D. New York.

Ramon FLORES, Plaintiff,

v.

Steve LEVY, Thomas J. Spota, III, Wilma
Peterson, Louis J. Ohlig, Edward Vitale, Douglas
M. O'connor, John A.Bray, Linda Kevins,
John Scarglato, Dana Brown, Defendants.

No. 07-CV-3753 (JFB)(WDW).

|

Sept. 23, 2008.

**Attorneys and Law Firms**

Ramon Flores, pro se.

Wilma Peterson, pro se.

Assistant Suffolk County Attorney Brian C. Mitchell,
Hauppauge, NY, for defendants Thomas J. Spota III, Linda
Kevins, John Scarglato, Dana Brown and Steve Levy.

Amy M. Monahan of L'Abbate, Balkan, Colavitta & Contini
LLP, Garden City, NY, for defendants Robert C. Mitchell,
Edward Vitale, and Douglas O'Connor.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

**\*1** Plaintiff Ramon Flores ("plaintiff" or "Flores"), brings
this action against Suffolk County Executive Steve Levy
("Levy"), Suffolk County District Attorney Thomas J. Spota
III ("Spota"), Assistant District Attorneys Linda Kevins
("Kevins"), Dana Brown ("Brown"), and John Scarglato
("Scarglato") (collectively, "defendant prosecutors"), Suffolk
County Court Judge Louis J. Ohlig ("Judge Ohlig")
(collectively, "County Defendants"), Legal Aid Society
Attorneys Robert C. Mitchell ("Mitchell"), Edward "Ed"
Vitale ("Vitale"), and Douglas M. O'Connor ("O'Connor")
(collectively, "Legal Aid defendants"), John A. Bray, and
Wilma Peterson, alleging malicious prosecution, conspiracy
under 🚩 42 U.S.C. § 1983, and deliberate indifference, all
arising from defendant's prosecution.

Defendants moved to dismiss the claims pursuant to
Fed.R.Civ.P. 12(c). For the following reasons, defendants'
motions are granted.

**I. BACKGROUND**

**A. Facts**

The following facts are taken from the complaint and are not
findings of fact by the court. The Court assumes these facts to
be true for the purpose of deciding this motion and construes
them in the light most favorable to plaintiff, the non-moving
party.

On February 20, 2003, Flores was arrested in Suffolk County
and charged with one count of criminal assault in the second
degree and one count of criminal contempt in the first degree.
(Compl.¶ 1.) On February 25, 2003, an unidentified man came
to see Flores and told him it was not advisable that he testify
before the grand jury. (Compl.¶ 3.) The unidentified man
stated that he was not an attorney and that he could not answer
any additional questions. (Compl.¶ 3.) Later that afternoon,
plaintiff appeared before the court and was provided with
what he believed to be Legal Aid counsel. (Compl.¶ 4.)

On March 5, 2003, plaintiff was taken to the Suffolk County
Court and arraigned on indictment 493-03, which charged
plaintiff with: 3 counts of assault in the second degree, 2
counts of criminal contempt in the first degree, aggravated
contempt, and menacing. (Compl.¶ 4.) Plaintiff informed
the court that he still had no formal attorney of record.
(Compl.¶ 4A.) The Court appointed a Legal Aid attorney
to represent plaintiff. (Compl.¶ 4B.) After the arraignment,
plaintiff complained to Legal Aid attorney Douglas O'Connor
that plaintiff was not provided with an attorney at an earlier
stage. (Compl.¶ 4C.) O'Connor informed plaintiff that a
motion to dismiss would be filed on the grounds that plaintiff
was not afforded an opportunity to testify before the grand
jury, and that plaintiff was not provided counsel at the time
the grand jury was convened. (Compl.¶ 4C.)

On April 3, 2004, plaintiff returned to court and spoke to his
appointed Legal Aid attorney Edward Vitale. (Compl.¶ 5.)
Plaintiff reviewed the proposed motion to dismiss. (Compl.¶
5.) Plaintiff was unhappy that the motion did not raise the
issue of plaintiff's prior lack of representation. (Compl.¶
5.) Plaintiff ordered Vitale not to file the motion. (Compl.¶

5.) Vitale became angry with plaintiff and told plaintiff he was "on his own." (Compl.¶ 5.) Plaintiff notified the Court that he was not satisfied with the motion. (Compl.¶ 5B.) Vitalerequested that he be removed as counsel for plaintiff. (Compl.¶ 5B.) The Court granted Vitale's request and appointed John Bray as counsel. (Compl.¶ 5B.) Further, the court provided plaintiff with additional time to file his motion to dismiss, in order to allow his newly appointed counsel to review the motion. (Compl.5B.)

 **\*2**  On April 8, 2003, the court formally appointed Bray as counsel. The case was adjourned for second call so that plaintiff and Bray could confer. (Compl.¶ 6.) Plaintiff asked Bray to amend the motion to dismiss to include an affidavit, noting that plaintiff was not provided with counsel at the time of indictment. (Compl. ¶ 6A .) Bray refused to make the changes and argued with plaintiff. (Compl.¶ 6A.) No second call occurred and the case was adjourned until April 28, 2003. Thereafter, plaintiff notes that Bray refused to assist him and was not responsive to plaintiff's requests. (Compl.¶ 6B.) On April 18, 2003, plaintiff filed a motion to dismiss, asserting that he was not provided representation during a critical stage of the action. (Compl.¶ 6C.) On April 26, 2004, plaintiff received legal mail containing an order from Judge Ohlig, dismissing the indictment based upon a lack of legal counsel provided to plaintiff. (Compl.¶ 6D.)

On May 4, 2003, plaintiff filed three grievances with the Tenth Judicial District against O'Connor, Vitale, and Bray. (Compl. ¶ 7 .) Plaintiff accused the attorneys of failing to safeguard his rights, lying to him, and failing to provide competent assistance. (Compl.¶ 7.) In addition, plaintiff filed a grievance against Judge Ohlig alleging that he violated plaintiff's constitutional rights. (Compl.¶ 7.)

On May 5, 2003, plaintiff appeared in court to testify before a second grand jury. (Compl.¶ 8.) Plaintiff refused to testify before the grand jury because he did not trust Bray. (Compl.¶ 8.) Plaintiff informed the court of his objections to Bray's representation. (Compl.¶ 8A.) As a result of not testifying, plaintiff claims that he was unable to provide the mitigating defense of "Intoxication." (Compl.¶ 8B.)

On May 19, 2003, plaintiff was arraigned on the superseding indictment 111-03, which contained the same 7 counts as the original indictment, plus an additional count of assault in the first degree. (Compl.¶ 9.) Plaintiff alleges that the complainant testified before the grand jury that plaintiff had "knocked out her teeth" thereby implying that there was a

loss of actual teeth, when, in fact, it was "broken bridge work." (Compl.¶ 9Ai.) Plaintiff alleges that the prosecution knew this testimony was false because the medical records in the prosecution's possession indicated that it was broken bridge work and not a loss or break of actual teeth. (Compl.¶ 9Aii.) Plaintiff concludes that the additional first degree assault charge was added as a punitive tactic designed to silence and stop plaintiff from "asserting and continuing to petition for redress" of his constitutional right to counsel. (Compl.¶ 9B.)

In August of 2004, plaintiff was tried on the eight counts contained within the second indictment. (Compl.¶ 11.) Plaintiff alleges that, on August 4, 2004, on direct examination, Wilma Peterson falsely testified that plaintiff had knocked out her teeth. (Compl.¶ 13.) On August 5, 2004, Brown alluded to the fact that Ms. Peterson had the "knocked out teeth" repaired with bridge work. (Compl.¶ 14.) Plaintiff shouted out that the alleged injury was broken bridge work and not actually teeth. (Compl.¶ 14A.) The Court then asked Ms. Peterson whether plaintiff broke her teeth or bridge work. (Compl.¶ 14A.) Ms. Peterson responded that it was bridge work which wasbroken by plaintiff's actions. (Compl.¶ 14A.) The prosecution allegedly failed to elicit a recantation from Ms. Peterson as to her testimony that she lost actual teeth. (Compl.¶ 14B.)

 **\*3**  On September 2, 2004, after a trial on the charges in the indictment before the court without a jury, plaintiff was convicted of Assault in the Second Degree under Counts 3 and 4, Menacing in the Second Degree under Count 5, Aggravated Criminal Contempt under Count 6, and Criminal Contempt in the First Degree under Count 7. (Compl. at A-2.) Plaintiff was acquitted on the crime of Assault in the First Degree under Count 1, Assault in the Second Degree under Count 2, and Criminal Contempt in the First Degree under Count 8. (Compl. at A-2 and A-3.) The court noted that the basis for acquittal on the Assault in the First Degree charge was the prosecution's failure to establish "serious physical injury," especially in the absence of testimony by a medical expert regarding the victim's condition. *See* September 2, 2004 Decision (Attached to Compl. at A-3) ("While the photographs introduced into evidence by the People did establish that the victim did suffer considerable bruises and a knife wound, these injuries did not rise to the level of serious under the definition found in the Penal Law.").

### B. Procedural History

On September 5, 2007, plaintiff filed this complaint alleging malicious prosecution, conspiracy, and deliberate indifference. On January 31, 2007, the Legal Aid defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 1, 2008, the County Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On May 2, 2008, *pro se* defendant Wilma Peterson filed an answer to the complaint. On May 27, 2008, plaintiff filed an opposition to defendants' motions to dismiss. On June 2, 2008, the Legal Aid defendants filed their reply brief. On June 6, 2008, the County defendants filed their reply brief. On June 22, 2008, Ms. Peterson moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6). On September 2, 2008, plaintiff filed his opposition to Ms. Peterson's motion.

### C. Defendant's Motion to Strike

On August 8, 2008, *pro se* plaintiff filed a motion to strike Ms. Peterson's motion to dismiss. In particular, plaintiff objected to the fact that he did not receive copies of certain exhibits that Peterson attempted to file under seal with her motion to dismiss, which the Court declined to accept for filing and returned to the defendant because they were unnecessary for purposes of deciding the motion to dismiss and would not be considered by the Court. For the reasons discussed below, plaintiff's request to strike the motion on such grounds is frivolous.

On July 22, 2008, in connection with her motion to dismiss, *pro se* defendant attempted to file certain exhibits that consisted of medical records, which she requested be placed under seal and not provided to plaintiff. The purpose of these exhibits was to corroborate Ms. Peterson's description in her affidavit of the injuries, which she testified resulted from plaintiff's assault on her, and to explain why she mistakenly described her broken bridge work as her bottom teeth:

> **\*4** The plaintiff did punch me in my mouth, and, as I relived my horrific ordeal during my testimony in front of a second Grand Jury, I mistakenly described my broken bridge work as my bottom teeth. However, I did not conspire with anyone to make any misleading statements. I was only trying to relate the horrible experience of the night the plaintiff assaulted me.

The medical documents the plaintiff made reference to which formed the basis of his complaint against me, also describes the extent of my injuries caused by the brutal acts he committed against me.

For more than three hours, during the plaintiff's assault on me, he repeatedly punched me all over my body, he stabbed me with a meat cleaver and a knife, he bit me on my body, spat in my face and pulled a significant amount of my hair out of my head. He hopped on my broken leg, of which, I was wearing a cast and stabbed my broken leg with a knife and a meat cleaver. Throughout the plaintiff's assault on me, he continuously threatened to cripple me, to blind me, to paralyze me and to kill me.

When the plaintiff punched me in my mouth, he hit me so hard that he indeed broke my bridge work in the bottom of my mouth which also cut a large gash inside my bottom lip and punctured a hole in my bottom lip. As to date, I continue to suffer from nerve damage in my bottom lip. I have a permanent two and a half inch scar inside my bottom lip and a scar outside of my bottom lip from the punctured hole.

I have bruises all over my body. I had to see an optometrist for treatment of trauma to my eye. I have permanent scars on my forehead, hands and left leg. I continue to suffer from nerve damage in my left leg where he stabbed me with a knife. The plaintiff kicked me, very hard, in my lower back, thus, exacerbating a prior injury to my lower back that the plaintiff was aware of before he assaulted me. I now have facet damage in my lower back. And I am in constant pain.

(Peterson Affidavit, at 2-3) (citations omitted).

On July 22, 2008, the Court issued an order declining to accept these medical exhibits because the Court, for purposes of a motion to dismiss under Rule 12(b)(6), must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.

*See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). Thus, "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). Given this standard, the Court explained in the July 22 Order:

In the instant case, under this standard, the Court may not consider these medical records in connection with the motion to dismiss; rather, the Court will determine whether the allegations in the complaint state a legal claim against the defendant. In other words, consideration of these medical exhibits is unnecessary for purposes of deciding the motion. Therefore, the Court is declining to accept these exhibits at this time and the Clerk of the Court shall return them to plaintiff. Because Exhibits C-G are not being accepted or considered by the Court, her application to have the records sealed is moot and defendant need not serve such exhibits on defendant.

**\*5** (July 22, 2008 Order, at 1-2.)

Although plaintiff contends in his motion to strike that he cannot reply to defendant's submission without such exhibits, that argument is frivolous. As noted above, the Court has assumed his allegations in the complaint to be true and has not considered these exhibits. In fact, that is the reason the Court declined to accept them. Moreover, none of the factual information contained in Ms. Peterson's affidavit, and recited above, is pertinent to the legal issues in the motion to dismiss. Specifically, the primary issues, as discussed *infra,* based upon the allegations in the complaint, are (1) whether the private actor defendants (namely, Ms. Peterson and plaintiff's court-appointed attorneys) can be sued under 🚩 Section 1983, and (2) whether the prosecutors have absolute immunity. The nature and extent of Ms. Peterson's injuries, as well as any medical records corroborating such injuries, have no relevance to the consideration of these legal issues. There is no basis to require Ms. Peterson to supply these materials to plaintiff, and unnecessarily reveal private medical information, where the Court rejected them for filing because they have no relevance at the motion to dismiss stage in determining whether plaintiff has a plausible 🚩 Section 1983 claim. Therefore, plaintiff's motion to strike the defendant's motion was denied on August 21, 2008, and

he was directed to file his opposition by September 15, 2008, which plaintiff did do.

### D. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See* 🚩 *Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); 🚩 *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* 🚩⚠️ *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic,* 127 S.Ct. at 1974. The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.*

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant,* "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.... This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings.... This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant,* No. 06-1590-cv, 2008 U.S.App. LEXIS 17113, at \* 15-\* 16 (2d Cir. Aug. 12, 2008) (citations and quotation marks omitted); *see also* 🚩 *Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (holding that when plaintiff is appearing *pro se,* the Court shall " 'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' ") (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)); *accord Sharpe v. Conole,* 386 F.3d 483, 484 (2d Cir.2004).

**\*6** Finally, in connection with a motion to dismiss under Rule 12(b) (6), as noted above, the Court may only consider

"facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference."

*Nechis,* 421 F.3d at 100; *accord* *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Here, plaintiff appended certain documents to his complaint and the Court has confined its review to the face of the complaint and the documents attached thereto by plaintiff.

## II. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. *42 U.S.C. § 1983.* "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (false arrest) and citing *Conway v. Vill. of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984) (malicious prosecution)).

### A. The Legal Aid Attorneys and Ms. Peterson

Plaintiff asserts Section 1983 claims against (1) Ms. Peterson based upon her allegedly false testimony in connection with his criminal case; and (2) his Legal Aid Attorneys for their alleged failure to adequately represent him in connection with his initial indictment. As discussed below, the Section 1983 claims against these defendants fail as a matter of law because (1) none of these defendants are state actors; and (2) plaintiff's conclusory allegations of conspiracy between these defendants and state actors cannot withstand a motion to dismiss. [1]

### (1) State Action Requirement

An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson,* 454 U.S. 312, 317-38 (1981) (quoting *United States v. Classic,* 313 U.S. 299 (1941)). Thus, a deprivation of a federal statutory or Constitutional right is actionable under Section 1983 when such deprivation is caused "by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Under this standard, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West,* 487 U.S. at 50.

**\*7** In the instant case, it is clear from the allegations of the complaint that neither Ms. Peterson who was the alleged victim of the assault that was the subject of plaintiff's criminal trial, nor the Legal Aid Attorneys who represented plaintiff in the pre-trial stage, are state actors. With respect to his Legal Aid Attorneys, it is axiomatic that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson,* 454 U.S. at 325; *see also* *Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000) ( "[A] legal aid society ordinarily is not a state actor amenable to suit under § 1983.") (citations omitted); *Rodriguez v. Weprin,* 116 F.3d 62, 65-66 (2d Cir.1997) (affirming dismissal of Section 1983 claim against court-appointed appellate attorney for alleged involvement in denial of speedy appeal and noting that "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983") (collecting cases); *Housand v. Heiman,* 594 F.2d 923, 924-25 (2d Cir.1979) ("[P]ublic defenders or court-appointed defense attorneys do not 'act under color of law.' "); *Sanchez v. Gazzillo,* No. 00-CV-6405 (JS)(MLO), 2001 U.S. Dist. LEXIS 7786, at \* 17 (E.D.N.Y. June 5, 2001) (dismissing Section 1983 claim against plaintiff's Legal Aid attorney). Similarly, with respect to Ms. Peterson, the fact that plaintiff alleges that she perjured herself as a witness at his trial does not transform her into a state actor. *See, e.g.,* *Elmasri v. England,* 111 F.Supp.2d 212, 221

(E.D.N.Y.2000) ("[T]he mere fact that an individual testifies at a court proceeding does not render that person a state actor.") (citing *Briscoe,* 460 U.S. at 329-30); *see also Mitchell v. Mid-Erie Counseling Service,* No. 05-CV6169 CJS(P), 2005 WL 1579810, at \*3 (W.D.N.Y. June 29, 2005) (" 'A witness testifying in a state court proceeding-even if [she] is a state employee who has perjured [herself]-has not acted under color of state law for purposes of § 1983.' ") (quoting *McArthur v. Bell,* 788 F.Supp. 706, 710 (E.D .N.Y.1992)).

Although these individuals are clearly not state actors, the Court recognizes that a private actor can be considered as acting under the color of state law for purposes of Section 1983 if the private actor was " 'a willful participant in joint activity with the State or its agents.' " *See Ciambriello,* 292 F.3d at 324 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)) (citation omitted). This potential liability also applies to a court-appointed attorney where the attorney "conspires with a state official to violate the plaintiff's constitutional rights." *Fisk v. Letterman,* 401 F.Supp.2d 362, 378 (S.D.N.Y.2005). Thus, the Court will next examine plaintiff's conspiracy claim to determine whether the allegations are sufficient to survive a motion to dismiss.

(2) Conspiracy Pursuant to § 1983

**\*8** The plaintiff alleges that "all of the defendants ... acted in collusion with the Suffolk County District Attorney's Office and thereby *UNDER COLOR OF STATE LAW* to violate my Federal and State 4th, 5th, 6th and 14th Amendment Constitutional Rights of The Accused." Specifically plaintiff alleges that the Legal Aid defendants conspired with the County Defendants, Bray, and Ms. Peterson to: (1) prevent him from testifying before a grand jury;

(2) deny him effective assistance of counsel; and charge him with additional, higher counts.

The mere use of the term "conspiracy" or "collusion" does not instantly transform a private actor into a state actor for purposes of Section 1983 and is clearly insufficient to satisfy Rule 12(b) (6) in connection with a Section 1983 conspiracy claim. *See Ciambriello,* 292 F.3d at 324 ("A merely conclusory allegation that a private entity

acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."). Instead, "[i]n order to survive a motion to dismiss on a § 1983 conspiracy claim, the plaintiff must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Carmody v. City of New York,* No. 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 25308, at \*16 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-35 (2d Cir.2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello,* 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Walker v. Jastremski,* 430 F.3d 560, 564 n. 5 (2d Cir.2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983.") (citing *Ciambriello); Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Green v. Bartek,* No. 3:05-CV-1851, 2007 WL 4322780, at \*3 (D.Conn. Dec. 7, 2007) ("The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations.").

The need to guard against the use of conclusory allegations of conspiracy in the context of Section 1983 lawsuits against private actors is particularly compelling. If a plaintiff could overcome a motion to dismiss simply by alleging in a conclusory fashion a "conspiracy" between private actors and state actors, these private actors-including lawyers and witnesses-would be subjected to the substantial cost and disruption incurred by litigants in the discovery phase of these lawsuits, without any indication whatsoever that the plaintiff has a "plausible" conspiracy claim. As the Second Circuit has emphasized, these conspiracy claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that "detailed fact pleading is required to withstand a motion to dismiss" them. *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981).

**\*9** As discussed below, the complaint does not contain any specific allegations supporting a "plausible" conspiracy claim involving these private actors and the County Defendants. *Pro se* plaintiff's complaint is nothing more than a compendium

of conclusory, vague, and general allegations of a conspiracy to deprive him of constitutional rights. "Diffuse expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer v. Aronwald,* 567 F.2d 55, 533 (2d Cir.1997). Of course, the Court recognizes that "[a plaintiff is not required to list the place and date of defendant[']s meetings and the summary of their conversations when he pleads conspiracy, ... but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman,* 401 F.Supp.2d 362, 376 (S.D.N.Y.2005) (report and recommendation), accepted by, in part, rejected by, in part, *Fisk v. Letterman,* 401 F.Supp.2d 362 (S.D.N.Y.2005) (citations and quotations omitted). As the Supreme Court recently articulated in *Bell Atlantic Corp. v. Twombly,* although a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be "enough to raise a right to relief above the speculative level." 127 S.Ct. at 1965.

### i. Wilma Peterson

Plaintiff alleges that Ms. Peterson participated in the malicious prosecution against him by providing false testimony to the second grand jury and at trial that plaintiff had broke her bottom teeth. Moreover, plaintiff alleges that the defendant prosecutors were complicit in that perjury because the defendant prosecutors failed to correct the testimony. Nowhere in the complaint does plaintiff specifically assert that an explicit, or even implicit, agreement existed between Ms. Peterson and the defendant prosecutors to enter into a conspiracy. *See Ciambriello,* 292 F.3d at 324 (dismissing Section 1983 conspiracy claim because "[a]bsent from [plaintiff's] complaint are any factual allegations suggesting that [the private actor defendant] conspired with the County"). Plaintiff simply relies on vague and conclusory allegations to imply that Ms. Peterson conspired with the defendant prosecutors. The mere allegation that Ms. Peterson committed perjury regarding damage to her teeth, and the prosecutor's alleged failure to correct such testimony, is insufficient to support a conspiracy claim. *See, e.g ., Rzayeva v. United States,* 492 F.Supp.2d 60 (D.Conn.2007) ("Plaintiffs' vague and conclusory allegations against private 'conspirators' are entirely unclear, unsupported by facts, and insufficient to substantiate their claims."); *Fiske,* 401 F.Supp.2d at 377 ("Communications between a private and a state actor,

without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor."); *see also Marion v. Groh,* 954 F.Supp. 39, 43 (D.Conn.1997) (dismissing Section 1983 claim against a private citizen who testified against plaintiff at criminal trial where plaintiff made only generalized conspiracy allegations). Accordingly, plaintiff's claims of conspiracy regarding Ms. Peterson must be dismissed.

### ii. Legal Aid Defendants

**\*10** Plaintiff alleges that the Legal Aid defendants engaged in numerous conspiracies with the other defendants which include: (1) denying plaintiff his right to counsel; (2) preventing plaintiff from testifying before the grand jury; (3) allowing the defendant prosecutors to "lift" the indictment into the county court; and (4) adding the additional charge of assault in the first degree to the indictment.

Viewing the allegations in the light most favorable to plaintiff, the Court finds that plaintiff has not alleged a conspiracy involving the Legal Aid defendants and any other named party. Plaintiff has failed to articulate any allegations that would suggest that these alleged failures in performance by his attorneys, even if accepted as true, could plausibly support a claim that the Legal Aid defendants were part of a conspiracy with the County defendants. In fact, plaintiff failed to allege that Legal Aid defendants entered into an explicit or implicit agreement with any other named party to this lawsuit. Moreover, as the Second Circuit has noted, generalized allegations of conspiracy "ring especially hollow" where, as here, the parties alleged to be part of the same conspiracy have an "adversarial relationship." *Ciambriello,* 292 F.3d at 324. Given the complete absence of anything other than conclusory allegations of conspiracy, the Section 1983 claims against his Legal Aid attorneys cannot survive a motion to dismiss. *See also Green v. Bartek,* No. 3:05CV1851 (SRU), 2007 WL 4322780, at \*3 (D.Conn. Dec. 7, 2007) (dismissing Section 1983 claim against plaintiff's appointed attorney in Family Court where, "[a]lthough [plaintiff] includes several statements regarding an alleged conspiracy, he includes no facts to support this claim"); *Williams v. Jurow,* No. 05 Civ. 6949(DAB), 2007 WL 5463418, at \*12 (S.D.N.Y. June 29, 2007) ("Since plaintiff has alleged no facts that would, even if accepted as true, establish that the Legal Aid Defendants' conduct constituted

state action, the constitutional claims against them should be dismissed.") (report and recommendation); *Brewster v. Nassau County,* 349 F.Supp.2d 540, 547 (E.D.N.Y.2004) (dismissing Section 1983 claim against Legal Aid Society where plaintiff alleged in a conclusory fashion that Legal Aid waived his rights and failed to adequately represent him in order to "benefit themselves and/or District Attorney," but did "not actually allege[ ] any facts indicating an agreement to act in concert to harm him"); *Hom v. Brennan,* 304 F.Supp.2d 374, 378-79 (E.D.N.Y.2004) (dismissing Section 1983 claim against supervising attorney with the Nassau-Suffolk Law Services because "plaintiff fails to allege with particularity what the alleged conspiracy is, the purpose of the conspiracy, who was involved in the conspiracy, the existence of an act in furtherance of the conspiracy, or that he was injured as a result of the conspiracy"); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *3 (E.D.N.Y. Jan. 28, 1997) ("Notwithstanding the latitude afforded a *pro se* complaint, plaintiff fails to allege any facts supporting an inference that the Defense Attorney defendants colluded with the District Attorney defendants. While plaintiff's allegations might support a state law malpractice action against his former defense attorneys, they do not support a federal court's exercise of jurisdiction under Section 1983.").

**\*11** In sum, having failed to sufficiently allege a conspiracy cause of action between Ms. Peterson, the Legal Aid defendants, and any state actor, the Court dismisses the Section 1983 claim against Ms. Peterson and the Legal Aid defendants. [2]

### (3) Other Defects in Claims against the Legal Aid Defendants

In addition to the legal defects discussed in detail above, there are a number of other grounds set forth by the Legal Aid defendants which independently require dismissal of plaintiff's claims against them as a matter of law.

First, although plaintiff claims that his constitutional rights were violated by the Legal Aid defendants because they failed to ensure his right to appear before the grand jury and testify, it is axiomatic that there is no constitutional right to testify before the grand jury. *See Burwell v. Superintendent of Fishkill Correctional Facility,* No. 06 Civ. 787(JFK), 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008) ("[T]here is no

federal constitutional right to testify before the grand jury. In fact, there is no federal right to a grand jury in state criminal prosecutions."); *Affser v. Murray,* No. 04 CV 2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008) ("[C]ounsel's alleged failure to secure petitioner's presence before the grand jury does not constitute ineffective assistance") (collecting cases). Thus, any claimed deprivation of such a right is not actionable under Section 1983. *See Frankos v. LaVallee,* 535 F.2d 1346, 1348 n. 3 (2d Cir.1976) ("The complaint alleges that appellees successfully conspired to prevent appellant from testifying at a grand jury investigation of the prison stabbing and that attorney Wylie was incompetent in handling plaintiff's request to testify there. Since one must allege deprivation of a constitutional right under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and there is no claim that there is a constitutional right to testify at a grand jury proceeding, the judgment of dismissal of these claims for relief is affirmed for lack of subject matter jurisdiction.").

Second, plaintiff suffered no injury from these alleged deprivations because, as set forth in plaintiff's complaint, the court dismissed the initial indictment and a superseding indictment was presented to a second grand jury during which plaintiff had the opportunity to testify, but refused to do so. (Compl.¶¶ 6(D), 8.) To the extent that plaintiff complains about the charges presented to the second grand jury or about his criminal trial, it is clear that he has no plausible claim for any such allegations against the Legal Aid defendants because they were replaced as his attorneys prior to the presentation of the superseding indictment to the second grand jury.

Third, plaintiff was convicted of all of the charges that were the subject of the initial indictment, which he claimed was the result of ineffective and unconstitutional conduct by the Legal Aid defendants. According to the complaint, the additional higher count of assault in the first degree was only contained in the second grand jury, at a time when he was no longer represented by the Legal Aid defendants. (Compl.¶ 9.) Therefore, any malicious prosecution claims, including any malicious prosecution conspiracy, against the Legal Aid defendants related to the charges in the first indictment are barred by Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994). [3]

**\*12** Finally, even assuming *arguendo* that some Section 1983 claim could exist based solely on the alleged ineffective conduct by the Legal Aid defendants, it would be time-barred.

With respect to 📁Section 1983 and 📁1985 claims, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York. 📁*Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) ( 📁Section 1983), *cert. denied,* 538 U.S. 922 (2003); 📁*Paige v. Police Dep't of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001) ( 📁Section 1985). Here, as set forth in the complaint, the Legal Aid defendants ceased representing plaintiff in April 2003. (Compl.¶ 6(D).) Because plaintiff commenced this action on September 5, 2007, more than three years after Legal Aid represented him, the claims against the Legal Aid defendants would be untimely even assuming they existed, which they do not for the other reasons outlined by the Court.

In sum, plaintiff does not have a plausible 📁Section 1983 claim against the private actors-defendants Peterson, Mitchell, Vitale, O'Connor, and Bray-and such claims are dismissed as a matter of law under Rule 12(b)(6).

B. Absolute Immunity

Plaintiff sues the various County Defendants-DA Spota and ADAs Kevins, Scarglato, and Brown-for allegedly improper conduct (1) in connection with his indictment in the grand jury by conspiring to deny him representation by counsel and to prevent him from testifying before the grand jury; and (2) in connection with his trial by eliciting perjured testimony from witnesses, including Ms. Peterson, and not correcting such testimony. Plaintiff asserts claims against these defendants for malicious prosecution, conspiracy to maliciously prosecute, and "deliberate indifference" to the fact that his rights were being violated in the above-referenced manners.

Defendants argue that the Court should dismiss plaintiff's claims against DA Spota and ADAs Kevins, Scarglato, and Brown on the grounds of absolute immunity. As set forth below, the Court agrees. It is abundantly clear from a review of the conduct allegedly attributed to these prosecutors that all of the conduct was undertaken in their roles as Assistant District Attorneys (or in Mr. Spota's instance, as District Attorney) during the active prosecution of plaintiff and, thus, they are absolutely immune from a civil suit for damages under 📁Section 1983.

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and

pursuing a criminal prosecution is immune from a civil suit for damages under 📁§ 1983." *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir.2005) (quoting 📁*Imbler v. Pachtman,* 424 U.S. 409, 410, 431 (1976) (citation and quotation marks omitted)). "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.... This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.' " *Deronette v. City of New York,* No. 05-CV-5275, 2007 U.S. Dist. LEXIS 21766, at * 12 (E.D.N.Y. Mar. 27, 2007) (citing 📁*Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) and quoting 📁*Imbler,* 424 U.S. at 419 n. 13). However, the Second Circuit has held that in the context of a motion to dismiss under Rule 12(b)(6), "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." 📁*Hill v. City of New York,* 45 F.3d 653, 663 (2d Cir.1995).

**\*13** "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." 📁*Hill,* 45 F.3d at 660 (quoting 📁*Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). In applying this functional approach, the Second Circuit has held that prosecutors are entitled to absolute immunity for conduct " 'intimately associated with the judicial phase of the criminal process.' " *Fielding v. Tollaksen,* No. 06-5393-cv, 2007 U.S.App. LEXIS 28939, at *3-*4 (2d Cir. Dec. 12, 2007) (quoting 📁*Imbler,* 424 U.S. at 430); 📁*Hill,* 45 F.3d at 661 (same). In particular, "[s]uch immunity ... extends to acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." 📁*Smith v. Bodak,* 147 F.3d 91, 94 (2d Cir.1998) (citation and quotation marks omitted). On the other hand, "[w]hen a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." 📁*Hill,* 45 F.3d at 661; *see also Carbajal v. County of Nassau,* 271 F.Supp.2d 415, 421 (E.D.N.Y.2003)

("[W]hen a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest-that is, when he performs functions normally associated with a police investigation-he loses his absolute protection from liability.").

Once a court determines that a prosecutor was acting as an advocate, "a defendant's motivation in performing such advocative functions as deciding to prosecute is irrelevant to the applicability of absolute immunity." *Shmueli,* 424 F.3d at 237 (quoting *Bernard,* 356 F.3d at 502); *see also Kleinman v. Multnomah Cty.,* No. 03-1723-KI, 2004 U.S. Dist. LEXIS 21466, at * 18 (D.Or. Oct. 15, 2004) ("The Ninth Circuit has interpreted *Imbler* to support absolute prosecutorial immunity even when a plaintiff alleges that the prosecutor went forward with a prosecution he believed not to be supported by probable cause.").

Plaintiff claims that defendant prosecutors maliciously commenced a criminal prosecution against plaintiff "through fraud and perjury" and "without probable cause to believe [he] committed the crime." *See* Compl. at 15. Specifically, plaintiff claims that the defendant prosecutors filed a second indictment with the additional charge of first degree assault, as punishment for plaintiff's protestations that he was denied his right to counsel. *See id.* Plaintiff further alleges that this additional charge was added as retribution due to plaintiff's grievances filed against the defendant prosecutors and Judge Ohlig. *See id.* In addition, plaintiff alleges that the defendant prosecutors knowingly elicited false testimony from Ms. Peterson in order to establish the necessary elements for first degree assault. (*See* Compl. at 16.)

**\*14** "It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false." *Urrego v. U.S.,* No. 00 CV 1203, 2005 WL 1263291, at \*2 (E.D.N.Y. May 27, 2005) (finding that a prosecutor is entitled to absolute immunity where he was alleged to have presented false evidence in order to obtain a superceding indictment) (citing *Buckley,* 509 U .S. 260; *Hill,* 45 F.3d at 662; *Bernard v. County of Suffolk,* 356 F.3d 495, 505 (2d Cir.2003)); *see also Storck v. Suffolk County Dep't of Social Servs.,* 62 F.Supp.2d 927, 943 (E.D.N.Y.1999) ("A prosecutor is also absolutely immune from charges alleging the withholding of exculpatory evidence from a grand jury and suppressing *Brady* material. An allegation of conspiracy to perform

the foregoing acts does not change the conclusion that the acts are entitled to absolute immunity.") (citations omitted).

"[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial." *Dory v. Ryan,* 999 F.2d 679 (2d Cir.1993), *as modified at* 25 F.3d 81, 83 (2d Cir.1994). In *Tellier v. Petrillo,* plaintiff alleged that the United States attorneys had "formed a conspiracy to fabricate a new charge, not contained in the original indictment" and had "conspired to present the fabricated evidence to a grand jury in order to obtain a superceding indictment." 133 F.3d 907 (2d Cir.1997.) The Second Circuit affirmed the dismissal of the complaint, noting that the presentation of a superceding indictment was protected by absolute immunity. *Id.* Further, the Second Circuit has specifically held that a prosecutor's determination of which offenses to charge also is protected by absolute immunity. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993).

It is clear that defendant prosecutors' decision to seek a second indictment with the additional charge of first degree assault, as well as any alleged attempt to elicit false testimony from a witness, would be protected by absolute immunity. Similarly, defendants are absolutely immune from suit for any of the wrongful acts alleged in the complaint by plaintiff related to his claim that they presented perjured testimony at trial. Finally, any claim that the prosecutors deprived plaintiff of his right to testify before the first grand jury is also within the ambit of absolute immunity. [4] *See, e.g., Phillips v. Eppolito,* No. 02 Civ. 5662(DLC), 2004 WL 540481, at \*2 (S.D.N.Y. March 17, 2004) ("The Complaint asserts that [the ADA] failed to permit [plaintiff] to testify in front of the Grand Jury. The act of failing to permit [plaintiff] to testify before a Grand Jury falls within the scope of activities protected by the doctrine of absolute immunity. Therefore, the claim of malicious prosecution against [the ADA] must be dismissed."); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at \*2 (E.D.N.Y. Jan. 28, 1997) ("Plaintiff's complaint against the District Attorney defendants-that they denied him the right to testify before the Grand Jury-is based on their presentation of a case before the Grand Jury. It therefore falls within the scope of the prosecutors' absolute immunity.").

**\*15**  Accordingly, plaintiff's claims against the defendants Spota, Kevins, Scarglato, and Brown are dismissed based on the doctrine of absolute immunity. [5]

### C. Deliberate Indifference

Defendants also move to dismiss the claim for "deliberate indifference" to the alleged violations of his constitutional rights. As a threshold matter, any attempt to assert such a claim against the District Attorney, or the Assistant District Attorneys or Judge Ohlig, must be dismissed based on the doctrine of absolute immunity as described *supra.* Similarly, any attempt to bring such a claim against the private actor defendants-Ms. Peterson, the Legal Aid defendants, or court-appointed attorney Bray-must be dismissed for the reasons outlined *supra.*

With respect to the only remaining defendant, County Executive Steve Levy, there is simply no plausible cause of action under Section 1983. To the extent plaintiff is attempting to sue Mr. Levy in his individual capacity, it is beyond cavil that the County Executive cannot be held responsible for the actions of the independently-elected District Attorney's decision to indict and prosecute a defendant. Similarly, to the extent that Mr. Levy is being sued in his official capacity in an attempt to allege some type of municipal liability against the County, that claim must also fail as a matter of law. A district attorney in New York State, when prosecuting a criminal matter, acts in a quasi-judicial manner and represents the State, not the County. Thus, a county cannot establish policy in connection with how a district attorney should prosecute New York State penal laws. Therefore, no municipal liability can arise from the District Attorney's decision to prosecute. In short, plaintiff has failed to articulate any plausible claim for municipal liability given his allegations in the complaint. Accordingly, the claim against the County Executive and any municipal liability claim must be dismissed as a matter of law.

### D. Leave to Replead

Although plaintiff has not requested leave to amend or replead his complaint, the Court has considered whether plaintiff should be given an opportunity to replead. The Second Circuit has emphasized that

> A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.

*Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. [6]  As discussed in detail *supra,* it is clear from the complaint (as well as plaintiff's detailed submissions in opposition to the motion) that he does not have any possibility of asserting a plausible Section 1983 claim. This lawsuit is a blatant and frivolous attempt to sue private actors-such as the key prosecution witness (Ms. Peterson) and his court-appointed criminal defense attorneys-because he believes that they separately contributed to his indictment and conviction, even though such actors clearly do not have Section 1983 liability given the allegations in plaintiff's complaint. *See, e.g., Contes v. City of New York,* No. 99 Civ. 1597(SAS), 1999 WL 500140, at *11 (S.D.N.Y. July 14, 1999) ("It would be futile to grant leave to replead in this case. Without state action, which is lacking here, [plaintiff] cannot prevail on a claim pursuant to § 1983."). Similarly, plaintiff sues the District Attorney and ADAs even though their alleged wrongful conduct in the grand jury and at trial, which is described in the complaint, is clearly protected by absolute immunity. In essence, plaintiff is primarily seeking to re-litigate issues, via this civil lawsuit, that he unsuccessfully challenged on direct appeal in seeking to have his conviction overturned against parties who have no Section 1983 liability even if the facts alleged in his complaint are true. After carefully reviewing all of plaintiff's submissions, it is abundantly clear that no amendments can cure these pleading deficiencies and any attempt to replead would be futile. *See Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to

replead should be denied."); *see also* Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir.1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied").

### III. CONCLUSION

**\*16** For the foregoing reasons, defendants' motions to dismiss plaintiff's claims are GRANTED in their entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purpose of an appeal. *See* Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 4394681

## Footnotes

1    As a threshold matter, there is a substantial question as to whether plaintiff can proceed at all on a malicious prosecution claim for his acquitted counts because they were so closely intertwined with his counts of conviction and are both felonies. The Court recognizes that, in contrast to false arrest claims, the Second Circuit has noted that a conviction on one claim does not necessarily absolve liability under § 1983 for malicious prosecution as to other criminal charges which were resolved favorably to plaintiff. *See* Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir.1989) (holding that claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction for disorderly conduct); *see also* Posr v. Doherty, 944 F.2d 91, 100 (2d Cir.1991) (highlighting "the need to separately analyze the charges claimed to have been maliciously prosecuted"). Thus, for the same reasons in this case, a conviction on assault in the second degree does not necessarily bar a malicious prosecution claim on assault in the first degree or attempted assault in the first degree; rather, the Court should analyze a number of factors, including the relative seriousness of the two offenses, "whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged actions were directed at different people." Pichardo v. N.Y. Police Dep't., No. 98-CV-429 (DLC), 1998 WL 812049, at \*3 (S.D.N.Y. Nov. 18, 1998) (citing Janetka, 892 F.2d at 190); *see also* Ostroski v. Town of Southold, 443 F.Supp.2d 325, 335-40 (E.D.N.Y.2006) (discussing factors). Analyzing the various factors in the instant case-including that both crimes are felonies (and thus are both serious crimes), and arose out of the same incident-the Court concludes that the existence of probable cause as to the counts of conviction should preclude a malicious prosecution claim on the acquitted counts. In fact, as the judge who presided over the bench trial noted, the basis for the acquittal on the assault in the first degree (despite the conviction for assault in the second degree) was the prosecution's failure to demonstrate serious injury. Thus, the acquitted charges are "so closely intertwined with the offense of conviction that there is no reasonable basis to conclude that the [dismissal of] these charges is sufficiently distinct to support a claim of malicious prosecution." Pichardo, 1998 WL 812049, at \*4 (finding conviction on misdemeanor charge precluded malicious prosecution on felony assault count arising out of same incident). In any event, the Court finds that there are numerous other grounds for dismissal of the case, discussed in detail *infra*.

2    Defendant John A. Bray is the court-appointed attorney who replaced the Legal Aid defendants in defending plaintiff in his criminal case. (Compl.¶ 6.) Although defendant Bray has never appeared in this action (and it is unclear whether he was ever served), the Court dismisses the claims against him *sua sponte* because, like the Legal Aid defendants, he is not a state actor. Plaintiff has failed to state a cause of action under Section 1983 against him and plaintiff's claim against Bray, like the other claims in this case, is frivolous. *See, e.g.,* Liner v. Goord, 196 F.3d 132, (2d Cir.1999) (holding that district court is authorized to "dismiss the complaint *sua sponte* if, among other things, the complaint is 'frivolous, malicious, or fails to states [sic] a claim upon which relief may be granted' ") (quoting 28 U.S.C. § 1915(a) & (b)(1)).

3    The Legal Aid defendants also note that the plaintiff appealed his conviction and raised all of the identical arguments he now asserts in this civil lawsuit regarding alleged defects in the indictment, malicious prosecution, and ineffective assistance of counsel. The Appellate Division, Second Department denied his appeal and found his arguments were without merit. *See People v. Flores,* 40 A.D. 876, 878 (2d Dep't 2007) ("The defendant's remaining contentions, including those raised in his supplemental pro se brief, that the indictment was defective, that he was maliciously prosecuted, and that he was deprived of the effective assistance of counsel, are without merit."). The Court of Appeals also denied Flores leave to appeal. *See People v. Flores,* 9 N.Y .3d 875 (2007).

4    To the extent that plaintiff is attempting to argue that absolute immunity should not apply because of some conspiracy between the County Defendants and private actors (such as the Legal Aid defendants and Ms. Peterson), that claim also fails for the reasons discussed in great detail in connection with the Legal Aid defendants and Ms. Peterson. Specifically, plaintiff alleges nothing more than conclusory allegations of conspiracy which are insufficient to survive a motion to dismiss.

5    Plaintiff also alleges that Judge Ohlig conspired with the Legal Aid defendants and the defendant prosecutors to maliciously prosecute the plaintiff. Although Judge Ohlig has failed to appear in the case, the Court, *sua sponte,* finds that Judge Ohlig is entitled to absolute immunity. "A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity." *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990). Where a judge is acting in a judicial capacity, no liability exists even if the judicial action "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). "[F]undamentally, since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Plaintiff alleges that the judge failed to rule on plaintiff's motion and back-dated his ruling. Any action taken by Judge Ohlig in connection with rendering a decision or acting upon plaintiff's motion is clearly within the judicial capacity of the court. Accordingly, Judge Ohlig is absolutely immune from suit and plaintiff's claims against Judge Ohlig are dismissed.

6    In reaching this determination, the Court has reviewed all of the plaintiff's submissions, including the documents that he attached to his opposition, all of which confirm the futility of any amendment as to the proposed federal claims.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 1092681

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Neal BENJAMIN, Plaintiff,

v.

James M. BRANDEN, Esq., Defendant.

21-CV-4927 (LDH) (CLP)

|

Signed 04/12/2022

**Attorneys and Law Firms**

Neal Benjamin, White Deer, PA, Pro Se.

James M. Branden, Law Office of James M. Branden, Staten Island, NY, for Defendant.

## MEMORANDUM & ORDER

BRIAN M. COGAN, United States District Judge:

**\*1** Plaintiff Neal Benjamin, currently incarcerated at Allenwood Low Federal Correctional Institution in White Deer, Pennsylvania, brings this *pro se* action for damages under 42 U.S.C. § 1983[1] against an attorney who represented him in an appellate proceeding before the United States Court of Appeals for the Second Circuit. Plaintiff's request to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915. For the following reasons, the action is dismissed.

## BACKGROUND

Plaintiff was convicted of several drug crimes following a jury trial in the United States District Court for the Western District of New York, *United States v. Benjamin*, No. 97-cr-133-2 (W.D.N.Y., filed June 30, 1997, closed Jan. 23, 2009). Plaintiff is currently serving a thirty-year sentence for that conviction. *See United States v. Benjamin*, 391 F. App'x 942, 948 (2d Cir. 2010). In 2019, in the United States District Court for the Western District of New York, plaintiff filed, and was denied, a motion to reduce his sentence pursuant to 18 U.S.C. § 3582 and the First Act of 2018. *See United States v. Benjamin*, No. 97-cr-133-2 (W.D.N.Y.), ECF Nos. 927, 939.

He appealed the denial of his motion to reduce his sentence to the Second Circuit; that appeal is pending. *United States v. Benjamin*, No. 19-3636-cr (2d Cir. filed Nov. 1, 2019).

Here, plaintiff is suing the attorney who previously represented[2] him on that appeal, James Branden ("Branden"), who is located in Staten Island, New York, and a member of the Second Circuit's Criminal Justice Act ("CJA") Panel, alleging that Branden was "derelict in his constitutional duties under the Sixth (6th) Amendment for his failure to pursue relief that would have been afforded to [plaintiff].". Specifically, plaintiff alleges that Branden failed to heed information that plaintiff emailed to him regarding the Second Circuit's 2010 decision, *United States v. Benjamin*, 391 F. App'x 942, "that places my conviction under 'covered offense' as defined by Section 404 of the First Step Act" and that Branden filed "two (2) adverse petitions," a motion to withdraw the merits brief filed on March 19, 2021 and a motion to dismiss the appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967).

## DISCUSSION

### I. Standard of Review

Under 28 U.S.C. Section 1915 (e)(2)(B), "[n]otwithstanding any filing fee, or any portion thereof that may have been paid,"[3] a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

**\*2** The Court construes plaintiff's *pro se* pleadings liberally particularly because they allege civil rights violations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008). Courts must read *pro se* complaints with "special solicitude" and interpret them to raise the "strongest arguments that they suggest," *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-76 (2d Cir. 2006) (internal quotation marks omitted). However, a complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation the elements of a cause of action will not do.' " *Id.* (quotations and citations omitted). Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quotations omitted).

## II. Violation of Civil Rights: Improper Defendant

Plaintiff brings this lawsuit against his attorney pursuant to 42 U.S.C. § 1983. Compl. at 1. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (citing 42 U.S.C. § 1983). "Thus, to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under the color of state law.' " *Harrison v. New York*, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

"[T]he law is clear that an attorney appointed pursuant to the CJA who performs 'a lawyer's traditional functions as counsel to a defendant in a criminal proceeding' is not a state actor. *Jiau v. Hendon*, No. 12 CIV. 7335, 2014 WL 559004, at *8 (S.D.N.Y. Feb. 12, 2014) quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding") and citing *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997) ("it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"); *Cooper v. Barnet*, No. 15-CV-1498,

2015 WL 4619993, at *3 (E.D.N.Y. July 30, 2015) (whether defense counsel was privately retained or was appointed by the Court to defend plaintiff in the underlying criminal case is "immaterial because attorneys generally do not act under color of state law."). Additionally, plaintiff has not alleged that defendant acted jointly with a state actor or conspired with a state actor to deprive plaintiff of some constitutional right. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (private actors may be considered to be acting under the color of state law for purposes of § 1983 if the private actor was a " 'willful participant in joint activity with the State or its agents.' "). Because plaintiff has failed to plausibly allege that defendant acted under color of state law, the complaint fails to state a claim for relief against him under § 1983 and is therefore dismissed. 28 U.S.C. § 1915(e)(2)(b)(ii).

## CONCLUSION

Accordingly, plaintiff's § 1983 action is dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Defendant's motion to dismiss is denied as moot.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**\*3** The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

## All Citations

Slip Copy, 2022 WL 1092681

**Footnotes**

1    Plaintiff filed a complaint on August 25, 2021, a "Civil Action for Deprivation of Rights pursuant to 🚩42 U.S.C. § 1983," and an amended complaint. The latter two documents repeat the allegations of his complaint.

2    Plaintiff is currently represented by another CJA attorney. *See United States v. Benjamin*, No. 19-3636-CR, ECF No. 102 (Order Relieving James M. Branden as Appellate Counsel to Benjamin).

3    Plaintiff has paid the filing fee.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 92 of 157

2002 WL 31528632
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Trevor L. BROOKS, Plaintiff,

v.

THE NEW YORK STATE SUPREME COURT,
APPELLATE DIVISION FIRST DEPT.; the Disciplinary
Committee, First Dept.; Thomas J. Cahill Chief Counsel
and Raymond Vallejo Attorney for Disciplinary
Committee; Michael Ross, Attorney at Law, Defendants.

No. 02–CV–4183 (RR).
|
Aug. 16, 2002.

**Synopsis**
Disbarred attorney brought § 1983 action against court,
disciplinary committee and various attorneys, alleging racial
discrimination. The District Court, Raggi, J., held that: (1)
court and committee were entitled to absolute immunity;
(2) plaintiff's attorney was not state actor; and (3) *Younger*
abstention was warranted.

Dismissed.

West Headnotes (4)

[1]    **Civil Rights**      States and territories and their
agencies and instrumentalities, in general
State court is not "person" subject to suit under
§ 1983. 42 U.S.C.A. § 1983.

7 Cases that cite this headnote

[2]    **Civil Rights**      Judges, courts, and judicial
officers
State court and disciplinary committee were
absolutely immune from § 1983 liability for
their conduct in disciplinary proceeding, absent
allegation that any non-judicial actions were
taken, or that there was complete absence of all
jurisdiction. 42 U.S.C.A. § 1983.

7 Cases that cite this headnote

[3]    **Civil Rights**      Attorneys and witnesses
Private counsel retained to represent attorney in
disciplinary proceeding was not state actor, and
thus could not be held liable to attorney under
§ 1983. 42 U.S.C.A. § 1983.

9 Cases that cite this headnote

[4]    **Federal Courts**      Professional or other
services;  malpractice
*Younger* abstention was warranted in attorney's
§ 1983 action against participants in on-going
state disciplinary proceedings. 42 U.S.C.A. §
1983.

MEMORANDUM AND ORDER

RAGGI, J.

*1  Plaintiff Trevor L. Brooks, a disbarred attorney
proceeding pro se, sues defendants the New York State
Supreme Court, Appellate Division First Department ("First
Department"), the court's Disciplinary Committee, the
Committee's Chief Counsel Thomas J. Cahill, a Committee
Attorney Raymond Vallejo, and his own retained counsel
Michael Ross,[1] pursuant to 42 U.S.C. §§ 1983 and
1985 for racial discrimination in connection with his
disbarment. Plaintiff demands compensatory damages and an
injunction ordering his reinstatement to the New York bar.

Brooks was admitted to practice law in the State of New York
by defendant First Department in 1976. According to Brooks's
Complaint, in 1996, he decided to relocate to Jamaica and
requested from the First Department a two-year leave of
absence and/or permission to resign from the practice of law.
Apparently, at that time, two disciplinary complaints were
outstanding against Brooks. The First Department's decision
to pursue these complaints, as well as several others filed
against Brooks after he relocated to Jamaica, are at issue in
this case.

## I. *Sua Sponte Dismissal*

🚩 28 U.S.C. § 1915(e)(2) provides that the court shall dismiss a case where it determines that the action is frivolous, or fails to state a claim on which relief may be granted. A complaint "is frivolous where it lacks an arguable basis either in law or in fact"; i.e., where it is "based on an indisputably meritless legal theory" or presents "factual contentions [which] are clearly baseless." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see Alaji Salahuddin v. Alaji,* 232 F.3d 305, 306–7 (2d Cir.2000); *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990). Where, as here, the court "can rule out any possibility, however unlikely it might be, that an amended complaint could succeed in stating a claim," dismissal is appropriate. *Gomez v. USAA Fed. Sav. Bank.,* 171 F.3d 794, 796 (2d Cir.1999); *see also Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (holding that a district court may dismiss a frivolous claim *sua sponte* even when the plaintiff has paid the required filing fee). Thus, because Brooks has failed to provide a sound legal basis for his claim, this court hereby dismisses his action *sua sponte.*

## II. *Claims Against the Court and Disciplinary Committee*

**[1]** "Neither a state nor its officials acting in their official capacities are persons under 🚩 § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Section 1983 does not provide a federal forum for litigants who seek a remedy against the State for alleged deprivations of civil liberties, as the Eleventh Amendment bars such suits. *Id.* at 66. The state court is thus not subject to suit under 🚩 § 1983, rendering Plaintiff's claim meritless. *See Zuckerman v. Appellate Div.,* 421 F.2d 625, 626 (2d Cir.1970) (state court is part of "judicial arm of the state of New York" and thus not subject to suit under 🚩 § 1983).

**\*2** **[2]** Additionally, a state court and, by extension, its members, are immune from a suit for damages for their judicial acts performed in their judicial capacities. *See* 🚩 *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); 🚩 *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 734, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); 🚩 *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Defendants

are alleged to have initiated and conducted disciplinary proceedings against plaintiff in a discriminatory manner in violation of 🚩 42 U.S.C. § 1985. These proceedings resulted in the recommended disbarment of plaintiff and said recommendation was confirmed by the New York State Supreme Court, Appellate Division, First Department.

The absolute judicial immunity of the court and its members "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." 🚩 *Mireles,* 502 U.S. at 11, 13 (quotation omitted). The only way that this immunity can be overcome is if the court is alleged to have taken nonjudicial actions or if judicial actions taken were "in the complete absence of all jurisdiction." 🚩 *Id.* at 11–12.

"State bar disciplinary hearings ... constitute ... state judicial proceedings." ⚠ *Whitely v. Comsat Corp.,* No. 00 Civ. 9401(WHP), 2001 WL 1135946, at \*4 (S.D.N.Y. Sept.25, 2001) (citing 🚩 *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 433—434, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). In New York, in the matter of attorney disciplinary proceedings, the Appellate Division has exclusive jurisdiction. *Paladin v. Finnerty,* No. 92 CV 2792(JG), 1996 WL 1088915, at \*2 (E.D.N.Y. Mar.28, 1996) (citing 🚩 N.Y. Judiciary Law §§ 90(1)—(2)), *aff'd,* 104 F.3d 356 (2d Cir.1996). State bar disciplinary proceedings have been found to be "clearly judicial in nature," and thus quasi-judicial immunity is available to members of disciplinary committees and panels. *Lipin v. Nat'l Union Fire Ins. Co. of Piitsburgh, PA.,* 202 F.Supp.2d 126, 134–35 (S.D.N.Y.2002) (quoting *Sassower v. Mangano,* 927 F.Supp. 113, 120–21 (S.D.N.Y.1996)); *see also* 🚩 *Barbara v. New York Stock Exchange, Inc.,* 99 F.3d 49, 58 (2d Cir.1996) (noting that courts of appeals have extended absolute immunity to members of bar association disciplinary committees).

Plaintiff has not alleged that any of the defendants have taken nonjudicial actions or that the actions taken were done in the absence of all jurisdiction. Indeed, initiating a disciplinary proceeding and confirming a recommendation by the hearing Referee and Hearing Panel is well within the jurisdiction of the defendants. Therefore, plaintiff's first cause of action

seeking damages is dismissed as against the state court, the Disciplinary Committee, and defendants Cahill and Vallejo.

The Court's inquiry does not end there however, for plaintiff also seeks injunctive relief in the form of reinstatement to the practice of law or a hearing regarding the alleged violations. Plaintiff cites 🚩 *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), as authority which allows a state court to be sued for declaratory or injunctive relief under 🚩 section 1983 for acts performed in its enforcement capacity. Subsequent to this decision, the Supreme Court extended this doctrine in 🚩 *Pulliam v. Allen,* 466 U.S. 522, 541–42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), and ruled that prospective injunctive relief could be granted against a judicial officer acting in his or her judicial capacity. However, in 1996 Congress enacted the Federal Courts Improvement Act of 1996 ("FCIA"), Pub.L. No. 104–317, 110 Stat. 3847 (1996) (amending 🚩 42 U.S.C. § 1983), which effectively reversed the Court's ruling in *Pulliam.* Section 309(c) of the FCIA bars injunctive relief in any 🚩 section 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." Therefore, plaintiff's claim for injunctive relief is also dismissed.

### III. *Plaintiff's Claim against his Attorney*

**\*3** Plaintiff has also filed a claim against his former attorney, defendant Michael Ross, under 🚩 42 U.S.C. § 1983. His allegations against defendant Ross, however, consist of allegations of professional misconduct rather than constitutional violations. A claim for relief under 🚩 § 1983 must allege "the deprivation of a right secured by the Constitution or laws of the United States ... which has taken place under color of state law." 🚩 *Rodriguez v. Weprin,* 116 F.3d 62, 65 (2d Cir.1997). There are no such allegations here.

**[3]** Even if Plaintiff had alleged constitutional violations on the part of defendant Ross, such claims would fail to state a claim under 🚩 § 1983 because a lawyer is generally not considered to be "a state actor 'under color of state law' within the meaning of 🚩 § 1983." *Polk County v. Dodson,* 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (recognizing the general consensus among the Courts

of Appeals); *see generally* *Cammer v. United States,* 350 U.S. 399, 405, 76 S.Ct. 456, 100 L.Ed. 474 (1956) ("The word 'officer' as it has always been applied to lawyers conveys quite a different meaning from the word 'officer' as applied to people serving as officers within the conventional meaning of that term.").

It is well settled that public defenders, 🚩 *Polk County,* 454 U.S. at 325, and court-appointed attorneys, 🚩 *Rodriguez,* 116 F.3d at 65, do not act under color of state law when representing criminal defendants. The role of a privately retained attorney is even more remote to the state than that of public defenders and court-appointed attorneys in that he has an obligation to advance the undivided interests of his client, *see* 🚩 *Polk County,* 454 U.S. at 318–319, and his license to practice law does not place him "so close to the core of the political process as to make him a formulator of government policy." 🚩 *In re Griffiths,* 413 U.S. 717, 729, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). Consequently, a privately retained attorney does not act under color of state law within the meaning of 🚩 § 1983 when representing a client in a civil matter. Accordingly, the Court finds that defendant Ross did not act under color of state law and cannot be held liable under 🚩 section 1983.

🚩 Section 1983 "was enacted to redress civil rights violations by persons acting under color of State law" and should not be used by clients disappointed with the performance of their attorneys. *Mitchell v. Cohen,* No. 90 CV 1836(TCP), 1990 WL 100254, at \*1 (E.D.N.Y. Jun.13, 1990). Complaints about the behavior or performance of an attorney should be addressed to the Grievance Committee of the appropriate State Appellate Division. *Id.*

### IV. *Younger Abstention*

**[4]** Furthermore, even if plaintiff were not barred for the reasons noted above, this Court would have to abstain from considering this case pursuant to ❓ *Younger v. Harris,* 401 U.S. 37 (1971), which holds that federal courts should refrain from interfering with pending state judicial proceedings except under special circumstances. "Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.' " *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515,

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 95 of 157

73 L.Ed.2d 116 (1982) (quoting 🚩 *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)). The State of New York obviously has an important interest in regulating the conduct of attorneys licensed by the state and the New York courts are "competent to consider and determine federal constitutional questions." *Hayes v. State of New York,* No. 01–CV–0545E (SR), 2001 WL 1388325, at *3–4 (W.D.N.Y. Nov.1, 2001). Here, plaintiff notes that he has appealed his disbarment to the New York State Court of Appeals and expects a ruling sometime in August 2002. The *Younger* doctrine is not only applicable to any ongoing attorney disciplinary proceeding, *id.* at 3, but it is also applicable to the pending appeal in state court. *See Davidson v. Garry,* 956 F.Supp. 265, 269 n. 2 (E.D.N.Y.1996) (Bartels, J.) (citing

🚩 *New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, 368, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) in extending the *Younger* principles to state civil proceedings), *aff'd,* 112 F.3d 503 (2d Cir.1997)). "[W]hen *Younger* abstention is applicable, abstention is mandatory." *Hayes,* 2001 WL 1388325 at *3 (citing *Schlagler v. Phillips,* 166 F.3d 439, 441 (2d Cir.1999)).

## V. *Conclusion*

**\*4**  For all of the above stated reasons, plaintiff's complaint is dismissed and his request for a preliminary injunction is denied.

*SO ORDERED.*

## CIVIL JUDGMENT

Pursuant to the order issued *August 16, 2002* by the Honorable Reena Raggi, dismissing the complaint and denying the request for a preliminary injunction, it is
ORDERED, ADJUDGED AND DECREED: That the complaint is hereby dismissed and the request for a preliminary injunction is hereby denied.

## All Citations

Not Reported in F.Supp.2d, 2002 WL 31528632

---

## Footnotes

1    The Court notes that it has received a letter written on behalf of an attorney named Michael Jay Ross. The letter explains that plaintiff's complaint was served on Michael Jay Ross in error and that Michael Jay Ross is a different person from the Michael Ross named in the complaint. According to the letter, a copy of the summons and complaint has been forwarded to the correct defendant. Since this case is being dismissed in its entirety, the Court will take no further action regarding the error in service.

---

**End of Document**                                                © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:22-cv-01398-LEK-ML  Document 14  Filed 08/30/23  Page 96 of 157

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 981850
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,
v.
SYRACUSE POLICE
DEPARTMENT, et al., Defendants.

Civil Action No. 5:18-CV-1471 (GTS/DEP)
|
Signed 01/07/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: Jeramie White, Pro se, 18-B-0311, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, NY 13118.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1**  This is a civil rights action brought by *pro se* plaintiff
Jeramie White, a New York State prison inmate, pursuant to
42 U.S.C. § 1983, against the Syracuse Police Department
("SPD") and five of its officers. In his complaint, plaintiff
alleges that defendants violated his constitutional rights
during the course of his arrest on February 13, 2017. Plaintiff's
complaint and accompanying application for leave to proceed
*in forma pauperis* ("IFP") have been referred to me for
review. Based upon my consideration of those materials, I will
(1) grant plaintiff's amended IFP application, (2) recommend
dismissal of his claim against the SPD with leave to replead,
and (3) recommend that his complaint otherwise be accepted
for filing.

I. BACKGROUND
Plaintiff commenced this action on or about December 20,
2018. Dkt. No. 1. According to plaintiff, he and two friends
were on their way to play indoor basketball when their vehicle
was pulled over for a traffic infraction. *Id.* at 4; Dkt. No. 1-1 at
4. Plaintiff alleges that after the stop, defendant William Kittle
forcibly removed White from the vehicle and that Kittle, in
addition to defendants Abraham Mamoun and Shawn Hauck,
proceeded to use excessive force against him during the
course of his arrest. Dkt. No. 1 at 4-5, 6-7; *see also* Dkt. No.
1-1 at 4, 8. Plaintiff further alleges that defendants Altimonda

and Fiorini were present and had an obligation to intervene
and prevent the unlawful use of force, but failed to do so. *Id.*
at 5, 7.

Plaintiff was ultimately arrested and charged with resisting
arrest, in violation of N.Y. Penal Law § 205.30, and
second-degree obstruction of governmental administration, in
violation of N.Y. Penal Law § 195.05. Dkt. No. 1-1 at 4.
As relief, plaintiff seeks compensatory and punitive damages
in the amount of $1,000,000. Dkt. No. 1 at 8.

A. Plaintiff's Amended IFP Application [1]
When a civil action is commenced in a federal district court,
the statutory filing fee, currently set at $400, must ordinarily
be paid. 28 U.S.C. § 1914(a). A court is authorized, however,
to permit a litigant to proceed IFP if it determines that he is
unable to pay the required filing fee. 28 U.S.C. § 1915(a)
(1). [2] Because I conclude that plaintiff meets the requirements
for IFP status, his amended application for leave to proceed
without prepayment of fees is granted. [3]

B. Sufficiency of Plaintiff's Complaint

1. Governing Legal Standard

**\*2**  Because I have found that plaintiff meets the financial
criteria for commencing this case IFP, I must next consider
the sufficiency of the claims set forth in his complaint in
light of 28 U.S.C. § 1915(e). Section 1915(e) directs
that, when a plaintiff seeks to proceed IFP, "the court shall
dismiss the case at any time if the court determines that ... the
action ... (i) is frivolous or malicious; (ii) fails to state a claim
on which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b)
directs a court to review any "complaint in a civil action in
which a prisoner seeks redress from a governmental entity
or officer or employee of a governmental entity," and to
"identify cognizable claims or dismiss the complaint, or any
portion of the complaint, if the complaint ... is frivolous,
malicious, or fails to state a claim upon which relief may be
granted; or ... seeks monetary relief from a defendant who is
immune from such relief." 28 U.S.C. § 1915A(b); *see also*
*Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("We

have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis*.").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' "

*Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

## 2. Analysis of Plaintiff's Claims

**\*3** Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.*, 879 F. Supp. 148 (S.D.N.Y. 1995) ); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *see also Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department."). Although I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the City of Syracuse in place of the SPD, plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the City of Syracuse. Accordingly, I recommend dismissal of plaintiff's claims asserted against the SPD.

With respect to his remaining claims, although plaintiff makes passing reference to his rights arising under the Eighth and

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 98 of 157

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Fourth Amendments, *see* Dkt. No. 1 at 6, it is clear from the factual allegations that he is asserting claims for excessive force and the failure to intervene arising under the Fourth Amendment. *See generally* Dkt. No. 1; *see also Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("Arrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures."). In light of the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and the individual officer defendants should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure. [4]

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branman v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, while I recommend dismissal of plaintiff's claim against the SPD, plaintiff could potentially amend his complaint to assert a cognizable cause of action against a defendant, such as the City of Syracuse, which is amenable to suit. Accordingly, I recommend that plaintiff be granted leave to amend his complaint. If plaintiff chooses to file an amended complaint, he must clearly and concisely set forth the facts

that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

### II. SUMMARY, ORDER, AND RECOMMENDATION

**\*4** Having reviewed plaintiff's amended application for leave to proceed in this action IFP, I conclude that he has met the applicable requirements for leave to proceed without prepayment of fees, and will therefore grant his application. Turning to the merits of his complaint, to the extent that it names five police officers and alleges a violation of 42 U.S.C. § 1983, I conclude that those claims are not subject to dismissal at this procedural juncture. I recommend a finding, however, that plaintiff's claim against the SPD is legally deficient and subject to dismissal, but that plaintiff should be afforded an opportunity to amend with respect to that claim. Accordingly, it is hereby

ORDERED that plaintiff's amended application for leave to proceed in this action without prepayment of fees (Dkt. No. 6) is GRANTED; and it is further

ORDERED that plaintiff's original application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is DENIED as moot; and it is further

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be accepted for filing with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini; and it is further

RECOMMENDED that plaintiff's remaining cause of action against the Syracuse Police Department be otherwise DISMISSED with leave to replead within thirty days of the issuance of an order adopting this recommendation; and it is further

RECOMMENDED that, in the event plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 99 of 157

to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 981850

---

### Footnotes

1   Plaintiff filed both an original and amended motion to proceed in this action IFP. Dkt. Nos. 2, 6. While the two motions contain slightly different information concerning plaintiff's financial status, only the amended motion contains the required certification from an official at the correctional facility in which plaintiff is confined. *Compare* Dkt. No. 3 *with* Dkt. No. 7. Accordingly, plaintiff's original IFP application is denied as incomplete.

2   The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3).

3   Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

4   The court expresses no opinion concerning whether plaintiff's claims can survive a properly filed motion to dismiss or motion for summary judgment, or whether he may prevail at trial.

5   If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 100 of 157

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

2014 WL 6685476
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kylie Ann TURCZYN, Deceased, by and through
Barbara McGREGOR, as Administratrix of
the Estate of Kylie Ann Turczyn, Plaintiff,
v.
CITY OF UTICA et al., Defendants.

No. 6:13–cv–1357 (GLS/ATB).
|
Signed Nov. 26, 2014.

**Attorneys and Law Firms**

Office of Frank Policelli, Frank Policelli, Esq., of Counsel,
Utica, NY, for the Plaintiff.

City of Utica—Corporation Counsel, Mark C. Curley, Esq.,
Merima Smajic, Esq., Zachary C. Oren, Esq., of Counsel,
Utica, NY, for the Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

**\*1** Plaintiff Kylie Ann Turczyn, deceased, by and through
Barbara McGregor, as administratrix of the estate of Kylie
Ann Turczyn, commenced this action against defendants
City of Utica, City of Utica Police Dept., and Elizabeth
Shanley alleging substantive due process claims pursuant to
42 U.S.C. § 1983 and separate state law causes of action.
(Am.Compl., Dkt. No. 12.) Pending is defendants' motion
to dismiss for failure to state a claim. (Dkt. No. 19.) For the
reasons that follow, the motion is granted in part and denied
in part.

### II. *Background*

#### A. *Facts* [1]

Shanley, an Oneida County domestic violence investigator,
was at all relevant times assigned by the Police Department to

accomplish the goals of reducing "occurrence[s] of domestic
violence by increasing reporting and by identifying and
tracking repeat victims and/or offenders," and "increas[ing]
victims' access to supportive services by encouraging [them]
to report their abuse, thereby increasing arrest rates for
domestic offenders." (Am.Compl.¶ 10.) On June 22, 2012,
Thomas Anderson, Turczyn's former boyfriend and the father
of her daughter, broke into Turczyn's home armed with a 9
mm rifle. (*Id.* ¶ 11) Anderson repeatedly shot Turczyn, taking
her life in view of their four-year-old daughter, G.T. (*Id.*)
Anderson then dispatched himself. (*Id.*)

In the twelve months preceding this horrific event, Turczyn
made between five and ten complaints to Utica police
officers, "including informing them of a specific threat by
Anderson to kill her." (*Id.* ¶ 12.) Turczyn specifically told
Shanley "that Anderson was armed and had threatened to
kill her." (*Id.* ¶ 12(d).) Despite their knowledge of domestic
violence between Turczyn and Anderson, neither Shanley,
New York State Police, nor Utica Police took any steps to
arrest Anderson, investigate Turczyn's complaints, or follow-
up with Anderson "as is the policy and protocol of the
domestic violence unit." (*Id.* ¶ 14.)

On June 18, 2012, Shanley told Turczyn to seek an order of
protection, which she attempted to do, but was told by an
unknown person at the Oneida County Family Court to return
the following day because the court was " 'too busy.' " (*Id.*
¶¶ 15–16.) The following day, Turczyn left a voice message
for Shanley, explaining that she was unable to obtain an order
of protection and that Anderson had a gun and planned to
kill her that week. (*Id.* ¶¶ 16–18.) Despite her knowledge,
"Shanley took no action." (*Id.* ¶ 17.) Shanley also mistakenly
believed that Turczyn's issues with Anderson were outside of
the purview of Utica Police and should, instead, be dealt with
by New York State Police; however, "she did not inform any
other police agency or take any action herself." (*Id.* ¶¶ 18, 19,
20.)

#### B. *Procedural History*

Turczyn commenced this action by filing a complaint on
October 31, 2013. (Dkt. No. 1.) Defendants thereafter moved
to dismiss, (Dkt. No. 10.) In response, Turczyn filed an
amended complaint as of right, which is now the operative
pleading. (*See generally* Am. Compl.) In her amended
complaint, Turczyn alleges the following causes of action:
(1) a denial of substantive due process rights under the Fifth
and Fourteenth Amendments due to deliberate indifference;

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 101 of 157

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

(2) a *Monell*[2] claim against the City; (3) negligence; (4) a "derivative abandon" on behalf of G.T.; and (5) negligent infliction of emotional distress. (*Id.* ¶¶ 37–74.) Defendants now move to dismiss the amended pleading pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 19.)

### III. *Standard of Review*

**\*2** The standard of review under Fed.R.Civ.P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in 🚩 *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N.D.N.Y.2010).

### IV. *Discussion*

#### A. *Preliminary Matters*

At the outset, it is noted that some of Turczyn's claims are deemed abandoned by her failure to oppose their dismissal. *See Barmore v. Aidala,* 419 F.Supp.2d 193, 201–02 (N.D.N.Y.2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." (internal citations omitted)); *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause [the] plaintiff did not address [the] defendant's motion to dismiss with regard to [a particular] claim, it [wa]s deemed abandoned and ... dismissed."). In particular, Turczyn squarely opposed dismissal of her substantive due process claim as against Shanley, (Dkt. No. 20 at 8–12), and scarcely, but sufficiently to save the claim from dismissal for abandonment, offered reasons why her substantive due process claim as against the City should survive defendants' motion, (*id.* at 5–7). Aside from the substantive due process claim, Turczyn failed to offer any opposition to defendants' motion, which also sought dismissal of her pendent causes of action. (Dkt. No. 19, Attach. 6 at 31–40 & n. 15.) Accordingly, Turczyn's pendent state law claims, (Am.Compl.¶¶ 59–74), are dismissed.

Additionally, it is clear that the Police Department must be dismissed as urged by defendants, (Dkt. No. 19, Attach. 6 at 2 n. 2), because "a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Varela v. City of Troy,* No. 1:10–cv–1390,

2014 WL 2176148, at \*6 (N.D.N.Y. May 22, 2014) (internal quotation marks omitted). As such, all claims as against the Police Department are dismissed.

The court also notes that both parties have submitted certain evidence that is outside of the pleadings (Dkt. No. 19, Attachs. 3, 4; Dkt. No. 20, Attachs. 1, 2.) Beginning with defendants, they submitted a January 2, 2013 stipulation of discontinuance, which, on its face, purports to memorialize McGregor's agreement to withdraw the notice of claim filed on behalf of Turczyn and to discontinue with prejudice, (Dkt. No. 19, Attach.3), and a December 28, 2012 letter, which appears to memorialize a conversation regarding the discontinuation of legal action and execution of a stipulation, (Dkt. No. 19, Attach.4). Relying on a single out-of-Circuit decision, *see Raines v. Haverford Coll.,* 849 F.Supp. 1009, 1010 (E.D.Pa.1994), which does not appear directly to support their position nor does it give this court confidence that the kinds of documents at issue here were contemplated by that decision, defendants assert that the documents may be considered on their motion to dismiss as "part of the record of this case." (Dkt. No. 19, Attach. 6 at 25 n. 11.) Turczyn argues that defendants' reliance on the stipulation is inappropriate at this juncture, yet she offers the affidavit of McGregor, submitted to dispute the validity of the stipulation, (Dkt. No. 20, Attach.1), without any explanation as to why the court should or may consider it. (Dkt. No. 20 at 12–13.)

**\*3** The court has excluded from its consideration of this motion to dismiss the exhibits offered by defendants as well as the McGregor affidavit. *See* Fed.R.Civ.P. 12(d). The existence of some document or documents that may extinguish a plaintiff's claims, such as a release or stipulation of discontinuance, is an affirmative defense, *see Beede v. Stiefel Labs., Inc.,* No. 1:13–cv–120, 2014 WL 896725, at \*3 (N.D.N.Y. Mar.6, 2014), and " '[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) ... if the defense appears on the face of the complaint,' " *Iowa Pub. Emps.'* 🚩 *Ret. Sys. v. MF Global, Ltd.,* 620 F.3d 137, 145 (2d Cir.2010) (quoting 🚩 *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)).

Here, the stipulation defense is not apparent from the face of the amended complaint. Moreover, the court refuses to consider the documents in question as part of the record of this case, a proposition for which no in-Circuit authority has been offered nor has any been discovered by this court. As such, the documents offered by defendants, (Dkt. No. 19,

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 102 of 157

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Attachs.3, 4), are not properly before the court, and their argument that Turczyn's claims must be dismissed because of those documents is rejected. McGregor's affidavit, (Dkt. No. 20, Attach.1), which was also improvidently submitted for consideration, is likewise excluded. The court now turns to the merits of defendants' arguments regarding the substantive due process and *Monell* claims.

## B. *Rule 8*

First, defendants argue that Turczyn's § 1983 due process claim is subject to dismissal under the Rule 8 plausibility analysis—specifically because of Turczyn's failure to allege facts supportive of a sufficient nexus between Shanley's omissions and Turczyn's death. (Dkt. No. 19, Attach. 6 at 23–24.) The court disagrees. The amended complaint plausibly alleges a causal connection between the conduct of defendants—their alleged conscience-shocking failure to protect Turczyn, (Am.Compl.¶ 49)—and her injuries, *i.e.,* the allegations plausibly suggest that defendants' acts were a substantial factor in bringing about Turczyn's injuries. *See Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir.1998)* ("[I]n all § 1983 cases[ ] the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). Accordingly, this argument is rejected.

## C. *Rule 12(b)(6)*

Defendants argue that Turczyn has failed to state a substantive due process claim as against Shanley or the City. (Dkt. No. 19, Attach. 6 at 220, 26–31.) Defendants contend that Turczyn alleges only passive conduct on the part of Shanley that does not give rise to a substantive due process violation. (*Id.* at 10–12.) More generally, defendants assert that Turczyn has failed to plead facts to show "implicit prior assurances through repeated sustained inaction," and that, even if she did, the state action alleged does not rise to the level of conscience-shocking behavior. (*Id.* at 15–20.) Alternatively, defendants argue that Shanley is entitled to qualified immunity. (*Id.* at 20–23.) With respect to the City, defendants contend that Turczyn has failed to allege facts that support a claim of municipal liability. (*Id.* at 26–31.) For reasons explained below, defendants' motion is denied with respect to Turczyn's substantive due process claim against Shanley, but granted with respect to her *Monell* claim against the City.

**\*4** Only one relevant exception to the general rule that no substantive due process claim lies for a state's failure to protect an individual from private violence, *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989),* potentially applies in this case. That exception imposes liability for failure to protect where state actors in some way affirmatively assist "in creating or increasing the danger to the victim." *Okin v. Vill. of Cornwall–On–Hudson Police Dep't, 577 F.3d 415, 428 (2d Cir.2009)* (internal quotation marks and citation omitted); *see Pena v. DePrisco, 432 F.3d 98, 110 (2d Cir.2005).* "[R]epeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances,' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." *Okin, 577 F.3d at 428* (quoting *Dwares v. City of N.Y., 985 F.2d 94, 99 (2d Cir.1993)*). Moreover, when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" "even though none of the defendants [is] alleged to have communicated the approval explicitly." *Id. at 428–29* (quoting *Pena, 432 F.3d at 111*). In a nutshell, "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Id. at 429.*

A successful substantive due process claim also requires that the plaintiff show "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id. at 431* (quoting *Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).* A hierarchy of intent provides guidance on the likelihood that a particular harm rises to the necessary level. Intentionally inflicted harms are most likely to meet the standard, while reckless and negligent inflictions of harm are each less likely, in graduated downward steps, to show conscience-shocking state action. *Id.* As for recklessly inflicted injuries, " '[d]eliberate indifference that shocks in one environment may not be so patently egregious in another.' " *Id.* (quoting *Lewis, 523 U.S. at 850*). Accordingly, the inquiry is highly fact specific.

Case 6:22-cv-01398-LEK-ML Document 14 Filed 08/30/23 Page 103 of 157

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Unlike *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), or *Neal v. Lee County,* Civil Action No. 1:08CV262, 2010 WL 582437 (N.D.Miss. Feb.12, 2010)—cases in which police had limited interaction with either the victim or killer prior to the victim's demise, and upon which defendants rely for dismissal of the claim against Shanley, (Dkt. No. 19, Attach. 6 at 3–5, 7–8)—the allegations here go substantially farther. Turczyn alleges several occasions [3] when Shanley knew of Anderson's threatening acts and did nothing, which arguably communicated to him prior assurances that there would be no penalty to pay for his conduct. (Am.Compl.¶¶ 12–13.) "This is so even though none of the defendants are alleged to have communicated the approval explicitly." *Pena,* 432 F.3d at 111. *Okin* has specifically recognized the liability that may arise under these circumstances. *See* 577 F.3d at 428–29 (explaining that liability under § 1983 attaches when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others" (quoting *Pena,* 432 F.3d at 111)).

**\*5** The amended complaint also pleads facts that demonstrate, at this juncture, egregious behavior that shocks the contemporary conscience. As in *Okin,* the allegations here tend to show that Shanley, who was tasked with accomplishing certain goals related to curbing domestic violence, was deliberately indifferent as to whether or not Anderson would make good on his multiple threats against Turczyn's life over a twelve-month-period. (Am.Compl.¶ ¶ 10, 12.) These allegations sufficiently support that Shanley's affirmative conduct was the product of deliberate indifference that shocks the conscience, and would provide a reasonable jury with a valid basis to so find. *See Conradt v. NBC Universal, Inc.,* 536 F.Supp.2d 380, 394–95 (S.D.N.Y.2008).

Finally, Shanley is not entitled to qualified immunity at this juncture. Her argument on this issue is two-fold. First, Shanley asserts that no constitutional violation occurred, and, second, she claims that, even if a constitutional violation occurred, the right was not clearly established. (Dkt. No. 19, Attach. 6 at 20–23.) The first prong of the argument is easily swept aside by reference to the preceding paragraphs that explain that the amended complaint alleges a cognizable substantive due process violation. As for whether or not

the right was clearly established, which is a prerequisite to qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this question has been resolved by the Second Circuit. On the issue, the court has explained that it is "clearly established," under the state-created danger theory, "that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply." *Okin,* 577 F.3d at 434. Accordingly, Shanley is not entitled to qualified immunity at this time.

As for the City, defendants assert that Turczyn has failed to plead a *Monell* claim because the amended complaint merely alleges legal conclusions. (Dkt. No. 19, Attach. 6 at 26–31.) With respect to Turczyn's allegation that the City failed to properly train or supervise its employees, defendants contend that the amended complaint is too conclusory, but that, even if adequately pleaded, Turczyn's municipal liability claim must nonetheless fail because she has not alleged deliberate indifference. (*Id.* at 29–31.)

It is well settled that "the inadequacy of police training may serve as the basis for § 1983 liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Oh. v. Harris,* 489 U.S. 378, 380, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The deliberate indifference standard is "stringent" and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* —U.S. ——, ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation marks and citation omitted). A showing of deliberate indifference requires that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.,* 974 F.2d 293, 297–98 (2d Cir.1992) (quoting *City of Canton,* 489 U.S. at 390 n. 10).

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 104 of 157

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

**\*6** Here, because Turczyn has failed to adequately plead that the City's failure to train and supervise amounted to deliberate indifference, she has failed to state a claim of municipal liability. The amended complaint uses the label "deliberate indifference" in reference to Turczyn's municipal liability claim and generically references the City's failure to properly train and supervise, but it fails to allege facts that support either conclusory notion. (Am.Compl.¶¶ 45, 52.) Turczyn's pleading failure mandates dismissal of her *Monell* claim against the City. *See* ⚠ *Gauthier v. Kirkpatrick,* Civil Action No. 2:13–cv–187, 2013 WL 6407716, at *10 (D.Vt. Dec.9, 2013) (dismissing failure to train *Monell* claim because the plaintiff failed to plead facts that supported the deliberate difference elements); *Santos v. New York City,* 847 F.Supp.2d 573, 577 (S.D.N.Y.2012); *see also Worrell v. City of N.Y.,* No. 12–CV–6151, 2014 WL 1224257, at *13 (E.D.N.Y. Mar. 24, 2014).

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims alleged as against the City of Utica Police Dept. and the Clerk is directed to terminate the City of Utica Police Dept. from this action; and

**GRANTED** with respect to Turczyn's *Monell* claim against the City (Am.Compl.¶ ¶ 51–58), which is hereby **DISMISSED WITHOUT PREJUDICE,** and the Clerk is directed to terminate the City of Utica from this action; and

**GRANTED** with respect to all of Turczyn's pendant state law claims, (Am.Compl.¶ ¶ 59–74), which are hereby **DISMISSED;** and **DENIED** in all other respects; and it is further

**ORDERED** that the sole remaining defendant, Shanley, shall file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter in order to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6685476

---

## Footnotes

1    The facts are presented in the light most favorable to plaintiff.

2    *See* ⚐ *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

3    In fact, Turczyn claims that she lodged five to ten complaints—of which Shanley was aware—with the Utica Police within the twelve months preceding the murder. (Am.Compl.¶¶ 12, 13.) So many occurrences may amount to "repeated [and] sustained inaction ... in the face of potential acts of violence." ⚐ *Okin,* 577 F.3d at 428.

---

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 105 of 157

2019 WL 974824
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE DEPARTMENT; Abraham
Mamoun, Syracuse Police Dept.; William Kittle,
Syracuse Police Dept.; Shawn Hauck, Syracuse
Police Dept.; Altimonda, Syracuse Police Dept.;
and Fiorini, Syracuse Police Dept., Defendants.

5:18-CV-1471 (GTS/DEP)
|
Signed 02/28/2019

**Attorneys and Law Firms**

JERAMIE WHITE, 18-B-0311, Plaintiff, Pro Se, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, New York
13118.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Jeramie White ("Plaintiff") against the
Syracuse Police Department and five of its employees
("Defendants"), is United States Magistrate Judge David
E. Peebles' Report-Recommendation recommending that (1)
Plaintiff's Complaint be accepted for filing by the Court
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini, and (2) Plaintiff's remaining cause of action against
the Syracuse Police Department be dismissed with leave to
replead within thirty days of the issuance of an Order adopting
the Report-Recommendation. (Dkt. No. 9.) Plaintiff did not
submit an objection to the Report-Recommendation, and the
deadline by which to do so has expired. (*See generally* Docket
Sheet.) [1]

Based upon a review of this matter, the Court can find
no clear error in the Report-Recommendation: [2] Magistrate
Judge Peebles employed the proper standards, accurately
recited the facts, and reasonably applied the law to those
facts. As a result, the Court accepts and adopts the Report-
Recommendation for the reasons stated therein; Plaintiff's
Complaint is accepted for filing with respect to his Fourth
Amendment cause of action against Defendants Mamoun,
Kittle, Hauck, Altimonda and Fiorini; and Plaintiff's
remaining cause of action against the Syracuse Police
Department is dismissed with leave to replead within thirty
days of the issuance of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Peebles' Report-
Recommendation (Dkt. No. 9) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint is accepted for filing
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini; and it is further

**\*2 ORDERED** that Plaintiff's remaining cause of action
against the Syracuse Police Department is **DISMISSED with
leave to replead within THIRTY (30) DAYS** of the issuance
of this Decision and Order.

**ORDERED** that, in the event Plaintiff files an Amended
Complaint within the above-referenced thirty-day period, it
shall be referred to Magistrate Judge Peebles for review; and
it is further

**ORDERED** that, in the event Plaintiff does not file an
Amended Complaint within the above-referenced thirty-
day period, this action shall move forward with respect to
his Fourth Amendment cause of action against Defendants
Mamoun, Kittle, Hauck, Altimonda and Fiorini, and the Clerk
of the Court is directed to issue summonses and USM-285
forms at that time for service by the U.S. Marshal Service.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 974824

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 106 of 157

## Footnotes

1    The Court notes that, on January 11, 2019, Plaintiff filed a letter from the City of Syracuse Citizen Review Board dated December 31, 2018, outlining its findings with respect to this matter. (Dkt. No. 10.) In its letter, the Citizen Review Board upheld Plaintiff's claim for excessive force against "Det. One," recommended a written reprimand against that individual, and absolved "Det. Two," "Sgt. One," and "Lt. One" from wrongdoing regarding the use of excessive force. (*Id.*) The Court does not liberally construe this letter as any sort of Objection to the Report-Recommendation.

2    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

---

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.                    2

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 107 of 157

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

2019 WL 5002215
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Laytonia FLAGG, Plaintiff,
v.
NYS DIVISION OF PAROLE; Mark Saben,
Parole Officer; Syracuse Police Dept.; Detective
William Summers, ID#409; D.P. Proud, ID#
0140; Richard Curran, ID# 0066; William
J. Fitzpatrick, Onondaga County, District
Attorney; and Sean Chase, D.A., Defendants.

5:19-CV-886 (TJM/ATB)
|
Signed 08/15/2019

**Attorneys and Law Firms**

LAYTONIA FLAGG, Plaintiff pro se

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

 *1  The Clerk has sent me an amended [1] civil rights complaint filed by pro se plaintiff Laytonia Flagg. (Dkt. No. 3). Plaintiff Flagg has also filed an application to proceed in forma pauperis ("IFP"). (Dkt. No. 4).

**I. IFP Application**

A review of plaintiff's IFP application shows that she declares she is unable to pay the filing fee. (Dkt. No. 4). The court finds that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. Complaint**

Plaintiff states that she is the mother of Mario Leslie, who at the time of the incidents described in the complaint, was on parole. (Amended Complaint ("AC") at 1). [2] On August 8, 2016, defendant New York State Parole Officer ("PO") Mark Saben went to Mr. Leslie's home at 514 Marcellus Street in Syracuse, New York, to conduct a "standard home visit." [3] (Id.) Mr. Leslie lived at the Marcellus Street address with his girlfriend, Tamacha Rodriguez. (Id.) Plaintiff claims that Ms. Rodriguez answered the door for PO Saben, and that Mr. Leslie was "summoned" from his bedroom to speak with defendant Saben. (Id.) After some discussion, PO Saben was walking toward the front door, when he spotted some glassine packets "known to contain heroin." (Id.) Upon discovering the glassine packets, defendant Saben informed Mr. Leslie that he was going to conduct a search of the entire residence according to the conditions of his parole release. (Id.)

**\*2** Plaintiff states that, as a result of the subsequent search, the officer discovered a safe, containing a loaded firearm and $31,925 in United States currency. Defendant Saben also discovered a key chain on which were a set of keys that were identified as keys to plaintiff's residence. Plaintiff claims that "[a]t this point Sr. P.O. Rigby called the Syracuse Police Department." [4] (AC at 2). Plaintiff claims that defendant Rigby spoke to Sergeant A. Llukaci, a detective with the Syracuse Police Department, and Sergeant Llukaci told defendants Detectives William Summers and D.P. Proud to go to the Marcellus Street address. Plaintiff states that upon his arrival, defendant Proud stated that he spoke to Ms. Rodriguez, who told defendant Proud that Mr. Leslie kept his money at his mother's apartment "although there is no affidavit on file to attest to that assertion by the [sic] Det. Proud."

Defendant Summers obtained a warrant for the search of plaintiff's home at 112 Fordham Rd. in Syracuse, New York. (AC Ex. CM/ECF p.16-17). Plaintiff claims that she was not home when the "Syracuse Police" and defendant Saben arrived at her home to execute the search warrant. [5] (AC at 2). The officers entered with the key that was found at Mr. Leslie's Marcellus Street home. [6] (*Id.*) Plaintiff arrived shortly thereafter, but was denied entrance to her home while the search was being executed. (*Id.*) Plaintiff states that the officers searched plaintiff's apartment and recovered $40,000.00 in cash from a safe that was located in plaintiff's bedroom closet. Plaintiff alleges that the officers confiscated the money.

Plaintiff claims that the officers did not have probable cause to obtain the warrant to search her home because there was no proof that Ms. Rodriguez ever made the statement that Mr. Leslie kept his money at his mother's house, and thus, the warrant was obtained improperly. Plaintiff claims that her Fourth Amendment rights were violated as the result of the search of her apartment. Plaintiff then claims that after the seizure of her $40,000.00, she informed defendant Assistant District Attorney ("ADA") Sean Chase that the money did not belong to Mr. Leslie, and that the money was plaintiff's savings which she would be using to purchase a new home. (AC at 5). Plaintiff claims that ADA Chase told her that his "office would return the illegally seized money." (*Id.*)

Plaintiff states that, shortly after the incident, she also filed a "complaint" form to complain about the police "conduct in Plaintiff's home," and to request the "immediate return of

the Plaintiff's money." (*Id.*) Plaintiff states that the District Attorney's Office responded to the "property release" request only after plaintiff obtained the intervention of "a 3rd party (Feldman, Kramer & Monaco, P.C.)" (*Id.*) Plaintiff claims that the property release form showed that the plaintiff's "legally possessed currency was improperly forfeited along with the monies ($31,925.00) seized at 514 Marcellus St." (AC at 6).

Plaintiff claims that ADA Chase told plaintiff on three separate occasions that her money was going to be returned, but that this was a "stalling tactic" by the District Attorney's Office. ADA Chase told plaintiff that he was waiting to hear from Mr. Leslie's attorney "in hopes of persuading [Mr. Leslie] to sign a forfeiture document that later became clear to the Plaintiff that the forfeiture included what was seized at both residences...." (AC at 6). The forfeiture document states that Mr. Leslie stipulated to the forfeiture of $67,269.00, and that he was not aware of any other person who claimed to be the owner of the property. [7] (AC at 6). Plaintiff alleges that the $40,000.00 was not Mr. Leslie's to forfeit. Plaintiff also alleges that the amount on the stipulation of forfeiture that Mr. Leslie signed does not account for the entire amount seized, even though plaintiff was not given any of her money back. Plaintiff claims that the actual amount seized, including her $40,000.00 was $71,925.00, and that there is $4,656.00 missing from the total. (*Id.*) Plaintiff also claims that the individuals who seized her money did not have the "warrant in hand" and never gave her a receipt for the money that they took. (AC at 7). Plaintiff states that the money taken from her home was not specifically mentioned in any of the paperwork that was subsequently provided to plaintiff as the result of her inquiries. (AC at 8).

**\*3** Plaintiff states that she spoke to then-Chief of the Syracuse Police, Frank Fowler, who told plaintiff that her concerns would be "thoroughly investigated," but then did not provide plaintiff a report of the investigation and told plaintiff to file a Freedom of Information request if she wished to see the report. (*Id.*) Plaintiff has attached correspondence that she received from former Chief Fowler, stating that the report had been forwarded to him and that plaintiff could "be assured that [Fowler would] take the proper administrative action in this case." (AC Ex. CM/ECF p.19).

Although the AC contains a "Second Cause of Action," plaintiff essentially repeats that her Fourth Amendment rights were violated by the defendants' actions in conjunction with the search of her home and the seizure of her money. (AC at 8-9). Plaintiff states that she has not been afforded any

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 109 of 157

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

documentation that would establish probable cause to search her home. (AC at 9). Plaintiff states that there is no connection between her and Mr. Leslie's "illegal activities," and there was nothing "illegal" found in plaintiff's apartment. (*Id.*) In applying a very liberal reading of the AC, [8] the court could interpret plaintiff's second cause of action as a Fourteenth Amendment Due Process claim, asserting that the defendants deprived her of her money without due process of law when they did not return the money after she made various inquiries and did not allow her to challenge the ownership of the money after her son signed the waiver and stipulation.

As stated above, the plaintiff has attached various documents as exhibits to the AC, including (1) the search warrant issued by City Court Judge Kate Rosenthal for plaintiff's apartment at 112 Fordham Rd. (AC Ex. CM/ECF pp.16-17); (2) Plaintiff's Civilian Complaint Report (AC Ex. CM/ECF p.18); a letter to plaintiff from former Chief Fowler (AC Ex. CM/ECF p.19); a letter to plaintiff from David L. Chaplin, II, Esq. on behalf of the Citizen Review Board dated December 2, 2016 (AC Ex. CM/ECF p. 20); a letter to plaintiff from Kimberly M. Osbeck, a paralegal for the Onondaga County District Attorney's Office, dated March 6, 2018 (AC Ex. CM/ECF p. 21); a letter to plaintiff from the Public Integrity Bureau of the New York State Attorney General's Office (AC Ex. CM/ECF p. 22); an "Application for Release of Property," signed by plaintiff on November 2, 2017, together with the unsigned refusal to release the property because the "money [was] forfeited during [a] criminal prosecution." (AC Ex. CM/ECF pp.23-24); the "Waiver and Stipulation," signed by Mr. Leslie on February 28, 2017, relinquishing any rights to the seized money (AC Ex. CM/ECF pp.25-26); "CNYLEADS Narrative Supplement[s]" numbers 1-3, including an "offense page" and a "property supplement," detailing all the property taken from the Marcellus St. address. (AC Ex. CM/ECF pp.27-32).

Plaintiff seeks the return of the $40,000.00 that she claims was taken from her in August of 2016, compensatory damages for the "Syracuse Police Department trashing Plaintiff's two bedrooms at 112 Fordham Rd.," damages for "five hours" worth of lost income [9] on the day of the search, unspecified lost income for the day that she had to appear in court, [10] and "punitive" damages for emotional pain and suffering, including the damages for the delay in purchasing her dream home. (*Id.*)

## III. Eleventh Amendment/New York State Division of Parole

### A. Legal Standards

**\*4** The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). An action against state officers in their official capacities, or an action against an agency of the state, is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions); *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (agencies of the state).

### B. Application

In this case, in addition to the individual parole officers who were allegedly responsible for obtaining the warrant to search her apartment, plaintiff has named the "N.Y.S. Division of Parole." (AC at 1). The Eleventh Amendment prevents plaintiff from suing the N.Y.S. Division of Parole. Thus, to the extent that plaintiff seeks to sue the agency separately from the individual officers, the AC may be dismissed with prejudice, but as further discussed below, plaintiff may sue Mark Saben, one of the individuals who allegedly participated in obtaining the warrant for her home. [11]

## IV. Syracuse Police Department/Municipal Liability

### A. Legal Standards

Under New York law, departments, like the Syracuse Police Department that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality, and may not sue or be sued. *Hayes v. County of Sullivan*, Nos. 07-CV-667; 09-CV-2071, 2012 WL 1129373, at *24 (S.D.N.Y. March 30, 2012) (citing inter alia *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)).

### B. Application

To the extent that plaintiff is suing the Syracuse Police Department as an entity separate from the individual police officers who were allegedly involved in obtaining the warrant for her apartment, plaintiff may not do so. Unlike the State of New York itself, against which a suit for damages would

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 110 of 157

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

be barred by the Eleventh Amendment, the City of Syracuse could be named instead of the Syracuse Police Department. However, the municipality itself may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Id.* at 694. To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).

**\*5** As it is written, the AC makes no claims that would allow the plaintiff to name the City of Syracuse as a defendant in this action. Plaintiff essentially complains of a single incident, during which the officers did not act properly in obtaining a warrant for her home and did not act properly in executing the warrant in her case. There is no indication that plaintiff can assert a policy or custom which would support municipal liability based on these facts. While plaintiff may not sue the Syracuse Police Department in any event, and while the court will not sua sponte replace the Syracuse Police Department with the City of Syracuse, the court does not rule out that, upon proper pleading, plaintiff could amend her AC to assert such a claim against the City of Syracuse.

However, plaintiff is warned that any such facts must plausibly suggest her claim, and that simply making a conclusory allegation of a "policy or custom" is insufficient to assert municipal liability. *Sulaymu Bey v. City of New York*, No. 17-CV-3563. 2019 WL 1434597, at \*10 (E.D.N.Y. Mar. 29, 2019); *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (conclusory allegations which merely recite the elements for stating a *Monell* claim are insufficient to state a claim for municipal liability) (citing inter alia *Genovese v. Town of Southhampton*, 92 F. Supp. 2d 8, 25 (E.D.N.Y. 2013)). A single incident, particularly if it involved individuals below the policy-making, level is insufficient to state a *Monell* claim. *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). As discussed below, plaintiff may proceed against the individual officers who she claims violated her constitutional rights: Detective Summers, D.P. Proud; and Richard Curran.

## V. Prosecutorial Immunity/Personal Involvement

### A. Legal Standards

### 1. Prosecutorial Immunity

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

### 2. Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 111 of 157

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

subordinates who caused the unlawful condition or event. *Id.* See also 🚩⚠️ *Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing 🚩 *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995), *rev'd on other grounds*, 🚩 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**\*6** Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See* 🚩⚠️ *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting 🚩 *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)).

*See also* 🚩 *Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at \*8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B. Application

Plaintiff has named the Onondaga County District Attorney, William J. Fitzpatrick, together with one of his Assistant District Attorneys, Sean Chase. (AC ¶ 3(c)). Plaintiff claims that she spoke to ADA Chase "right after the seizure," she explained to him that the money did not belong to her son, the money was hers, and she "produced tax returns" for the last five consecutive years in an effort to show that she "legally possessed the money." (AC at 5). She claims that "[k]nowing this," ADA Chase told plaintiff that his office would return the illegally seized money. (*Id.*) Plaintiff claims that notwithstanding ADA Chase's statement, he did not return the money, and allegedly "stalled" plaintiff until her son signed the waiver of forfeiture document, which included the total amount of money that was seized from both residences. (AC at 6). The initiation of civil asset forfeiture proceedings is a prosecutorial function that has been afforded absolute immunity. *See Byrne v. City of New York*, 736 Fed. App'x 263, 266 (2d Cir. 2018) (Second Circuit precedent affords absolute immunity to government attorneys who initiate civil suits) (quoting 🚩 *Spear v. Town of W. Hartford*,

954 F.2d 63, 66 (2d Cir. 1992); 🚩 *Mangiafico v. Blumenthal*, 471 F.3d 391, 395 (2d Cir. 2006)).

ADA Chase was allegedly handling the forfeiture proceeding, and even though he did not have to initiate court proceedings because Mr. Leslie signed the stipulation and waiver, the document stated that "I have concluded that the District Attorney would likely establish that the above-mentioned property is subject to forfeiture pursuant to Article 13-A [of the NY Civil Practice Law and Rules] and the District Attorney would likely prevail in such a forfeiture action." [12] (AC Ex. CM/ECF p.25). This document took the place of an in-court forfeiture proceeding, which would have been held pursuant to 🚩 *N.Y. Civ. Prac. L. & R. § 1311* (Forfeiture Actions). Thus, ADA Chase is entitled to absolute immunity with respect to his conduct relative to the forfeiture of the money seized, even if plaintiff claimed that some of the money belonged to her. [13] This is true whether ADA Chase's conduct was proper or improper, and whether or not he was mistaken in obtaining Mr. Leslie's waiver and stipulation of forfeiture. Thus, to the extent that plaintiff raises due process violations with respect to her interest in the funds, they must be dismissed as against ADA Chase.

**\*7** Plaintiff has not asserted any facts against defendant Fitzpatrick. [14] He does not appear to have been involved in any way in obtaining the search warrant for plaintiff's apartment, in executing the search warrant for plaintiff's apartment, or in the forfeiture proceedings with respect to the money seized. Thus, any claims against him individually would fail for lack of personal involvement. If he had been personally involved in the forfeiture, he, like ADA Chase, would be entitled to absolute prosecutorial immunity. [15] Thus, plaintiff's amended complaint may be dismissed with prejudice as against defendants ADA Chase and DA Fitzpatrick.

### VI. Search and Seizure

#### A. Legal Standards

"It is well-settled that in cases raising claims under the Fourth Amendment of unauthorized execution of a search warrant '[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to disclose, to the issuing Magistrate.' " *Arroyo v. City of Buffalo*, No. 15-CV-753, 2018 WL 4376798, at \*3 (W.D.N.Y. Sept. 13, 2018) (quoting 🚩 *Velardi v. Walsh*, 40 F.3d 569,

575 n. 2 (2d Cir. 1994) (internal quotation marks omitted)). A warrant is not invalid for section 1983 purposes if it is " 'based on seemingly reliable information which is later found to be erroneous.' " *Id.* (quoting *Lewis v. City of Mt. Vernon, N.Y.*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997)).

**B. Application**

Although the court has concerns about the merits of this action, at this stage of the proceedings, the court finds that any Fourth Amendment claims that plaintiff may have against defendants Saben, Summers, Proud, and Curran may survive initial review. [16] Plaintiff seems to claim that the warrant for her home was based on false information given the court, which plaintiff claims was the only basis for the warrant. While it may be that a close review of the documents provided with the amended complaint, together with any other evidence or argument by defendants in a properly supported dispositive motion, may show otherwise, the court is not currently in a position to make factual or other determinations regarding the validity of the warrant or any other claims that plaintiff may have regarding the search of her home.

**\*8** The court also notes that because of the waiver and stipulation, signed by Mr. Leslie, there was no formal forfeiture proceeding in New York State Court as provided in N.Y. Civ. Prac. L. & R. § 1311. Thus, it is unclear how the plaintiff could have challenged the forfeiture. [17] The court also makes no findings regarding the validity of any defenses that the defendants may assert regarding the incident in question.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 4) is **GRANTED**, and it is

**RECOMMENDED**, that the amended complaint (Dkt. No. 3) be **DISMISSED IN ITS ENTIRETY** as against defendants **N.Y.S. DIVISION OF PAROLE; SYRACUSE POLICE DEPARTMENT; WILLIAM J. FITZPATRICK; AND SEAN CHASE**, and it is

**RECOMMENDED**, that to the extent that the AC may be read as naming **SGT. LLUKACI or PO RIGBY**, the AC may be dismissed **WITHOUT PREJUDICE** for failure to state a claim, and it is

**RECOMMENDED**, that if the District Court adopts this Recommendation, the case be returned to me for further proceedings, including an order serving the remaining defendants: **SABEN, SUMMERS, PROUD, and CURRAN**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5002215

**Footnotes**

1   When plaintiff filed her original complaint, the case was administratively closed due to plaintiff's failure to comply with the filing fee requirement. (Dkt. No. 2). Prior to re-filing her motion to proceed IFP, (Dkt. No. 4), plaintiff also filed an amended complaint, which the court will review as the operative pleading. The case was re-opened on August 1, 2019. (Dkt. No. 6).

2   Plaintiff numbered the pages of the "Fact" section of the amended complaint at the bottom of the page. The court will cite to the page numbers contained on the actual document. Plaintiff has attached a series of

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 113 of 157

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

documents as exhibits to the amended complaint which she did not number. The court will cite to the plaintiff's exhibits ("AC Ex.") with the page number as assigned by the court's electronic filing system ("CM/ECF").

3    Plaintiff was not present for any of the incidents that she describes in her complaint until she arrived at her house during the subsequent search of her property. Plaintiff appears to be taking her recitation of the background facts from the police reports and other documents that she has attached to her amended complaint. (AC Ex. CM/ECF pp. 16-32). The court is stating the facts as plaintiff has described them in the amended complaint.

4    This is the first time that another parole officer was mentioned in plaintiff's statement of facts. The court will assume that defendant Rigby was at the residence from the beginning, but it is not completely clear from the papers.

5    Plaintiff does not allege that PO Rigby participated in the search of her apartment.

6    Plaintiff states that the officers were in possession of the door key "prior to their actual possession of the warrant for 112 Fordham Rd." (AC at 2).

7    Plaintiff has attached a copy of Mr. Leslie's "Waiver and Stipulation." (AC Ex. CM/ECF p.25-26). Plaintiff claims that this document was obtained after she asked for the return of the money several times from the District Attorney's Office, the Citizen Review Board, and the Syracuse Police Department. (AC at 7). When she failed to get a "truthful" response, she contacted Feldman, Kramer & Monaco, P.C. (*Id.*) The document was sent to the attorneys' office after the firm wrote a letter of inquiry. (*Id.*)

8    Plaintiff is pro se, and the court must interpret plaintiff's complaint liberally. 🚩 *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008). The court considers all possible grounds for relief that plaintiff could be raising. *See* 🚩 *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

9    Plaintiff states that she works from home, and could not work for the time that the officers were searching her apartment. (AC at 10).

10    Apparently, on the day that the officers searched plaintiff's apartment, they found a "weed roach" and gave plaintiff an appearance ticket, which was later dismissed after plaintiff appeared in court. (AC at 10). Plaintiff seeks lost income for the time that it took to appear in court. (*Id.*)

11    It is unclear whether plaintiff meant to name PO Rigby as a defendant herein. He is mentioned briefly in the body of the complaint and was apparently present during the Marcellus St. search, but is not listed in the caption of the complaint, and plaintiff submitted no proposed summons for PO Rigby. In addition, it does not appear from the facts as stated by plaintiff that PO Rigby was involved in obtaining the search warrant for plaintiff's apartment, nor is it even apparent that he was present during the search of plaintiff's apartment. Thus, plaintiff does not state any claims against PO Rigby, and to the extent that she meant to name him as a defendant, the AC should be dismissed as against him.

12    Article 13-a is entitled "Proceeds of a Crime -Forfeiture." N.Y. Civ. Prac. L. & R. Art. 13-a

13    Although not relevant to the court's decision because it is based on absolute immunity of the prosecutor, regardless of whether Mr. Leslie's assertions in the document were correct, the court notes that plaintiff's statement herein is contrary to her son's **sworn** assertion in the document. Plaintiff states that ADA Chase told plaintiff that they were waiting to hear from Mr. Leslie's attorney regarding whether he was going to sign the forfeiture document. (AC at 6). Plaintiff claims that her son signed the document "under duress."

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 114 of 157

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Plaintiff cannot assert any claims regarding her son, and in any event, her son was, by her own statement, represented by counsel during the matter.

14    Plaintiff requests only damages, including a return of the $40,000.00 as relief in this action. She does not seem to be asking for any form of injunctive relief. Even though plaintiff asks for a "return" of money, the Eleventh Amendment does not "recognize a distinction 'between monetary damages and money in which plaintiff has a property interest.' " 🚩 *Local 851 of Internat'l Broth. of Teamsters v. Thyssen Haniel Logistics, Inc.*, 90 F. Supp. 2d 237, 249-50 (E.D.N.Y. 2000) (quoting *Yorktown Medical Lab., Inc. v. Perales*, 949 F.2d 84, 87-88 (2d Cir. 1991)). The District Attorney could have been the proper party in a declaratory judgment under New York State law under N.Y. Civ. Prac. L & R. 1327 (Proceedings to Determine Adverse Claims), which plaintiff could have filed within six months of the stipulation, signed by Mr. Leslie.

15    To the extent that the complaint could be interpreted as suing either ADA Chase or DA Fitzpatrick in their "official capacities," the Eleventh Amendment would bar any such suit. *See Blessinger v. City of New York*, No. 17-CV-108, 2017 WL 3841873, at *1-2 (S.D.N.Y. Sept. 1, 2017) (prosecutors are entitled to Eleventh Amendment immunity when they are acting in their prosecutorial capacity because they are acting as state officials rather than city or county employees) (citing 🚩⚠ *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 157 (S.D.N.Y. 2007) and 🚩 *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) (when prosecuting a criminal matter, a district attorney in New York State represents the State not the County)).

16    Although plaintiff has included a proposed summons for Sgt. Llukaci, this individual is not listed in the caption of the AC, nor is he included in the section of the form-AC which lists the individual Syracuse Police Officers. (AC ¶ 3(c)) for whom she has included identification numbers. In any event, plaintiff's only allegations against Sgt. Llukaci are that he sent defendants Proud and Summers to Mr. Leslie's Marcellus St. home after the parole officers found contraband therein. Plaintiff does not allege that he was personally involved in any of the conduct that she claims violated her constitutional rights. He was not at either residence and was not involved in obtaining the allegedly invalid warrant. Thus, to the extent that plaintiff is trying to sue Sgt. Llukaci, the AC may be dismissed as against this defendant.

17    The court does note that 🚩 section 1311(7) provides that an innocent owner may challenge the forfeiture and regain the forfeited property if the owner never received notice of the forfeiture. In addition, section 1327 provides for an "interested person" to bring a proceeding to determine adverse claims, even after the forfeiture action was settled by stipulation. *See Tupi Cambios, S.A. v. Morganthau*, 48 A.D.2d 278 (1st Dep't 2008). In *Tupi Cambios*, the District Attorney was the proper "defendant" in New York State Court.

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 115 of 157

2019 WL 4963112
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Laytonia FLAGG, Plaintiff,

v.

NYS DIVISION OF PAROLE; Mark Saben,
Parole Officer; Syracuse Police Dept.; Detective
William Summers, ID#409; D.P. Proud, ID#
0140; Richard Curran, ID# 0066; William
J. Fitzpatrick, Onondaga County, District
Attorney; and Sean Chase, D.A., Defendants.

5:19-CV-886
|
Signed 10/08/2019

**Attorneys and Law Firms**

Laytonia Flagg, Syracuse, NY, pro se.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

*1  This pro se action brought pursuant to 42 U.S.C. §
1983 was referred to the Hon. Andrew T. Baxter, United
States Magistrate Judge, for a Report and Recommendation
pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).
In his Order and Report-Recommendation dated August 15,
2019 (Dkt. No. 7), Magistrate Judge Baxter grants Plaintiff's
application to proceed in forma pauperis, and examines
the sufficiency of the allegations set forth in the Amended
Complaint ("AC") in light of 28 U.S.C. § 1915. He
recommends that the AC (Dkt. No. 3) be dismissed in its
entirety as against defendants N.Y.S. Division of Parole,
Syracuse Police Department, William J. Fitzpatrick, and Sean
Chase; that to the extent that the AC may be read as naming

Sgt. Llukaci or PO Rigby, the AC be dismissed without
prejudice for failure to state a claim; and that if the Court
adopts these recommendations that the case be returned to
him for further proceedings, including an order serving the
remaining defendants Saben, Summers, Proud, and Curran.
No objections to the Report-Recommendation have been
filed, and the time to do so has expired.

**II. DISCUSSION**

After examining the record, this Court has determined that the
Order and Report-Recommendation is not subject to attack
for plain error or manifest injustice.

**III. CONCLUSION**

Accordingly, the Court **ACCEPTS and ADOPTS** the
recommendations in the Order and Report-Recommendation
(Dkt. No. 7) for the reasons stated therein. Therefore, it is
hereby

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 3)
is **DISMISSED IN ITS ENTIRETY** as against defendants
N.Y.S. DIVISION OF PAROLE, SYRACUSE POLICE
DEPARTMENT, WILLIAM J. FITZPATRICK, and SEAN
CHASE, and it is further

**ORDERED** that to the extent the Amended Complaint may
be read as naming SGT. LLUKACI or PO RIGBY, it is
**DISMISSED WITHOUT PREJUDICE** for failure to state
a claim, and it is further

**ORDERED** that the case be returned to Magistrate Judge
Baxter for further proceedings, including an order serving the
remaining defendants: SABEN, SUMMERS, PROUD, and
CURRAN.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4963112

---

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

## Attorneys and Law Firms

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

## DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 117 of 157

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss— the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

 **\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* *Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 118 of 157

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

 **\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

 **\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 119 of 157

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

 **\*5**  Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their]] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.2d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

### CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 121 of 157

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

End of Document                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16579207
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Lowell J. BRITT; also known
as Lowell J. Britt, IV, Plaintiff,

v.

John DOE, State of New York; Jane Doe, State
of New York; John Doe, Broome County District
Attorney's Office; Jane Doe Broome County District
Attorney's Office; David Harder, Sheriff, Broome
County Sheriff's Dep't; Nicholas Miller, Sheriff,
Broome County Sheriff's Dep't; and Sheriff John
Doe, Broome County Sheriff's Dep't, Defendants.

3:22-CV-0692 (GLS/ML)
|
Signed October 13, 2022

**Attorneys and Law Firms**

LOWELL J. BRITT, Plaintiff, Pro Se, Orleans Correctional
Facility, 3531 Gaines Basin Road, Albion, New York 14411.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1)
together with an amended application to proceed *in forma
pauperis* (Dkt. No. 4) to the Court for review. For the reasons
discussed below (1) Plaintiff's amended motion for leave to
proceed *in forma pauperis* (Dkt. No. 4) is granted, and (2) I
recommend that his Complaint (Dkt. No. 1) be (a) accepted
in part for filing, and (b) dismissed in part (i) with leave to
amend, and (ii) without leave to amend.

**I. BACKGROUND**

Liberally construed, [1] Plaintiff's Complaint [2] asserts that his
rights were violated by the following seven defendants: (1)
John Doe, State of New York, [3] (2) Jane Doe, State of New
York, [4] (3) John Doe, Broome County District Attorney's
Office, (4) Jane Doe, Broome County District Attorney's
Office, (5) David Harder, Sheriff, Broome County Sheriff's
Department, (6) Nicholas Miller, Sheriff, Broome County
Sheriff's Department, and (7) Sheriff John Doe, Broome

County Sheriff's Department (collectively "Defendants"). [5]
(*See generally* Dkt. No. 1.)

More specifically, Plaintiff alleges that he leased the property
located at 196-Twist Run Road, Endicott, New York (the
"Property"). (Dkt. No. 1 at 32.) Plaintiff alleges that on July
15, 2021, at approximately 1:00 p.m., he was at the Property
with his two minor children when two Broome County
Sheriff's Department deputies (Defendant Sheriff John Doe,
Broome County Sheriff's Department and Defendant Miller)
arrived to serve him with a Family Court issued temporary
order of protection (the "Order"). (Dkt. No. 1.) Plaintiff
alleges that the Order barred him from contacting the mother
of his children (Jasmine Brown) and his children. (*Id.*)
Plaintiff alleges that he, Defendant Miller, Defendant Sheriff
John Doe, and Ms. Brown came to an agreement whereby,
Ms. Brown and the children would remain at the Property for
the night and Plaintiff would vacate. (*Id.*)

Plaintiff alleges that he left the Property and some time later,
he viewed his home security cameras where he observed Ms.
Brown packing up the children's belongings and leaving the
Property. (*Id.*)

**\*2** Plaintiff alleges that he contacted Defendant Miller
about Ms. Brown leaving the Property—in violation of the
oral agreement that they previously reached—and Defendant
Miller advised Plaintiff that there was nothing Defendant
Miller could do. (*Id.*) Plaintiff alleges that his neighbor
informed him that the Property was left unsecured with the
front door and garage door left open. (*Id.*) Plaintiff alleges
that he again contacted Defendant Miller to inform Defendant
Miller that Plaintiff intended to return to the Property because
it was left un-secured and that Defendant Miller did not tell
Plaintiff not to return. (*Id.*) Plaintiff alleges that, as a result,
and because Ms. Brown and the children were no longer at
the Property, he returned to the Property. (*Id.*)

Plaintiff alleges that on July 16, 2021, he was arrested
for criminal contempt in the second degree in violation of
New York Penal Law § 215.50. (*Id.*) In addition, Plaintiff
alleges that a parole violation was filed against him based on
the warrant for his arrest. (*Id.*)

Plaintiff alleges that Defendant Miller filed a criminal
complaint charging Plaintiff with criminal contempt, that
contained false information. (Dkt. No. 1, Attach. 1 at 6.) More
specifically, Plaintiff alleges that, in contrast with the criminal
complaint filed by Defendant Miller, (1) he was not advised

to stay away from the Property, (2) the Property was not the residence of Ms. Brown, and (3) Plaintiff did not make a "verbal admission" that he was present at the Property at the same time as Ms. Brown. (*Id.* at 6-8.)

Plaintiff alleges that at some point in time, he entered an "Alford" guilty plea to his parole violation. (Dkt. No. 1 at 21.)

Plaintiff alleges that on December 14, 2021, the criminal contempt charge against him was dismissed and his defense counsel accepted the dismissal without Plaintiff's consent or knowledge. (Dkt. No. 1, Attach. 1 at 9.) Plaintiff alleges that on January 15, 2022, he became aware that the dismissal of his criminal contempt charge was "in satisfaction" of his parole violation, but that Plaintiff objected to that disposition. (*Id.* at 10.) Plaintiff alleges that on June 14, 2022, the Court dismissed the criminal contempt charge "pursuant to the merits and a full dismissal accordingly sealing the matter in the Plaintiff[']s favor." (*Id.* at 11.)

Based on these factual allegations, Plaintiff appears to assert the following three causes of action against Defendants in their individual and official capacities: (1) a claim of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (2) a claim of false imprisonment pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; and (3) a claim of malicious prosecution pursuant to the Fourth Amendment and 42 U.S.C. § 1983. (*See generally* Dkt. No. 1.)

As relief, Plaintiff seeks $5,000,000.00 in compensatory damages and $5,000,000.00 in punitive damages. (*Id.*)

Plaintiff also filed an amended application to proceed *in forma pauperis*. (Dkt. No. 4.)

## II. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[6] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate

accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

 **\*3** Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 4), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District pursuant to Local Rule 5.1.4(b)(1)(B). (Dkt. No. 5.)

Accordingly, Plaintiff's amended application to proceed with this action IFP is granted. (Dkt. No. 4.)

## III. RELEVANT LEGAL STANDARD GOVERNING INTIAL REVIEW OF A COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[7]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the

Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

### A. Official Capacity Claims

"An official capacity suit against a municipal employee is a suit against the municipality itself." *Pittman v. Billings*, 20-CV-0422, 2020 WL 2079440, at \*9 (N.D.N.Y. Apr. 30, 2020) (Baxter, M.J.), *report and recommendation adopted by* 2020 WL 2574631 (N.D.N.Y. May 21, 2020) (Sharpe, J.).

### 1. Claims Against Defendants John Doe, State of New York and Jane Doe, State of New York

New York State is immune from suits pursuant to 42 U.S.C. § 1983 seeking either legal or equitable relief, under the Eleventh Amendment. *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984); *see Ognibene v. Niagara Cnty. Sheriff's Dep't*, 03-CV-0678E, 2003 WL 2443989, at \*3 (W.D.N.Y. Dec. 1, 2003) ("To the extent the plaintiff names various state courts as defendants and seeks either legal or equitable relief against them under § 1983, they are immune from such suit under the Eleventh Amendment."); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." (internal citations omitted)); *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe, on the basis of such slender 'evidence,' that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."); *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) ("Using its authority under section 5 of the fourteenth amendment, Congress may abrogate the eleventh amendment in the absence of a waiver by the states, but the civil rights statute 42 U.S.C. § 1983 does not override the eleventh amendment." (internal citations omitted)).

As a result, I recommend that Plaintiff's claims against Defendants John Doe, State of New York and Jane Doe, State of New York in their official capacities be dismissed.

### 2. Claims Against Defendants John Doe, Broome County District Attorney's Office and Jane Doe, Broome County District Attorney's Office

As previously stated, "[t]he Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam) (citation omitted). When a defendant is sued in his official

capacity, we treat the suit as one against the "entity of which an officer is an agent." 🚩 *Kentucky v. Graham*, 473 U.S. at 165-66. If a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity. *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (citing 🚩 *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)).

Here, the claims against Defendants John Doe, Broome County District Attorney's Office and Jane Doe, Broome County District Attorney's Office, in their official capacities, are effectively claims against the State of New York. As a result, I recommend that these claims be dismissed.

### 3. Claims Against Defendants David Harder, Broome County Sheriff's Department; Nicholas Miller, Broome County Sheriff's Department; and Sheriff John Doe, Broome County Sheriff's Department

**\*5** With respect to Plaintiff's claims against Defendants Harder, Miller, and Sheriff John Doe, in their official capacities as employees of the County of Broome, I recommend that those claims be dismissed for failure to state a claim upon which relief may be granted.

A municipality may only be named as a defendant in certain circumstances. In 🚩 *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under 🚩 Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. 🚩 *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. 🚩 *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." 🚩 *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may

also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. 🚩 *Connick*, 563 U.S. at 51. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing 🚩 *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing 🚩 *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of one discrete incident, during which a deputy employed by the Broome County Sheriff's Department allegedly did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with Defendants.

As a result, I recommend that Plaintiff's claims against Defendants David Harder (Broome County Sheriff's Department), Nicholas Miller (Broome County Sheriff's Department), and Sheriff John Doe (Broome County Sheriff's Department), in their official capacities, as employees of Broome County be dismissed at this time. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at \*5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted by*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### B. Individual Capacity Claims

### 1. Claims Against Defendants John Doe, Broome County District Attorney's Office and Jane Doe, Broome County District Attorney's Office

**\*6**  It is well-established that "prosecutors are entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process.' " *Hill v. City of New York*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "In determining whether absolute immunity [applies], we apply a 'functional approach,' looking at the function being performed rather than to the office or identity of the defendant." *Hill*, 45 F.3d at 660 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)); *see also Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) ("The appropriate inquiry ... is not whether authorized acts are performed with a good or bad motive, but whether the acts at issue are beyond the prosecutor's authority."); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (finding that prosecutorial immunity protects prosecutors from liability under section 1983 "for virtually all acts, regardless of motivation, associated with his function as an advocate").

The Second Circuit has "held that absolute immunity extends even to a prosecutor who 'conspir[es] to present false evidence at a criminal trial. The fact that such conspiracy is certainly not something that is <u>properly</u> within the role of a prosecutor is immaterial, because immunity attaches to his function, not to the manner in which he performed it.' " *Anilao v. Spota*, 27 F.4th 855, 865 (2d Cir. 2022) (quoting *Dory*, 25 F.3d at 83 (cleaned up)). "Thus, unless a prosecutor proceeds in the <u>clear absence of all jurisdiction</u>, absolute immunity [from § 1983 liability] exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Anilao*, 27 F.4th at 864 (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987) (emphasis added)). "Prosecutors thus have absolute immunity in a § 1983 action even if it turns out that 'state law did not empower [them] to bring the charges,' so long as 'they have at least a semblance of jurisdiction' that does not run far afield of their job description." *Id.* at 865 (quoting *Barr*, 810 F.2d at 361).

Plaintiff does not appear to allege any factual allegations against a John or Jane Doe of the Broome County District Attorney's Office. (*See generally* Dkt. No. 1.) Instead, Plaintiff alleges in a conclusory fashion that the Broome County District Attorney's Office violated his due process rights and injured Plaintiff by filing a false complaint and failing to properly investigate the events on July 15, 2021. (Dkt. No. 1 at 2.) In addition, Plaintiff alleges that "the prosecutor ... knew or should have known that the [Property] was in fact [Plaintiff's] protected residence." (Dkt. No. 1 at 30.)

With this limited information, it appears that the actions of Defendants John and Jane Doe of the Broome County District Attorney's Office fall squarely within the scope of their authority as prosecutors, which would entitle them to the cloak of absolute immunity. I therefore recommend that any claims against Defendants John and Jane Doe of the Broome County District Attorney's Office be dismissed. *See Anilao*, 27 F.4th at 868 (holding that "under our precedent absolute immunity shields [prosecutors] for their prosecutorial and advocative conduct even in the absence of probable cause and even if their conduct was entirely politically motivated.").

### 2. Defendants John Doe, State of New York and Jane Doe, State of New York

The caption of the Complaint lists John Doe, State of New York and Jane Doe, State of New York but the body of the Complaint does not contain any factual allegations against a John or Jane Doe employed by the State of New York. Thus, I recommend that Plaintiff's claims against John Doe, State of New York, and Jane Doe, State of New York, in their individual capacities be dismissed. *See Johnson v. Gonzalez*, 14-CV-0745, 2015 WL 1179384, at \*6 (N.D.N.Y. Mar. 13, 2015) (Kahn, J.) (dismissing the claims against a defendant where the complaint lists the defendant's "name in the caption, but fails to again name or assert allegations against him."); *Serrano v. New York State Dep't of Envtl. Conservation*, 12-CV-1592, 2013 WL 6816787, at \*15 (N.D.N.Y. Dec. 20, 2013) (D'Agostino, J.) (citing *Jaffer v. Chemical Bank*, 93-CV-8459, 1994 WL 392260, at \*3 (S.D.N.Y. July 26, 1994) (holding that "[w]hen a complaint's caption names a defendant but the complaint does not indicate that the named party injured the plaintiff or violated the law, the motion to dismiss must be granted")) (dismissing the plaintiff's claims against two defendants who were listed as parties in

the complaint and in the caption, but not elsewhere in the complaint).

### 3. Defendant Harder

**\*7** "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted).

Courts in this circuit routinely hold that "the doctrine of respondeat superior cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 97-CV-2419, 1997 WL 576038, at \*2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Colon*, 58 F.3d at 874 (holding that the fact that the defendant occupied a high-ranking position in the New York prison hierarchy, without more, was insufficient to establish personal involvement). Before deciding *Ashcroft v. Iqbal*, 556 U.S. 62 (2009), the Second Circuit held that supervisory personnel could be considered "personally involved" if

(1) the defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright*, 21 F.3d at 501 (additional citation omitted)).

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. Consistent with other circuits, the Second Circuit concluded that "there is no special rule for supervisory liability," and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.'" *Tangreti*, 983 F.3d at 618. The Second Circuit explained that, "'the factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly." *Id.* (quoting *Iqbal*, 556 U.S. at 676). "District courts discussing *Tangreti* agree that the decision invalidated the *Colon* test and mandates that a plaintiff must establish a violation against the supervisory official directly." *Fabrizio v. Smith*, 20-CV-0011, 2021 WL 2211206, at \*10 (N.D.N.Y. Mar. 10, 2021) (Lovric, M.J.) (collecting cases), *report and recommendation adopted by* 2021 WL 2211023 (N.D.N.Y. June 1, 2021) (Suddaby, C.J.).

**\*8** Plaintiff's sparse allegations against Defendant Harder, assert that Defendant Harder failed to adequately train, enforce training, or supervise his officers on how to properly resolve domestic dispute incidents, specifically with respect to the right to property when an order of protection has been issued. (*See generally* Dkt. No. 1.) Plaintiff does not allege that Defendant Harder was personally involved in any violation of Plaintiff's rights. After the Second Circuit's ruling in *Tangreti*, these allegations are insufficient to plausibly suggest the personal involvement of Defendant

Harder. *See Powell v. City of Jamestown*, 21-CV-0721, 2022 WL 1913581, at *10 (W.D.N.Y. June 3, 2022) (citing *Guzman v. McCarthy*, 21-CV-1192, 2022 WL 630873, at *3 (N.D.N.Y. Mar. 4, 2022) (D'Agostino, J.) (mere allegation that prison superintendent failed to train his officers to protect inmates from harm was "not enough to plausibly allege the [superintendent's] personal involvement")) (dismissing the plaintiff's claims against the sheriff, undersheriff, and chief of police where "the Complaint mentions those individuals by name only in the caption and in a section introducing the parties. The allegation that defendants 'faile[d] to adequately train and supervise [their] employees relating to the use of force including but not limited to failing to treat medical conditions and preventing self harm' ... is conclusory and insufficient.").

As a result, I recommend that Plaintiff's claims with respect to Defendant Harder be dismissed.

#### 4. Defendant John Doe, Broome County Sheriff's Department

Based on the Complaint and attachment, it appears as though Defendant "John Doe, Broome County Sheriff's Department" refers to the individual who accompanied Defendant Miller to the Property to serve the Order on Plaintiff. (Dkt. No. 1, Attach. 1 at 3.) However, the Complaint fails to allege facts plausibly suggesting any action taken by Defendant John Doe, Broome County Sheriff's Department. Defendant John Doe, Broome County Sheriff's Department's mere presence is insufficient to allege his personal involvement in the alleged constitutional violations at issue here. *See Roman v. City of Mount Vernan*, 21-CV-2214, 2022 WL 2819459, at *16 (S.D.N.Y. July 19, 2022) (quoting *Arbuckle v. City of New York*, 14-CV-10248, 2016 WL 5793741, at *13 (S.D.N.Y. Sept. 30, 2016)) (" 'Simply being present at the scene of an arrest does not suffice for personal involvement.' "). As a result, I recommend that Plaintiff's claims against Defendant John Doe, Broome County Sheriff's Department, be dismissed for failure to state a claim upon which relief may be granted.

#### 5. Defendant Miller

#### a. False Arrest and False Imprisonment

To prevail on a claim of false arrest under the Fourth Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) that the defendant intended to confine the plaintiff; (2) that the plaintiff was conscious of the confinement; (3) that the plaintiff did not consent to the confinement; and (4) that the confinement was not otherwise privileged. *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). Moreover, a Section 1983 claim for false arrest under the Fourth Amendment is "substantially the same" as a claim of false imprisonment. *Jackson v. City of N.Y.*, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013); *see Smith v. City of Syracuse*, 19-CV-0997, 2020 WL 1937411, at *4 n.6 (N.D.N.Y. Apr. 21, 2020) (Sannes, J.) (" 'Claims brought under Section 1983 are guided by state tort law.' 'In New York, the tort of false arrest is synonymous with that of false imprisonment.' " (citations omitted)); *Givans v. Jefferson Cnty. Sheriff's Office*, 13-CV-0906, 13-CV-0908, 2015 WL 13540492, at *12 n.18 (N.D.N.Y. Aug. 28, 2015) (Sannes, J.) (citing *Liranzo v. United States*, 690 F.3d 78, 91 n.13 (2d Cir. 2012)) (" 'False arrest' is synonymous with 'false imprisonment' under New York law.").

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's false arrest and false imprisonment claims against Defendant Miller in his individual capacity.

#### b. Malicious Prosecution

***9** To prevail on a claim of malicious prosecution, a plaintiff must allege facts plausibly suggesting the following: (1) the commencement or continuation of a criminal proceeding against him; (2) the termination of the proceeding in his favor; (3) that the state officials lacked probable cause; and (4) that the proceeding was instituted with malice. *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (citing *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003); *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

be liberally construed, *see, e.g.,* 🔖*Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's malicious prosecution claim against Defendant Miller in his individual capacity. [8]

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."

🔖*Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." 🔖*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also* 🔖*Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." 🔖*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above with respect to Plaintiff's claims pursuant to 🔖42 U.S.C. § 1983 against (1) Defendants John Doe, State of New York and Jane Doe, State of New York in their official capacities, and (2) Defendants John Doe, Broome County District Attorney's Office and Jane Doe, Broome County District Attorney's Office, in their individual or official capacities.

**\*10** However, it is not clear whether better pleading would permit Plaintiff to assert a cognizable claim pursuant to 🔖42 U.S.C. § 1983 against (1) Defendants John Doe, State of New York and Jane Doe, State of New York in their individual capacities, (2) Defendants Harder and Sheriff John Doe in their individual or official capacities, or (3) Defendant Miller in his official capacity. Out of deference to Plaintiff's *pro se* status, I recommend that Plaintiff be granted leave to amend the Complaint with respect to his 🔖Section 1983 claims against (1) Defendants John Doe, State of New York and Jane Doe, State of New York in their individual capacities, (2) Defendants Harder and Sheriff John Doe in their individual or official capacities, and (3) Defendant Miller in his official capacity.

If Plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individuals named as Defendants are involved in the allegedly unlawful activity. Finally, Plaintiff is informed that any amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See* 🔖*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 4) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court amend the docket such that (1) Defendant "John Doe" is changed to Defendant "John Doe, State of New York," (2) Defendant "Jane Doe" is changed to Defendant "Jane Doe, State of New York," and (3) Defendant State of New York is terminated; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts (1) claims against Defendants John Doe, State of New York and Jane Doe, State of New York, in their individual capacities; (2) claims against Defendants David Harder and Sheriff John Doe in their individual and official capacities, and (3) claims against Defendant Miller in his official capacity, because they fail to state a claim upon which relief may be granted pursuant to 🔖28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(a); and it is further respectfully

RECOMMENDED that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts (1) claims against Defendants John Doe, State of New York and Jane Doe, State of New York in their official capacities, and (2) claims against Defendants John Doe, Broome County District Attorney's Office and Jane Doe, Broome County District Attorney's Office in their individual or official capacities, because they seek monetary relief against Defendants who are immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(a); and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009)* (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993)* (citing *Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)*).

**All Citations**

Slip Copy, 2022 WL 16579207

---

## Footnotes

1   The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995)* (quoting *Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)*).

2   Plaintiff attached an affidavit to the Complaint, which included additional details about the alleged wrongs. (Dkt. No. 1, Attach. 1.) Construing the Complaint liberally, as the Court must, the Court considered the additional factual details contained in the affidavit.

3   To conform with the Complaint, the Clerk of the Court is directed to amend the name of Defendant "John Doe" to "John Doe, State of New York," on the Court's docket. (Dkt. No. 1 at 1.)

4   To conform with the Complaint, the Clerk of the Court is directed to amend the name of Defendant "Jane Doe" to "Jane Doe, State of New York," on the Court's docket. (Dkt. No. 1 at 1.)

5   To conform with the Complaint, the Clerk of the Court is directed to terminate Defendant State of New York, on the Court's docket. (Dkt. No. 1 at 1.)

6   Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. See http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

7    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." 🚩*Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

8    Although not clear at this juncture the exact contours of the dismissal of Plaintiff's criminal charge, it appears as though it may have been an adjournment in contemplation of dismissal ("ACD"). (Dkt. No. 1 at 38.) However, based on the Supreme Court's recent decision in 🚩*Thompson v. Clark,* 142 S. Ct. 1332 (2022), courts in this Circuit have deemed an ACD "a favorable termination for the purposes of a malicious prosecution claim." *Price v. Peress*, 18-CV-4393, 2022 WL 4638148, at *11 (E.D.N.Y. Sept. 30, 2022); *see Perez v. City of New York*, 20-CV-1359, 2022 WL 4236338, at *13 (S.D.N.Y. Sept. 14, 2022) (holding that "[i]n light of *Thompson*" the argument that an "ACD bars a malicious-prosecution claim because it leaves the question of innocence or guilt unanswered," is meritless); *McGaffigan v. City of Rochester*, 21-CV-6545, 2022 WL 2812359, at *2 (W.D.N.Y. July 19, 2022) (allowing the plaintiff to amend her complaint adding a malicious prosecution claim after she accepted an ACD, in light of the Supreme Court's decision in *Thompson*).

9    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                                                © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16571391
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Lowell J. BRITT, Plaintiff,

v.

John DOE, State of New York et al., Defendants.

3:22-cv-0692 (GLS/ML)
|
Signed November 1, 2022

**Attorneys and Law Firms**

FOR THE PLAINTIFF: Lowell J. Britt, Pro Se, Orleans Correctional Facility, 3531 Gaines Basin Road, Albion, NY 14411.

## ORDER

Gary L. Sharpe, Senior District Judge

**\*1** The above-captioned matter comes to this court following an Order and Report-Recommendation (R&R) by Magistrate Judge Miroslav Lovric, duly filed October 13, 2022. (Dkt. No. 7.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the R&R for clear error, it is hereby

**ORDERED** that the Order and Report-Recommendation (Dkt. No. 7) is **ADOPTED** in its entirety; and it is further

**ORDERED** that plaintiff's complaint (Dkt. No. 1) is **DISMISSED WITHOUT PREJUDICE** and **WITHOUT LEAVE TO REPLEAD** as to:

(1) claims against defendants John Doe, State of New York and Jane Doe, State of New York in their official capacities, and (2) claims against defendants John Doe, Broome County District Attorney's Office, and Jane Doe, Broome County District Attorney's Office in

their individual or official capacities, because plaintiff seeks monetary relief against defendants who are immune from such relief, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a); and it is further

**ORDERED** that plaintiff's complaint (Dkt. No. 1) is **DISMISSED WITH LEAVE TO REPLEAD** as to:

(1) claims against defendants John Doe, State of New York and Jane Doe, State of New York, in their individual capacities, (2) claims against defendants David Harder and Sheriff John Doe in their individual and official capacities, and (3) claims against defendant Nicholas Miller in his official capacity, because they fail to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a); and it is further

**ORDERED** that, if plaintiff files an amended complaint, he is warned that any amended complaint must be a complete and separate pleading. Plaintiff must state all of his claims in the new pleading and may not incorporate by reference any part of his original complaint; and it is further

**ORDERED** that plaintiff's amended complaint shall be filed within thirty (30) days of the date of this Order; and it is further

**ORDERED** that, if plaintiff files an amended complaint, such proposed amended complaint will be referred to Magistrate Judge Lovric for initial review; and it is further

**ORDERED** that, if plaintiff fails to file an amended complaint within the time permitted, the Clerk is directed to close this case without further order of the court; and it is further

**ORDERED** that the Clerk provide a copy of this Order to plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 16571391

---

2015 WL 1179384
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Johnathan JOHNSON, Plaintiff,

v.

William GONZALEZ, et al., Defendants.

No. 9:14–CV–0745 (LEK/CFH).
|
Signed March 13, 2015.

**Attorneys and Law Firms**

Jonathan Johnson, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the, State of New York, David J. Sleight, Assistant Attorney General, Of Counsel, Albany, NY, for Defendants.

***DECISION and ORDER***

LAWRENCE E. KAHN, District Judge.

## I. INTRODUCTION

 **\*1** This civil rights action comes before the Court following a Report–Recommendation filed on February 20, 2015, by United States Magistrate Judge Christian F. Hummel, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Dkt. No. 23 ("Report–Recommendation"). *Pro se* Plaintiff Johnathan Johnson ("Plaintiff") timely filed Objections. Dkt. No. 24 ("Objections"). For the following reasons, the Report–Recommendation is adopted in its entirety.

## II. STANDARD OF REVIEW

When a party makes a timely objection to a Report–Recommendation, it is the duty of the Court to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). Where, however, an objecting "party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Farid v. Bouey,* 554 F.Supp.2d 301, 307 (N.D.N.Y.2008) (quoting *McAllan v. Von Essen,* 517 F.Supp.2d 672, 679 (S.D.N.Y.2007)) (citations omitted); *see also Brown v. Peters,* No. 95–CV–1641, 1997 WL 599355, at \*2–3 (N.D.N.Y. Sept. 22, 1997). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).

## III. DISCUSSION

Plaintiff first argues that Defendants' Motion for judgment on the pleadings was improperly filed, and thus Judge Hummel erred in considering the merits of the Motion. Objs. ¶¶ 9–12; *see also* Dkt. No. 11. Specifically, Plaintiff argues that Defendants waived their "defense of Rule 12(c)" by failing to include such request for relief in their Answer. Objs. ¶¶ 9–12. However, Plaintiff is misguided. Federal Rule of Civil Procedure 12(c) explicitly provides that *"after the pleadings are closed ... a party may move for judgment on the pleadings."* FED. R. CIV. P. 12(c) (emphasis added). Rule 12(c) does not require a defendant to move for judgment on the pleadings in her answer. *See id.* Accordingly, Plaintiff's first objection is without merit.

Plaintiff next objects to Judge Hummel's finding that Plaintiff has failed to state a cognizable claim under 42 U.S.C. § 1983 for Defendants' refusal to file Plaintiff's grievances and appeals. Objs. ¶¶ 13–20. In support, Plaintiff cites numerous cases where inmates brought First Amendment claims related to issues with the Inmate Grievance Program ("IGP"). *See id.* However, the cases on which Plaintiff relies all involve First Amendment *retaliation* claims. *See Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *Graham v. Henderson,* 89 F.3d 75 (2d Cir.1996); *Scott v. Coughlin,* 344 F.3d 282 (2d Cir.2003); *Morales v. Mackalm,* 278 F.3d 126 (2d Cir.2002). Here, Plaintiff is alleging an entirely different cause of action—denial of access to the courts. Therefore, these cases cited in support of Plaintiff's argument are irrelevant.

 **\*2** In further support, Plaintiff cites *Govan v. Campbell,* 289 F.Supp.2d 289, 297 (N.D.N.Y.2003), in which the Court held that "[p]risoners retain the constitutional right to petition the government for the redress of grievances." (citing *Overton v. Bazzetta,* 539 U.S. 126, 137 (2003)). However, a careful reading of *Overton* reveals that the Supreme Court was referring to "grievances" only in a broad sense; the Court was not referring to the Inmate "Grievance" Program. *Id.*

at 137. Moreover, it is well-settled in the Second Circuit that allegations that prison officials failed to comply with the IGP do not state a viable claim under § 1983. *See Alvarado v. Westchester Cnty.,* 22 F.Supp.3d 208, 214 (S.D.N.Y.2014) ("Notwithstanding the First Amendment's guarantee of the right to petition the government for redress, 'inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable [Section] 1983 claim.' " (quoting *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369–70 (W.D.N.Y.2005)); *see also Mimms v. Carr,* No. 09–CV–5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("The First Amendment is not implicated ... where prison officials deny an inmate access to grievance procedures."). Accordingly, Plaintiffs second objection is also without merit.

Plaintiff's third objection is that Judge Hummel erroneously combined Plaintiff's allegations concerning filing of his grievances with his separate allegations concerning denial of access to evidence. Objs. ¶¶ 21–26. However, a careful reading of the Report–Recommendation reveals that Judge Hummel did not conflate Plaintiff's allegations. Rather, Judge Hummel considered each allegation as a separate claim of denial of access to the courts. *See* Report–Rec. at 7–8. Thus, Plaintiff's third objection is also without merit.

Finally, Plaintiff argues that his Complaint should not be dismissed because, even if his § 1983 claims are dismissed, he has also alleged violations of the New York Constitution. Objs. ¶¶ 27–36. Plaintiff's argument must be rejected for two reasons. First, even liberally construed, Plaintiff has not asserted any claims under the New York Constitution in his Complaint. *See generally* Dkt. No. 4 ("Complaint"). Second, even if Plaintiff's claims were construed to allege violations of the New York Constitution, it would not be proper for the Court to exercise supplemental jurisdiction in light of dismissal of all of Plaintiff's federal claims. *See* 28 U.S.C. § 1367(c)(3). Therefore, dismissal of Plaintiff s Complaint is warranted.

**IV. CONCLUSION**
Accordingly, it is hereby:

**ORDERED,** that the Report–Recommendation (Dkt. No. 23) is **APPROVED and ADOPTED in its entirety;** and it is further

**ORDERED,** that Defendants' Motion (Dkt. No. 11) for judgment on the pleadings is **GRANTED;** and it is further

**\*3 ORDERED,** that Judgment be entered in favor of Defendants on all claims; and it is further

**ORDERED,** that Plaintiff's Motion (Dkt. No. 19) to compel is **DENIED as moot;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

JONATHAN JOHNSON,

Plaintiff,

v.

WILLIAM GONZALEZ, Deputy Commissioner, DOCCS; SCOTT WOODWARD, Grievance Supervisor, Upstate Correctional Facility; BRANDI WHITE, Grievance Supervisor, Upstate Correctional Facility; DAVID ROCK, (Former) Superintendent, Upstate Correctional Facility; BRIAN FISCHER, Commissioner, DOCCS; JOSEPH BELLNIER, Deputy Commissioner, DOCCS; GAYLE HAPONIK, Deputy Commissioner, DOCCS; DANIEL MARTUSCELLO, Deputy Commissioner, DOCCS; ANTHONY J. ANNUCCI, Acting Deputy Commissioner, DOCCS; KAREN BELLAMY, Director of Inmate Grievances, DOCCS; MIKE LIRA, Deputy Superintendent, Upstate Correctional Facility; MAUREEN BOLL, Deputy Commissioner, DOCCS; DR. CARL KOENIGSMANN, Deputy Commissioner, DOCCS; DONITA E. MCINTOSH, Deputy Superintendent, Upstate Correctional Facility; JEFF MCKOY, Deputy Commissioner, DOCCS; GEORGE GLASSANOS, Deputy Counsel, DOCCS,

Defendants.

**REPORT–RECOMMENDATION AND ORDER** [1]

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Plaintiff *pro se* Jonathan Johnson ("Johnson"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, sixteen current and former DOCCS employees and employees of Upstate Correctional Facility, violated his constitutional rights under the First Amendment. Compl. (Dkt. No. 4). Presently pending is defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Dkts. No. 10, 11. Plaintiff was directed to respond to this motion by September 2, 2014, but has failed to do so. Dkt. No. 10. For the following reasons, it is recommended that defendants' motion for judgment on the pleadings be granted.

## I. **Background** [2]

The facts are related herein in the light most favorable to Johnson as the non-moving party. *See* subsection II(A) *infra.* At all relevant times, Johnson was confined to Upstate Correctional Facility ("Upstate"). Compl. ¶ 3.

From 2011 to 2013, Johnson had filed or attempted to file a number of inmate grievances [3] for improper conduct by various staff members at Upstate. Compl. ¶ 4. Although unclear from the complaint, Johnson appears to contend he gave these grievances directly to defendants Woodward and White, both grievance supervisors at Upstate. *Id.* ¶ 5. Johnson alleges that defendants Woodward and White refused to properly file or process numerous grievances, as well as properly and timely submit appeals to the Central Office Review Committee ("CORC") and the Superintendent. *Id.* ¶¶ 3–5. When grievances were properly filed by defendants Woodward and White, Johnson alleges that they refused to allow him to obtain certain documents and denied him access to witnesses and videotaped footage relevant to the investigation of his grievances. *Id.* ¶ 7.

**\*4** Johnson also alleges that defendants Bellnier, Haponik, Martuscello, Annucci, Bellamy, Boll, Koenigsmann, McKoy, Gonzales, Glassanos, Lira, and Mcintosh failed to supervise defendants Woodward and White to ensure the proper handling of his grievances and appeals. Compl. ¶ 10. Johnson also alleges that these defendants denied him access to, or failed to obtain, evidence relevant to his grievances. *Id.* ¶ 7. Johnson seeks compensatory and punitive damages. *Id.* ¶ 11.

## II. **Discussion** [4]

Johnson contends that defendants Woodward and White violated his First Amendment right of access to the courts by failing to submit in the proper manner and follow through with his grievances and appeals at Upstate. Compl. ¶¶ 3–6. Johnson also contends that defendants Bellnier, Haponik, Martuscello, Annucci, Bellamy, Boll, Koenigsmann, McKoy, Gonzales, Glassanos, Lira, and Mcintosh violated his First Amendment right of access to the courts by failing to supervise defendants Woodward and White to ensure proper handling of his grievances and appeals. He also alleges that all defendants denied him access to certain evidence relevant to his grievances. *Id.* ¶ 7, 10. Finally, affording Johnson special solicitude, [5] his complaint may be read to suggest that all named defendants violated his procedural due process rights by failing to properly investigate his grievances. Compl. ¶¶ 7, 11.

As relevant here, defendants request judgment on the pleadings because (1) defendants' failure to follow the inmate grievance procedures does not give rise to a cognizable claim against defendants under § 1983; and (2) there are no factual allegations in the complaint against defendant Fischer. [6]

### A. **Legal Standard**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw,* 448 F.3d 518, 521 (2d Cir.2006) (citing *Karedes v. Ackerley Group, Inc.,* 423 F.3d 107, 113 (2d Cir.2005)). The Court is required to "accept[ ] as true the complaint's factual allegations and draw[ ] all inferences in the plaintiff's favor." *Id.* However, this "tenet ... is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ...

[as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility ... that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct] .")); *see also Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir.2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible ....") (citations omitted).

**\*5** Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Twombly,* 550 U.S. at 555 (citations omitted). While a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiffs obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id* . (citations omitted).

### B. Analysis

#### 1. First Amendment Access to the Courts

Johnson contends that defendants Woodward and White denied him his right of access to the courts under the First Amendment by interfering with his right to file grievances and appeals and denying him access to certain relevant evidence. Johnson also claims that defendants Bellnier, Haponik, Martuscello, Annucci, Bellamy, Boll, Koenigsmann, McKoy, Gonzales, Glassanos, Lira, and Mcintosh violated his right of access to the courts based upon their failure to supervise and ensure that defendants Woodward and White properly handled grievances and appeals. *Id.* ¶ 10.

The prisoner's right of access to the court system has been anchored by the United States Supreme Court in a variety of sources including "the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection, and Due Process Clauses." *Christopher v. Harbury,* 536 U.S. 403, 414–15 & n. 12 (2002); *see Lewis v. Casey,* 518 U.S. 343, 346 (1996). However, because the IGPs are created under state law, and, thus, not required by the Constitution, allegations against prison officials for violation of, or interference with, those procedures cannot give rise to a cognizable claim under § 1983. *Alvarado v. Westchester Cnty.,* 22 F.Supp.3d 208, 214 (S.D.N.Y.2014) (quoting *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369–70 (W.D.N.Y.2005)). It has also been established that the "First Amendment is not implicated ... where prison officials deny an inmate access to grievance procedures." *Mimms v. Carr,* No. 13–CV–2515 (VB), 2011 WL 2360059, at \*10 (E.D.N.Y. June 9, 2011); *see also Brown v. Graham,* 470 F. App'x 11, 13 (2d Cir.2012) (holding that a prisoner litigant's claim that he has a "federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless."). [7]

Johnson seeks relief based upon a denial of his right of access to the courts by the defendants' failure to properly submit and timely follow through with his grievance complaints and appeals made while at Upstate. Compl. ¶ 5. Additionally, Johnson alleges that when these complaints were properly filed, defendants Woodward and White did not allow him to obtain any documentary evidence or videotaped footage. *Id.* ¶ 7. It is clear, as discussed *supra,* defendants Woodward and White's apparent refusal or subsequent failure to file, provide evidence for, or follow through with the processing of grievances or appeals does not create a claim under § 1983 as there is no constitutional right to access to an inmate grievance program. *See Brzezniak,* 365 F.Supp.2d at 370. Similarly, the remaining defendants' failure to properly supervise the filing or appeal of these grievances does not amount to a constitutional violation as there is no underlying denial of access to the courts. *Id.*

**\*6** Insofar as Johnson's complaint may suggest that any of the named defendants failed to properly investigate grievances or instances of wrongdoing against him (Compl.¶¶ 7, 11) in violation of the Due Process Clause, the Court notes that inmates do not have a due process right to a

thorough investigation of grievances. *See Torres v. Mazzurca,* 246 F.Supp.2d 334, 341–42 (S.D.N.Y.2003).

Accordingly, it is recommended that defendants' motion on this ground be granted.

#### C. **Failure to State a Claim Against Defendant Fischer**

The standard set forth in *Twombly* and affirmed in *Iqbal* requires more than mere conclusory statements; rather, it demands sufficient factual allegations against a defendant to reasonably lead to the discovery of illegal conduct. *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555–56. "It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.' " *Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999) (quoting *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981)).

In this case, the verified complaint lists defendant Fischer's name in the caption, but fails to again name or assert allegations against him. Compl. ¶ 1. Without any specific factual allegations asserted against defendant Fischer, he cannot be deemed a party in this action. *See Dove,* 56 F.Supp.2d at 335.

Accordingly, it is recommended that defendants' motion on this ground be granted.

### III. **Motion to Compel**

Because the undersigned recommends granting defendants' motion for judgment on the pleadings on all grounds against all defendants, it is also recommended that Johnson's motion to compel discovery (Dkt. No. 19) be dismissed as moot.

### IV. **Conclusion**

For the reasons stated above, it is hereby

1. **RECOMMENDED** that defendants' motion for judgment on the pleadings (Dkt.Nos.10, 11) be **GRANTED** and that judgment be entered for all defendants on all claims;

2. **RECOMMENDED** that plaintiffs motion to compel discovery (Dkt. No. 19) be **DISMISSED** as moot.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Filed Feb. 20, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1179384

### **Footnotes**

1    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    Johnson filed a notice to remand and to impose sanctions on defendants pursuant to Fed.R.Civ.P. 11 (Dkt. No. 6) which was denied by District Court Judge Lawrence Kahn because (1) Johnson's complaint, on its face, asserts a federal constitutional claim, i.e. the § 1983 claim; (2) Johnson points to nothing that would

defeat the requisite subject matter jurisdiction (Dkt. No. 21); and (3) defendants' notice of removal was timely. Dkt. No. 21.

3    The DOCCS "IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004) (internal quotations omitted).

4    All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Report–Recommendation.

5    When, as here, a party seeks judgment against a *pro se* litigant, a court must afford the nonmovant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

   [t]here are many cases in which we have said that a *pro se* litigant is entitled to special solicitude, ... that a *pro se* litigant's submissions must be construed liberally, ... and that such submissions must be read to raise the strongest arguments that they suggest .... At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, ... or arguments that the submissions themselves do not suggest, ... that we should not excuse frivolous or vexatious filings by *pro se* litigants ... and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law....

   *Id.* (citations and footnote omitted) (internal quotations omitted); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro* se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

6    Defendants Bellnier, Haponik, Martuscello, Annucci, Bellamy, Boll, Koenigsmann, McKoy, Gonzales, Glassanos, Lira, and Mcintosh also argue that Johnson inadequately alleged their personal involvement in the alleged constitutional violations (Dkt. No. 11) which is a "prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Because this Court finds, as discussed *infra,* that no constitutional violation has been alleged, it does not reach that issue.

7    Under the PLRA, a plaintiff whose access to the grievance process has been hindered by actions of prison officials is excused from the exhaustion requirement and can file suit without having completed that process. *Hemphill v. New York,* 380 F.3d 680, 686–92 (2d Cir.2004). Thus, an inmate who is denied access to an IGP may directly commence an action to seek redress for the alleged constitutional violations.

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 140 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

2013 WL 6816787
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Alelie SERRANO, Plaintiff,
v.
NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION; Commissioner
Joe Martens; Major Steven Gerould; Peter Fanelli,
Director, Division of Law Enforcement; Eric Tupaj,
Lieutenant, Division of Law Enforcement, Defendants.

No. 12–CV–1592 (MAD/CFH).
|
Dec. 20, 2013.

**Attorneys and Law Firms**

Office of Lowell R. Siegel, Lowell R. Siegel, Esq., of
Counsel, Altamont, NY, for Plaintiff.

Office of the New York State Attorney General, James
Seaman, AAG, of Counsel, Albany, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

## I. INTRODUCTION

**\*1** Plaintiff, Alelie Serano, commenced this suit against
her employer, New York State Department Environmental
Conservation ("DEC"), and various DEC employees on
October 24, 2012. Plaintiff was terminated from her position
on January 25, 2013 and she filed an amended complaint on
February 13, 2013. Pending before this Court is Defendants'
motion to dismiss Plaintiff's amended complaint.

## II. BACKGROUND

Plaintiff was employed at the DEC as a dispatcher from
October 2006 until January 2013. *See* Dkt. No. 9 at 4. During
this time, Plaintiff was the only dispatcher at the DEC of
Puerto Rican/Hispanic descent. *See id.* at 5. One of the main
reasons Plaintiff was hired was because of her fluency in

Spanish. *See id.* Plaintiff worked in the Ray Brook office from
October 2006 until February 2010, when she was transferred
to Albany. *See id.* at 4. In 2007, Defendant Tupaj replaced
Lieutenant Stabak as Plaintiff's main supervisor. *See id.* at 5.
Defendant Gerould supervised the Central Dispatch Unit in
the Central Office in Albany from May 2007 to April 2011.
*See* Dkt. No. 11–12 at 1. He has had no supervisory control
over the Central Dispatch Unit since his relocation in April
2011. *See id.*

On March 4, 2008, Plaintiff filed a charge of discrimination
with the Affirmative Action Office of the DEC. *See* Dkt. No.
11–5 at 7. The Affirmative Action Office issued a finding of
discriminatory behavior and recommended remedial action
to ensure an end of such behavior. *See id.* at 9. On August
26, 2008, Plaintiff filed a complaint with the New York State
Division of Human Rights ("DHR") alleging retaliation for
filing her previous Affirmative Action complaint. *See id.* at
1. On October 8, 2008, Plaintiff filed another charge with the
DHR alleging discrimination and harassment. *See* Dkt. No.
11–6 at 1. On March 23, 2009, the DHR issued a statement
that "there is probable cause that Complainant may have been
subjected to discriminatory treatment, including retaliation,
and said treatment may be ongoing." *See* Dkt. No. 11–7
at 6. On March 30, 2010, Plaintiff filed another charge of
discrimination with the DHR. *See* Dkt. No. 11–10 at 1. The
DHR determined that this charge showed no probable cause of
discrimination because, *inter alia,* the "allegations regarding
ridiculing behavior from coworkers were already litigated
during the December 2009 Division hearing." *See* Dkt. No.
11–11 at 2.

On or about May 18, 2012, Plaintiff filed a charge of
discrimination and retaliation based on her race/national
origin with the Equal Employment Opportunity Commission
("EEOC"). *See* Dkt. No. 11–3 at 2. The EEOC determined
that it did "not seem that [they] would find a violation of the
law" because "most of [Plaintiff's] allegations are untimely
(beyond 300 days) or have already been investigated by the
NYSDHR." *See* Dkt. No. 11–2 at 2. On July 26, 2012, the
EEOC issued a right to sue letter, allowing Plaintiff ninety
days to file a suit against the DEC. *See id.* at 3. Plaintiff
commenced this action on the ninetieth day, October 24, 2012.
*See* Dkt. No. 1.

**\*2** On January 4, 2013, Plaintiff filed another hostile
work environment and discrimination complaint with the
Affirmative Action Bureau of the DEC. *See* Dkt. No. 11–13
at 6. Plaintiff was then terminated on January 25, 2013, by a

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 141 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

letter stating in part, "[t]he reasons for this decision include your persistent and unfounded complaints that have disrupted the workplace, conduct that undermined the mission of the unit, insubordination, and time and attendance concerns." *See* Dkt. No. 15–3 at 2.

Several alleged instances of workplace conduct are relevant to this case. These instances include: (A) alleged conduct which has been previously adjudicated by the DHR, (B) undated allegations of conduct that have not been previously adjudicated, and (C) facts surrounding the service of Defendant Gerould.

## A. Allegations of conduct adjudicated by the DHR
Plaintiff alleged that a co-worker, Angela Reynolds, complained about Plaintiff speaking Spanish in the workplace and Sergeant Cranker advised Plaintiff to consider relocating to Puerto Rico. *See* Dkt. No. 9 at 5–6. Plaintiff alleged several offensive items had been placed in her vicinity after filing a discrimination complaint at Ray Brook including: a can with "bullshit" written on the label, a set of "eyeballs," a Mr. Bill doll, a bull's eye target, and a hangman's noose placed near Plaintiff's locker. *See id.* at 6. Defendant Gerould allegedly minimized the Affirmative Action Office's determination of a hostile work environment by calling the report "embellished." *See id.* Similarly, Defendant Tupaj allegedly minimized the counseling memoranda in relation to the Affirmative Action determination, calling them a "slap on the hand." *See id.* Plaintiff claims that Defendants were permitted access to her work e-mail so that her activities could be closely monitored and that Defendants engaged in "hyper-supervision" of Plaintiff. *See id.* at 6–7. Plaintiff was excluded from training given to other dispatchers at Ray Brook and Defendants allegedly failed to allow Plaintiff to engage in diversity training. *See id.* Plaintiff claims that she was required to provide a doctor's note when she missed work, and overtime was allegedly limited to her and given to others with less seniority. *See id.* at 7. Plaintiff alleges that she was struck in the head by Angela MacBride with a binder and that her car was vandalized by co-workers. *See id.* at 6–7.

## B. Undated allegations of conduct that have not been previously adjudicated
Plaintiff alleged that co-workers Laurenzo and Nightengale referred to Plaintiff as a "spic" in the presence of other employees and that she was also referred to as "wildlife." *See id.* at 5–6. Similar to the objects placed near Plaintiff at Ray Brook, a can with "bullshit" on the label, a Mr. Bill

doll, and a pair of eye balls were placed near Plaintiff in Albany after she had made known that these items offended her at Ray Brook. *See id.* at 7. In the Albany office, Plaintiff's co-workers allegedly discarded her personal items and Christopher Laurenzo and Jennifer Quade barricaded Plaintiff in her workstation. *See id.* Defendants allegedly excluded Plaintiff from training opportunities provided to others while she was in Albany. *See id.* at 7–8. Defendant Tupaj allegedly criticized Plaintiff for providing early sick leave notification and refused to address her seniority after her transfer to Albany. *See id.*

## C. Facts surrounding service of Defendant Gerould
 **\*3** Defendant Gerould's business address is at the Avon regional office and he does not regularly receive business correspondence from the Albany office. *See* Dkt. No. 11–12 at 1. In November 2012, Defendant Gerould was handed a summons with his name on it and a copy of the complaint filed in this case. *See id.* at 2. The envelope containing the summons was addressed to the Albany office, delivered to the Avon office through intra-agency mail, and handed to Defendant Gerould by a member of the Avon support staff. *See id.* A professional process server served a summons and amended complaint on Defendant Gerould at his home on May 28, 2013. *See* Dkt. No. 15–4 at 2.

## D. Pending before the Court
Plaintiff's amended complaint asserts (1) Title VII discrimination, retaliation, and hostile work environment claims on the basis of her race/color and ancestry/national origin, (2) 🔖 New York Executive Law § 290 ("HRL") discrimination and retaliation claims, and (3) a 🔖 42 U.S.C. § 1983 equal protection violation. *See* Dkt. No. 9 at 12–15. Plaintiff has requested that, if any of her claims are ruled deficient, this Court grant leave to re-plead such claims. *See* Dkt. No. 15–5 at 30.

Defendants have filed a motion to dismiss Plaintiff's amended complaint arguing dismissal on seventeen different grounds. *See* Dkt. No. 11–13. Generally, Defendants contend as follows: (1) individuals are not subject to Title VII liability; (2) Plaintiff has failed to exhaust her administrative remedies; (3) Plaintiff has failed to state a claim upon which relief may be granted; (4) the statute of limitations bars certain aspects Plaintiff's claims; (5) the Eleventh Amendment bars Plaintiff's claims against Defendants in their official capacities; (6) Plaintiff has failed to allege Defendants'

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 142 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

personal involvement; (7) Plaintiff's equal protection claim is duplicative of her Title VII allegations; (8) Plaintiff's HRL claims are barred by the election of remedies doctrine; (9) personal jurisdiction over Defendant Gerould has not been obtained; and (10) the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims. *See id.*

## III. DISCUSSION

### A. Individual Liability under Title VII

"[I]ndividuals are not subject to liability under Title VII." *Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000). Plaintiff has conceded this and has withdrawn her Title VII claims against the individual Defendants. *See* Dkt. No. 15–5 at 25 n. 5.

Based on the foregoing, the Court grants Defendants' motion to dismiss on this ground and the Title VII claims asserted against Defendants in their individual capacity are dismissed.

### B. Exhaustion

Filing a charge with the EEOC is "an essential element" of a Title VII claim and a prerequisite to bringing suit in federal court. *See* ⚑ *Butts v. City of N.Y. Dep't of Hous.,* 990 F.2d 1397, 1402 (2d Cir.1993), *abrogated by statute on other grounds as stated in* ⚑ *Hawkins v. 1115 Legal Service Care,* 163 F.3d 684 (2d Cir.1998); *see also* ⚑ *Francis v. City of N.Y.,* 235 F.3d 763, 767–68 (2d Cir.2000); ⚑ 42 U.S.C. § 2000e–5(e). Jurisdiction is conferred if a claim was previously raised in an EEOC charge or if the federal claim is "reasonably related" to such a claim. *See* ⚑ *Butts,* 990 F.2d at 1401–02. A claim is "reasonably related" to one raised in an EEOC charge (1) when it falls within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge;" (2) where the claim alleges retaliation for filing the EEOC charge, and it would likely be discovered during the EEOC investigation; and (3) "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." ⚑ *Id.* at 1402–03 (citations omitted).

**\*4** "In determining whether a particular claim is reasonably related to the plaintiff's EEOC complaint, '[w]e look not merely to the four corners of the often inarticulately framed charge, but take into account the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of discrimination.' " ⚑ *Gomes v. Avco Corp.,* 964 F.2d 1330, 1334 (2d Cir.1992) (quotation omitted). This loose pleading standard has subsequently been limited to instances where the facts stated in the EEOC claim could have reasonably been expected to alert the EEOC to an additional, unstated claim. *See* ⚑ *McKinney v. Eastman Kodak Co.,* 975 F.Supp. 462, 467 (W.D.N.Y.1997) (failing to find reasonable relatedness between disparate impact and retaliation claims when the employee claimed she was discharged in retaliation for previous complaints but did not allege any facts describing the process that employer implemented in deciding to terminate its employees). The focus is not necessarily on the specific claims charged with the EEOC, but rather " 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.' " ⚑ *Deravin v. Kerik,* 335 F.3d 195, 201 (2d Cir.2003) (quoting ⚑ *Freeman v. Oakland Unified Sch. Dist.,* 291 F.3d 632, 637 (9th Cir.2002)). While EEOC claims need not be artfully pleaded, they must state more than "vague, general allegations" to satisfy the EEOC exhaustion requirement. ⚑ *Butts,* 990 F.2d at 1403.

In this case, Plaintiff filed an EEOC charge on March 16, 2012 [1] alleging discrimination based on national origin and retaliation. *See* Dkt. No. 11–3 at 2. Plaintiff's EEOC charge states:

> I am a Hispanic female. I have worked for Respondent since 2006. I have filed multiple national origin discrimination charges with the New York State Division of Human Rights against Respondent. In retaliation for having filed multiple discrimination charges against Respondent, I have been subjected to harassment and different terms and conditions of employment. Some of the most recent incidents occurred since Autum[n][sic] 2011. My Supervisors continue to treat me unequally. My coworkers, Angela Reynolds, Alicia Bormer and Ann Mcbride are always being granted all sorts of training outside the Region with lodgin[g][sic], food and accommodations being paid for[ ], but I have not received the same training opportunity.
> *See id.*

### 1. Race Discrimination

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 143 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported In...

The Second Circuit has held that, because " '[a]n assertion of racial bias is conceptually distinct from a claim of discrimination on the basis of national origin,' raising a national origin claim before the EEOC does not automatically suffice to alert the agency to investigate incidences of racial discrimination." *Deravin,* 335 F.3d at 201 (quoting *Sinai v. New England Tel. & Tel. Co.,* 3 F.3d 471, 475 (1st Cir.1993)). While national origin and race are often distinct elements, "the term 'Hispanic' may trigger the concept of race." *Alonzo v. Chase Manhattan Bank, N.A.,* 25 F.Supp.2d 455, 459 (S.D.N.Y.1998) (finding "reasonable relation" between race and national origin when an employee described as Hispanic only checked the "national origin" box, and not the "race" box, in an EEOC charge).

**\*5** In the present matter, the Court finds that, since Plaintiff asserted an EEOC national origin charge and described herself as Hispanic, the national origin charges are reasonably related to racial claims; and, therefore, Plaintiff has sufficiently exhausted her administrative remedies in regards to her claims of race discrimination. *See Alonzo,* 25 F.Supp.2d at 459. Defendants' motion to dismiss Plaintiff's Title VII race discrimination claims for failure to exhaust administrative remedies is denied.

### *2. Retaliation*

In her EEOC charge, Plaintiff asserted that she had been "subjected to harassment and different terms and conditions of employment" in retaliation for filing discrimination charges against Defendants. *See* Dkt. No. 11–3. Defendants admit that Plaintiff satisfactorily exhausted her retaliation claim, but contend that the Title VII claim should be limited to the specific instance of retaliation—lack of training opportunities—that Plaintiff stated in her EEOC charge. *See* Dkt. No. 16 at 5.

The exhaustion requirement does not require a recital of each factual instance relied upon in a Title VII claim; rather, "a district court may 'hear Title VII claims that either are included in an EEOC charge or are based on [reasonably related] *conduct subsequent to the EEOC charge* ....' " *Danials–Kirisits v. N.Y. State Office of Court Admin.,* No. 05–CV–800S, 2013 WL 1755663, \*15 (W.D.N.Y. Apr.24, 2013) (quoting *Butts v. City of N.Y. Dep't of Hous.,* 990 F.2d 1397, 1401 (2d Cir.1993)) ("Thus, a reasonably related claim

applies only to alleged discriminatory conduct that occurred after the EEOC charge is filed") (internal quotations omitted).

Plaintiff has fulfilled the exhaustion requirement for her retaliation claim due to her specific statement of being denied training opportunities. *See* Dkt. No. 11–3 at 2. Plaintiff's allegation of "harassment and different terms and conditions of employment" in connection with her denial of training opportunities further supports her retaliation charge. *See id.* The Court finds these allegations sufficient to exhaust this claim; and, therefore, Defendants' motion to dismiss Plaintiff's Title VII retaliation claim for lack of exhaustion is denied.

### *3. Discrimination*

Defendants contend that a plaintiff's reference in an EEOC charge alleging that she filed previous discrimination complaints as a reason for retaliation does not, without other mention of discrimination, sufficiently exhaust the discrimination claim. *See* Dkt. No. 16 at 5 (citing *Shannon v. Ford Motor Co.,* 72 F.3d 678, 685 (8th Cir.1996)). While Plaintiff's *pro se* EEOC charge may be inartfully pled, liberally construing Plaintiff's statements that coworkers received benefits not afforded to her, in connection with her reference to her multiple previous discrimination charges and her national origin, the Court finds that the allegations were sufficient to exhaust this claim. *See Deravin v. Kerik,* 335 F.3d 195, 201–02 (2d Cir.2003). Specifically, Plaintiff mentioned that she has previously filed national origin discrimination charges against Defendants and that she was retaliated against for having filed those charges. *See* Dkt. No. 15–2. Thereafter, Plaintiff claims that she has been subjected to harassment and different conditions of employment, and that specifically identified coworkers have been granted training opportunities that she has not. *See id.* Liberally construed, these allegations are sufficient to withstand Defendants' motion to dismiss.

**\*6** Based on the foregoing, Defendants' motion to dismiss Plaintiff's Title VII discrimination claim for lack of exhaustion is denied.

### C. Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark,* 508 F.3d 106, 111–12 (2d Cir.2007)

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 144 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

(citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.

*See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed.R.Civ.P. 8(a) (2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting *Twombly,* 550 U.S.] at 557, 127 S.Ct. 1955, 167 L.Ed.2d 929). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly,* 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed[,]" *id.* at 570.

### *1. Title VII Claims*

#### *a. Hostile Work Environment*

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Gorzynski v. JetBlue Airways Co.,* 596 F.3d 93, 102 (2d Cir.2010) (quotation omitted). "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* (citation omitted). "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' " *Id.* (citation omitted). Moreover, the alleged hostile work environment must have been created by conduct relating to a characteristic protected by Title VII. *See Gregory v. Daly,* 243 F.3d 687, 692 (2d Cir.2001).

**\*7** "Beyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer." *Gorzynski,* 596 F.3d at 103 (citation omitted). "When ... the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Id.* (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

It has been repeatedly held that "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not objectively severe enough to establish a hostile work environment. *Faragher v. City of Boca Raton,* 524 U.S. 775, 778, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The test not only looks at isolated incidents, but requires consideration of all the circumstances present in the workplace contributing to its environment, such as the amount that the alleged conduct interferes with an employee's work performance, its frequency, severity, and threatening nature. *See Harris,* 510 U.S. at 23.

Plaintiff alleges that, starting in 2007, she had been the victim of several repeated instances of noteworthy conduct. Specifically, Plaintiff claims that hangman's nooses, cans with "bullshit" painted on them, pairs of eye balls and bull's-eye targets were placed near her workstation, after she made it known that this conduct offended her. *See* Dkt. No. 9 at 6–8.

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 145 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported In...

Plaintiff has been barricaded in her workplace, her personal items have been thrown away, and she has been hit in the head by co-workers. *See id.* Moreover, Plaintiff alleges that her car was vandalized and derogatory terms such as "spic" and "wildlife" were used towards her. *See id.*

These allegations rise above the ordinary tribulations of the workplace and are sufficient to satisfy the objective prong. *See id.* Moreover, Plaintiff's complaint sufficiently alleges that she had the subjective view that these instances were sufficiently abusive as evidenced by her multiple DHR complaints of a hostile work environment. Accordingly, the Court finds that Plaintiff has sufficiently pled a claim for hostile work environment; and, therefore, Defendants' motion to dismiss this claim is denied.

#### b. Disparate Treatment

Title VII states that it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual ... because of such individual's race ... or national origin." 42 U.S.C. § 2000e–2(a)(1) (2013). To assert a prima facie Title VII disparate treatment claim, a plaintiff must establish that:

> (1) [s]he is a member of a protected class; (2)[s]he is competent to perform the job or is performing h[er] duties satisfactorily; (3)[s]he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on h [er] membership in the protected class.

**\*8** *Dotson v. City of Syracuse,* No. 5:11–CV–620, 2013 WL 1293775, \*10 (N.D.N.Y. Mar.27, 2013) (citations omitted). At the pleading stage, however, a plaintiff need not establish a prima facie case, and can survive a motion to dismiss by asserting a plausible claim that "gives the defendant fair notice of the plaintiff's claim, the grounds upon which it rests and indicate[s] the possibility of discrimination." *Acosta v. City of N.Y.,* No. 11 Civ. 856, 2012 WL 1506954, \*5 (S.D.N.Y. Apr.26, 2012) (citation omitted).

To constitute a Title VII adverse employment action, there must be a "materially adverse" change in working conditions which "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, ... or other indices ... unique to a particular situation." *Giscombe v. N.Y.C. Dep't of Educ.,* No. 12 Civ. 464, 2013 WL 829127, \*5 (S.D.N.Y. Feb. 28, 2013) (citations omitted); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significant different responsibilities, or a decision causing a significant change in benefits"). Further, a "tangible employment action in most cases inflicts direct economic harm" and "requires an official act of the enterprise" which must be done with the "official power of the enterprise," not merely harm inflicted by a co-worker. *Burlington Indus.,* 524 U.S. at 762.

The plaintiff must "raise a plausible inference that the action was taken on account of [her] race or national origin." *Acosta,* 2012 WL 1506954, at \*5; *see also Griffin v. Brighton Dental Group,* No. 09–CV–6611P, 2013 WL 1221915, \*5 (W.D.N.Y. Mar.5, 2013) ("Evidence that an individual was treated differently from other employees, standing alone, is insufficient to prove discrimination"). Evidence that the plaintiff was treated less favorably than other, similarlysituated employees who were not a member of the plaintiff's protected class supports an inference of discriminatory intent. *See Griffin,* 2013 WL 1221915, at \*6. Also, evidence that the plaintiff was subjected to offensive treatment, "such as name-calling, slurs, or bad jokes," directed at the plaintiff's membership in a protected class indicates discrimination. *Id.* (internal quotations omitted).

In the present matter, Defendants concede the first two elements, *i.e.,* that Plaintiff is a member of a protected class and that she was qualified for her position. *See* Dkt. No. 15–5 at 21. Regarding the alleged adverse employment, Plaintiff alleges that she was denied training opportunities and overtime pay that other, non-Hispanic employees were not. *See* Dkt. No. 9 at 6–7. This allegation, in connection with discriminatory comments directed towards Plaintiff—such as being called a "spic" and "wildlife," and being told to consider moving to Puerto Rico—give rise to an inference that Plaintiff suffered an adverse employment action because of her race or national origin. *See id.* Therefore, the Court

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 146 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported In...

denies Defendants' motion to dismiss Plaintiff's Title VII disparate treatment claim.

### c. Retaliation

**\*9** To avoid dismissal of a Title VII retaliation claim, a plaintiff must plausibly allege that: " '(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'

" *Gordon v. Bd. of Educ.,* 232 F.3d 111, 116 (2d Cir.2000) (quotation omitted). "Protected activity" includes any "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000). Proof of causation can be shown either indirectly through circumstantial evidence, or "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon,* 232 F.3d at 117. In order to show a retaliatory motive by means of circumstantial evidence, there must be temporal proximity between the adverse employment action and the protected activity. *See Muhammad v. Juicy Couture/Liz Clairborne, Inc.,* No. 09–Civ–8978, 2010 WL 4032735, \*6 (S.D.N.Y. July 30, 2010). "At the pleading stage, Plaintiff "need not establish [such] a prima facie case of discrimination, but must nonetheless allege evidence stating a plausible claim of retaliation." " *Stewart v. City of New York,* No. 11 Civ. 6935, 2012 WL 2849779, \*10 (S.D.N.Y. July 10, 2012) (quotation and other citation omitted).

When a plaintiff claims retaliation for filing previous complaints of discrimination, such complaints "are protected activity even when the underlying conduct complained of *was not in fact unlawful* so long as [the plaintiff] can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." *Amin v. Akozo Nobel Chems., Inc.,* 282 Fed. Appx. 958, 961 (2d Cir.2008) (internal quotations omitted).

In *Amin,* the Second Circuit found that the plaintiff met his burden of establishing retaliatory motive through evidence that he (1) repeatedly complained about discrimination and racism by employer, (2) was instructed to stop making such complaints, (3) persisted in making such complaints, and (4) was fired shortly after one such complaint. *See*

*id.* at 962. Even though the defendant claimed that the plaintiff was fired for "insubordinate behavior and difficulty in working effectively with others," the court held that the proffered reasons for the plaintiff's termination may have been pretextual, and the plaintiff fulfilled his burden of showing that "the employment decision of which he complains 'was more likely than not motivated, in whole or in part,' by unlawful reasons ." *Id.* (quotation omitted).

In the present matter, Plaintiff filed several claims of discrimination or harassment with various regulatory agencies. [2] *See* Dkt. No. 11–13 at 5–6. The Affirmative Action Office of the DEC issued a determination that probable cause existed as to Plaintiff's complaint of discriminatory treatment. *See* Dkt. No. 11–7 at 8. Moreover, as to Plaintiff's second DHR claim of retaliation, the office found that there is sufficient evidence to indicate that there is probable cause to believe that Plaintiff may have been subject to discriminatory treatment, including retaliation. *See* Dkt. No. 11–7 at 6. Plaintiff's other DHR claim was determined to not give rise to probable cause of discrimination. *See* Dkt. No. 11–11 at 2. The EEOC charge was dismissed because "most of [Plaintiff's] allegations [were] untimely (beyond 300 days) or [had] already been investigated by the NYSDHR." *See* Dkt. No. 11–2 at 2.

**\*10** While Plaintiff's alleged discrimination in these administrative complaints may not have been an actual violation of Title VII, her factual assertions, coupled with the findings of probable cause from the DHR, establish that Plaintiff acted with good faith and a reasonable belief that such violations existed. Moreover, the investigations clearly demonstrate that Defendants were aware of Plaintiff's protected activity. *See* Dkt. No. 11–8 at 8. The final two elements are satisfied by Plaintiff's termination letter. Defendants took adverse action against Plaintiff and a causal connection to the protected activity is demonstrated by the fact that she was terminated based upon "persistent and unfounded complaints that have disrupted the workplace, conduct that undermined the mission of the unit, insubordination, and time and attendance concerns." *See* Dkt. No. 15–3 at 2. Moreover, Plaintiff was terminated twenty-one days after filing her last complaint with DEC's Affirmative Action Office, and while this civil action was ongoing. *See* Dkt. No. 11–13 at 6.

Based on the foregoing, the Court finds that Plaintiff has plausibly alleged that her termination was, at least in part, due to her filing of previous discrimination complaints; and,

Case 6:22-cv-01398-LEK-ML Document 14 Filed 08/30/23 Page 147 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

therefore, denies Defendants' motion to dismiss the Title VII retaliation claim for failure to state a claim.

#### 4. HRL Claims

##### a. Discrimination and Retaliation

Discrimination and retaliation "claims under the HRL are evaluated using the same analytical framework used in Title VII actions." *Lore v. City of Syracuse,* 670 F.3d 127, 169 (2d Cir.2012). Accordingly, Defendants' motion to dismiss Plaintiff's HRL discrimination and retaliation claims for failure to state a cause of action is denied.

##### b. Aid and Abet

As explained below, Plaintiff has sufficiently pled that Defendants Tupaj and Garneau aided and abetted prohibited conduct in violation of HRL § 296(6). *See infra* Part (F)(2). Therefore, Defendants' motion to dismiss Plaintiff's HRL aid and abet claim for failure to state a cause of action is denied.

#### 5. Equal Protection

An equal protection violation requires a plaintiff to allege that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations...." *Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir.2000) (citations omitted). To establish an inference of discriminatory motive, the plaintiff must sufficiently plead "that other similarly situated individuals—who are outside of the protected class to which the plaintiff belongs—have been treated differently." *Faccio v. Landry,* No. 1:10–CV–785, 2012 WL 3637412, *3 (N.D.N.Y. Aug. 22, 2012); *see also Village of Willobrook v. Olech,* 528 U.S. 562, 563, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (recognizing equal protection claims where there is no rational basis for the difference in treatment between similarly situated individuals).

**\*11** Plaintiff indicates several incidents where she was allegedly treated differently from similarly situated individuals. First, Plaintiff was put on sick leave notification while other, nonHispanic employees were not. *See* Dkt. No. 9 at 9. Second, Plaintiff alleges that other, nonHispanic coworkers were afforded training opportunities that she was not. *See id.* at 7. Third, Plaintiff alleges that Defendants limited her overtime in spite of her seniority, while other

nonHispanic employees with less seniority were afforded overtime. *See id.* at 10.

Defendants failed to provide any explanation for the instances Plaintiff has alleged she was treated differently from similarly situated coworkers. *See* Dkt. No. 11–13 at 21–22. At this stage in the litigation, Plaintiff's allegations are sufficient to state a plausible equal protection claim. Accordingly, Defendants' motion to dismiss the Section 1983 equal protection claim for failure to state a claim is denied.

### D. Statute of Limitations

#### 1. Title VII Claims

In New York, an employee must file an EEOC charge within 300 days[3] after the alleged unlawful employment action occurred. *See* 42 U.S.C. § 2000e–5(e)(1). If a plaintiff files an EEOC charge that is timely as to any incident of discrimination, the continuing violations exception treats any related "incident of discrimination in furtherance of an ongoing policy of discrimination" as timely as well, "even if they would be untimely standing alone." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993), *abrogated in part on other grounds by Kasten v. Saint–Gobain Performance Plastics Corp.,* —— U.S. ——, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011). The continuing violations exception requires showing "specific discriminatory policies or mechanisms such as discriminatory seniority lists, or discriminatory employment tests." *Id.* (internal citations omitted); *see also Askew v. New York,* No. 1:09–CV–553, 2013 WL 450165, *7 (N.D.N.Y. Feb. 6, 2013) (quoting *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997)) ("[T]he mere allegation of the existence of such a policy would be sufficient to withstand a challenge for failure to state a claim ..."). The exception does not apply, however, to "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism." *Id.; but see Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (applying the continuing violations doctrine to "serial violations").

Hostile work environment claims are treated with a different approach because "[t]heir very nature involves repeated conduct." *Nat'l R.R. Passenger Corp.,* 536 U.S. at 115, 117 (2002) ("It does not matter, for purposes of [Title VII], that

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 148 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

some of the component acts of the hostile work environment fall outside the statutory time period"). Hostile work environment claims are judged by the cumulative affect of individual acts which may not be themselves actionable, but together amount to a one "unlawful employment practice." *See* 42 U.S.C. § 2000e–5(e)(1). To file a timely hostile work environment claim, the plaintiff need only show that one of the contributing acts occurred within the 300 day statutory requirement. *See* Nat'l R.R. Passenger Corp., 536 U.S. at 117.

**\*12** Plaintiff has listed several alleged instances of discriminatory or retaliatory conduct in the workplace starting after Defendant Tupaj assumed a supervisory role in early 2007. *See* Dkt. No. 9 at 5–8; Dkt. No. 11–8 at 3. Plaintiff alleges discriminatory conduct from at least nine named co-workers. *See* Dkt. No. 9 at 5–8. The alleged conduct includes, among others, comments about Plaintiff's national origin; co-workers placing objects near Plaintiff's work station that she considered offensive; requiring Plaintiff to provide extended notice for sick leave; denying Plaintiff from participating in training opportunities; and Defendant Tupaj's refusal to address Plaintiff's seniority after her transfer to Albany. *See id.* Plaintiff alleges that after she was transferred from Ray Brook to Albany, the same type of discriminatory conduct continued to occur because she "had made it known that [this conduct] offended her when she was assigned to Ray Brook." *See* Dkt. No. 9 at 7.

Plaintiff asserts that this conduct was the result of a policy to tolerate, condone, and encourage such conduct established and implemented by Defendants Tupaj and Gerould and that Defendant DEC "fostered the pervasively hostile work environment by failing to take action to remedy the situation and neglecting to provide diversity training." *See* Dkt. No. 9 at 8. This alleged discriminatory policy of the DEC is sufficient to invoke the continuing violations exception at the pleading stage. Plaintiff's transfer from Ray Brook to Albany does not establish a new, distinct continuing violation because the alleged conduct, the supervisors, and the alleged policy of the DEC remained essentially the same at each location. *See* Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir.1994) (finding a continuing violation even after plaintiff's three-year absence because the plaintiff "suffered the same kinds of harassment ... under the aegis of some of the same supervisory personnel").

Based on the foregoing, the Court denies Defendants' motion to dismiss the discriminatory conduct contributing to the alleged Title VII violations occurring before July 22, 2011.

#### 2. HRL Claims

New York has adopted the continuing violation doctrine for HRL violations, *see* Fleming v. Verizon N.Y., Inc., 419 F.Supp.2d 455, 465 (S.D.N.Y.2005). Since Plaintiff has alleged a continuing pattern of illegal conduct under the HRL, Defendants' motion to dismiss Plaintiff's HRL claims accruing before October 24, 2009 is denied.

#### 3. Equal Protection

In their reply brief, Defendants asserted a statute of limitations defense for Plaintiff's equal protection claim. *See* Compania del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venez., 341 Fed. Appx. 722, 724 (2d Cir.2009) ( "A district court enjoys broad discretion [ ] to consider arguments made for the first time in a reply brief"). Section 1983 claims arising in New York are subject to a three-year statute of limitations. *See* Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir.2002); N.Y.C.P.L.R. § 214 (McKinney 2013).

**\*13** While Plaintiff's failure to include dates of events listed in her complaint does not lead to dismissal of her claims at the pleading stage, the previously adjudicated DHR complaints provide a timeline for the conduct. *See* Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir.2007) ("The pleading requirements in the Federal Rules of Civil Procedure ... do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses"). Defendants contend that conduct that was adjudicated in the August 2008 and October 2008 DHR complaints occurred prior to the three year limitation for Section 1983 claims. Although Defendants correctly state that Section 1983 claims in New York are governed by a three-year statute of limitations, Defendants fail to address the continuing violation doctrine.

"Under the continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.' " Bermudez v. City of N.Y., 783

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 149 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

F.Supp.2d 560, 574 (S.D.N.Y.2011) (quoting *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001)). In the present matter, since it is unclear whether the alleged conduct would constitute a continuing violation and because this argument was first raised in Defendants' reply thereby depriving Plaintiff an opportunity to respond to the argument, the Court finds that dismissal on this ground is inappropriate at this time. *See Allen v. Egan,* 303 F.Supp.2d 71, 79 (D.Conn.2004) ("Determining whether the events comprising the basis for [plaintiff's] claim are part of a single, continuing course of conduct is fact-intensive, and therefore inappropriate at this stage of the proceedings. Defendants may, of course, re-assert this defense in a properly supported motion under Rule 56 of the Federal Rules of Civil Procedure"); *Bloom v. N.Y. City Bd. of Educ.,* No. 00 Civ. 2728, 2003 WL 1740528, *10 (S.D.N.Y. Apr. 2, 2003) (denying motion to dismiss as premature where the plaintiff alleged a continuing violation and set forth at least one timely adverse employment action alleged to be discriminatory).

Based on the foregoing, Defendants' motion to dismiss Plaintiff's equal protection claim as untimely is granted in part and the events adjudicated in the two 2008 DHR claims are dismissed with regards to Plaintiff's equal protection claim.

**E. Eleventh Amendment Immunity**

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This immunity extends to both state agencies and officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest.

*See, e.g., Daisernia v. State of N.Y.,* 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (citations omitted). Further, "[t]o the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) (citations omitted). Although this immunity bars recovery of "retroactive monetary relief" against a state, it does not shield against claims seeking "prospective injunctive relief." *Hutto v. Finney,* 437 U.S. 678, 690, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

*1.* *Section 1983 Claims*

**\*14** Plaintiff is seeking "all forms of relief recoverable under [Section 1983] including back pay, front pay and compensatory damages." *See* Dkt. No. 9 at 15. Plaintiff has asserted Section 1983 equal protection claims against the DEC and Defendant Martens in his official capacity as head of the DEC. *See id.* at 3. Plaintiff does not indicate whether Defendants Gerould and Tupaj are being sued in their individual or official capacities. *See id* . Defendants ask this Court to infer that Plaintiff's failure to specifically indicate the capacity in which Defendants Gerould and Tupaj are being sued should result in the determination that they are being sued in their official capacities. *See* Dkt. No. 11–13 at 20.

It is well-established that, on a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. *See Scutti Enters., LLC. v. Park Place Entm't Corp.,* 322 F.3d 211, 214 (2d Cir.2003). To the extent that Plaintiff has brought this claim against Defendants Gerould and Tupaj in their official capacities, the claims are dismissed. To the extent that the claims are brought against these Defendants in their individual capacities, however, dismissal is inappropriate at this time. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's official capacity equal protection claims for monetary damages. Further, the Court dismisses Plaintiff's official capacity equal protection claims against Defendants Martens and DEC for monetary damages.

*2. HRL Claims*

"[T]he New York Human Rights Law includes no waiver of the state's [Eleventh Amendment] immunity to suit in federal court." *Lambert v. Office of Mental Health,* No. 97–CV–1347, 2000 WL 574193, *7 (E.D.N.Y. Apr. 24, 2000). Therefore, Defendants' motion to dismiss Plaintiff's HRL discrimination and retaliation claims due to Eleventh Amendment immunity is granted in part and Plaintiff's HRL discrimination and retaliation claims against Defendant DEC and the individual Defendants sued in their official capacities are dismissed. [4]

**F. Personal Involvement**

Defendants argue that Plaintiff failed to allege the personal involvement of Defendants Gerould and Tupaj. *See* Dkt.

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 150 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

No. 11–13 at 20. Plaintiff alleges that Defendant Gerould minimized the Affirmative Action Office's finding of hostile work environment by calling it "embellished." *See* Dkt. No. 9 at 6. Plaintiff asserts that Defendant Tupaj minimized the importance of counseling memos issued to other dispatchers in response to the Affirmative Action Office's finding by calling them a "slap on the hand." *See id.* Further, Plaintiff claims that Defendant Tupaj criticized Plaintiff for requesting sick leave in advance and required her to provide doctors notes for sick leave absences, which was not required of other employees. *See id.* at 7. Plaintiff alleges that Defendant Tupaj "refused to address Plaintiff's seniority after her transfer to Albany." *See id.* at 8. Moreover, Plaintiff claims that both Defendants Tupaj and Gerould "fostered the pervasively hostile work environment by engaging in the improper conduct [themselves] and failing to take action to remedy the situation." *See id.* Defendant Fanelli is only named in the caption and nowhere in the body of the complaint. *See id.* at 1. The only mention of Defendant Martens in the complaint is as follows: "Defendant Joe Martens is the Commissioner of the Dept. of Environmental Conservation and is sued in his official capacity as head of the Dept. of Environmental Conservation ." *See id.* at 9.

**\*15** " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 🚩 § 1983.' " 🚩 *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quotation and other citations omitted). A defendant in a supervisory position may be found personally involved if:

> The defendant may have directly participated in the infraction, ... after learning of the [alleged constitutional] violation through a report or appeal, may have failed to remedy the wrong, ... [if he] created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, ... [or if he] was grossly negligent in managing subordinates who caused the unlawful condition.

🚩 *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (internal citations omitted). Merely naming a defendant as a party to the action without any further indication of participation in constitutional violations is insufficient pleading for purposes of personal involvement. *See Jaffer v. Chem. Bank,* No. 93 CIV. 8459, 1994 WL 392260, \*3 (S.D.N.Y. July 26, 1994) (citations omitted).

### 1. Equal Protection

Plaintiff claims that both Defendants Tupaj and Gerould —who were in supervisory positions during the relevant time periods—knew of the alleged discriminatory conduct against Plaintiff and that each of them failed to take adequate action to remedy the conduct of Plaintiff's coworkers. *See* Dkt. No. 9 at 6–8. Rather than relying on a "formulaic recitation" of the elements of the claim as Defendants suggest, Plaintiff provided specific factual allegations of instances where the Defendants failed to take adequate remedial measures. *See id.* at 6 (noting the lack of action after the Affirmative Action Bureau's probable cause finding of discriminatory conduct). These factual allegations, coupled with the allegation of condoning and fostering a pervasively discriminatory workplace, sufficiently plead Defendants Tupaj and Gerould's personal involvement. However, since Plaintiff only mentions Defendants Martens and Fanelli in the list of parties and the caption, Defendants' motion to dismiss the 🚩 Section 1983 equal protection claim for lack of personal involvement is granted as to Defendants Martens and Fanelli. *See Jaffer, 1994 WL 392260, at \*3* (holding that "[w]hen a complaint's caption names a defendant but the complaint does not indicate that the named party injured the plaintiff or violated the law, the motion to dismiss must be granted") (citations omitted).

### 2. HRL Aid and Abet

While an individual employee is not ordinarily subject to suit under the HRL, "[u]nder the aiding and abetting provision of NYHRL, an individual employee who actually participates in the conduct giving rise to a discrimination claim may be held personally liable." *Miotto v. Yonkers Pub. Sch.,* 534 F.Supp.2d 422, 427 (S.D.N.Y.2008); *see also* 🚩 N.Y. EXEC. LAW § 296(6) (McKinney 2013) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article"). In claims regarding the actions of a supervisor, a plaintiff need not allege that the said supervisor personally carried out the discriminatory conduct. 🚩 *See Lewis v. Triborough Bridge & Tunnel Auth.,* 77 F.Supp.2d 376, 384 (S.D.N.Y.1999). "Rather, the case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under HRL 🚩 § 296(6)." *Id.*

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 151 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

**\*16** As the analysis for personal involvement under HRL
§ 296(6) is essentially the same as a Section 1983
equal protection claim, the Court finds that Plaintiff has
sufficiently pleaded Defendants Gerould and Tupaj's personal
involvement. As such, the Court denies Defendants' motion
to dismiss Plaintiff's HRL aid and abet claim.

## G. Duplicative Claims

A Section 1983 claim may not "be brought to vindicate
rights conferred only by a statute that contains its own
enforcement structure, such as Title VII." *Alvarado v.
Metro. Transp. Auth., No. 07 Civ. 3561, 2012 WL 1132143,
\*16 (S.D.N.Y. Mar. 30, 2012).* Although Title VII claims are
not cognizable against individuals, individuals may be held
liable under Section 1983 for certain discriminatory acts.
*See Patterson v. County of Oneida, N.Y., 375 F.3d 206, 226
(2d Cir.2004); see also Gierlinger v. N.Y. State Police, 15 F.3d
32, 34 (2d Cir.1994)* ("A Title VII plaintiff is not precluded
from bringing a concurrent § 1983 cause of action, so
long as the § 1983 claim is based on a distinct violation
of a constitutional right"). Thus, claims against individual
defendants, "sued in their individual capacities under § [ ]
1983, are not automatically dismissable." *Id.*

Since Plaintiff has withdrawn her Title VII claims against
the individual Defendants, her equal protection claims against
Defendants Gerould and Tupaj in their individual capacities
are not duplicative of her Title VII claims. *See* Dkt. No. 15–
5 at 25 n. 5. Accordingly, Defendants' motion to dismiss
Plaintiff's Section 1983 equal protection claims against
Defendants Gerould and Tupaj as duplicative of her Title VII
claims is denied.

## H. Election of Remedies

"Any person claiming to be aggrieved by an unlawful
discriminatory practice shall have a cause of action ... unless
such person had filed a complaint hereunder or with any
local commission on human rights." N.Y. EXEC. LAW §
297(9) (McKinney 2013). Plaintiff incorrectly argues that the
election of remedies doctrine seeks to prevent only identical
claims. *See* Dkt. No. 15–5 at 28. To the contrary, "[c]laims
need not be identical in order to be barred by the state or city
election of remedies provision." *Rosario v. N.Y.C. Dep't of
Educ., No. 10 Civ. 6160, 2011 WL 1465763, \*2 (S.D.N.Y.*

Apr.15, 2011) ("Since the underlying facts of the claim [ ]
brought before the NYSDHR are almost identical to those
alleged in this case, the plaintiff's state law claims are barred
pursuant to NYSHRL § 297(9)").

Plaintiff filed discrimination claims with the DHR on or about
August 27, 2008, October 8, 2008, and March 30, 2010.
*See* Dkt. Nos. 11–5, 11–6, 11–9. The factual allegations in
these claims are set out in Part II(A) of this opinion. *See
infra* Part II(A). Since these allegations have been previously
adjudicated by the DHR, Defendants' motion to dismiss
Plaintiff's HRL claims insofar as they relate to the factual
allegations listed in Part II(A) is granted. [5]

## I. Personal Jurisdiction over Defendant Gerould

**\*17** Rule 4 of the Federal Rules of Civil Procedure states that
an individual may be served in a judicial district of the United
States by "following state law for serving a summons ... in
the state where the district court is located or where service is
made." FED. R. CIV. P. 4(e). Rule 308 of the New York Civil
Practice Law and Rules ("CPLR") states that an individual
may be served:

> by delivering the summons within
> the state to a person of suitable age
> and discretion at the actual place of
> business, dwelling place or usual place
> of abode of the person to be served
> and by either mailing the summons
> to the person to be served at his or
> her last known residence or by mailing
> the summons by first class mail to the
> person to be served at his or her actual
> place of business....

N.Y. C.P.L.R. § 308(2) (McKinney 2013); *see also* N.Y.
C.P.L.R. § 308(6) (" '[A]ctual place of business' shall include
any location that the defendant, through regular solicitation
or advertisement, has held out as its place of business").
Additionally, service may be effected by "delivering a copy
of the summons and of the complaint to the individual
personally." FED. R. CIV. P. 4(e) (2)(A). The purpose of the
service requirements is "to apprise interested parties of the
pendency of the action and afford them an opportunity to
present their objections." *Mullane v. Cent. Hanover Bank*

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 152 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

*& Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also* 🚩 *Durant v. Traditional Invs., Ltd.,* No. 88 CIV. 9048, 1990 WL 33611,\*3 (S.D.N.Y. Mar.22, 1990) ("[W]hen a defendant receives actual notice of a lawsuit brought against him, technical imperfections with service will rarely invalidate the service").

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." 🚩 *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may assert insufficiency of process by motion. "The burden is on the plaintiff to establish that his service was not insufficient. If the court determines that it was insufficient, the court may, but is not required to, dismiss the action. Alternatively, the court may grant leave to allow the plaintiff to cure the insufficiency." *Sajimi v. City of New York,* No. 07–CV–3252, 2011 WL 135004, \*3 (E.D.N.Y. Jan. 13, 2011) (internal citations omitted).

In the present matter, summonses were issued by the Court on October 25, 2012. *See* Dkt. No. 3. Further, the record indicates that, on November 16, 2012, Plaintiff attempted to serve Defendant Gerould at the Albany office, and this service was accepted by Jonathan Binder, a senior attorney with Defendant DEC. *See* Dkt. No. 5 at 6. On that same date, Plaintiff served the New York State Attorney General. *See id.* at 1. According to Defendant Gerould's affidavit, however, he was transferred from the Central Office in Albany to the Avon Office in April of 2011. *See* Dkt. No. 11–12 at ¶ 2. As such, Defendant Gerould claims that service was improper because the Albany Office was no longer his "actual place of business." N.Y. C.P.L.R. § 308(2).

 **\*18** As Defendants correctly point out, the term "actual place of business" has been defined as a place where the defendant is regularly physically present or regularly transacts business. *See Sajimi,* 2011 WL 135004, at \*3 (citation omitted). Although Defendant Gerould undoubtedly would have been properly served between May 2007 and April 2011 when he worked for the DEC out of the Albany Office, service was not proper on November 16, 2012— one year and eight months after he had been transferred to the Avon Office. *See Pierce v. Village of Horseheads Police Dept.,* 107 A.D.3d 1354, 1355–56, 970 N.Y.S.2d 95 (3d Dept.2013) (citations omitted); 🚩 *Lange v. Town of Monroe,* 213 F.Supp.2d 411, 420–21 (S.D.N.Y.2002). As

such, Plaintiff failed to properly serve Defendant Gerould and the Court does not have personal jurisdiction over him. Since service was not made within 120 days of filing the complaint, the Court must decide whether to dismiss the complaint against Defendant Gerould or whether Plaintiff should be provided with an extension of time to effect proper service. [6]

Rule 4 provides, in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

However, even, as here, "where good cause does not exist, courts remain free to exercise their discretion in extending the time for service." *Feingold v. Hankin,* 269 F.Supp.2d 268, 277 (S.D.N.Y.2003); *see also* 🚩 *Zapata v. City of New York,* 502 F.3d 192, 197 (2d Cir.2007) ("[A] district court may grant an extension in the absence of good cause, but it is not required to do so" (citation omitted)). In determining whether a discretionary extension is appropriate in the absence of good cause, courts consider the following four factors: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Beauvoir v. U.S. Secret Service,* 234 F.R.D. 55, 58 (E.D.N.Y.2006) (citations omitted); *see also Feingold,* 269 F.Supp.2d at 277 (citation omitted). With respect to the first factor, " '[c]ourts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis.' " *Id.* (citations omitted). Indeed, this factor alone may be sufficient to justify extending the time for service. *See id.* (citation omitted); *see*

Case 6:22-cv-01398-LEK-ML Document 14 Filed 08/30/23 Page 153 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

*also* Advisory Committee Notes to Fed. R. Civ. Proc. 4(m) ("Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action ...").

 **\*19** In the present matter, the first, second and fourth factors all weigh in favor of granting an extension to serve. First and most important, many of Plaintiff's claims against Defendant Gerould would be time barred because of the applicable statute of limitations. Second, it is apparent that Defendant Gerould had actual notice of the action, which he admits in his affidavit in support of the motion to dismiss. *See* Dkt. No. 11–12 at ¶ 5. The third factor weighs against Plaintiff because Defendant Gerould first raised this issue in the December 28, 2012 motion to dismiss the original complaint. However, the Court also finds that Defendant Gerould would not be prejudiced by an extension of time to serve him and that a fair balance of the four factors favors granting Plaintiff a discretionary extension under Rule 4(m). As such, Plaintiff will be given thirty days in which to effect service upon Defendant Gerould and Defendants' motion to dismiss on this ground is denied. If Plaintiff fails to effect service within thirty days of the filing date of this Memorandum–Decision and Order, Defendant Gerould will be dismissed from this action, without further order of the Court.

### J. Supplemental Jurisdiction

Defendants assert that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state HRL claims because all federal claims should be dismissed. *See* Dkt. No. 11–13 at 22. Since not all of Plaintiff's federal claims have been dismissed, Defendants' motion for this Court to decline supplemental jurisdiction is denied.

### K. Leave to Re-plead

Rule 15 of the Federal Rules of Civil Procedure states that a court should freely grant leave to re-plead "when justice so requires." FED. R. CIV. P. 15(2). It is "well-established that 'outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts.' " Harrison v. Enventure Capital Group, Inc., 666 F.Supp. 473, 479 (W.D.N.Y.1987) (quoting Nagler v. Admiral Corporation, 248 F.2d 319, 322 (2d Cir.1957)). For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead." Stern v. General Elec. Co., 924 F.2d 472, 477 (2d Cir.1991). Leave to amend a pleading need not be granted, however, if it would be futile to do so.

*See* O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 69 (2d Cir.2002) (citing Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir.1995)).

The amended complaint before the Court is Plaintiff's second pleading. *See* Dkt. No. 9. As discussed, the majority of claims dismissed were on substantive grounds and not due to inadequate pleading. First, Plaintiff voluntarily withdrew her Title VII claims against the individual Defendants. *See* Dkt. No. 15–5 at 25 n. 5. Second, Plaintiff's equal protection claim for events previously adjudicated in two 2008 DHR claims are dismissed for reasons of statutory limitations. Third, several of Plaintiff's claims against Defendants in their official capacities are precluded by the Eleventh Amendment. Fourth, portions of Plaintiff's HRL claims are dismissed based on the election of remedies doctrine, not due to insufficient pleading. As to Plaintiff's failure to plausibly allege Defendants Martens and Fanelli's personal involvement, Plaintiff has failed to provide the Court with any reasons to grant leave to re-plead. Moreover, Defendants would be prejudiced due to the length of time this action has already been pending and this issue was brought to Plaintiff's attention in Defendants' motion to dismiss the original complaint. Although Plaintiff filed an amended complaint in response to the motion, she failed to remedy this defect despite being placed on notice through Defendants' motion.

 **\*20** Based on the foregoing, the Court denies Plaintiff's request for leave to re-plead.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss the amended complaint is **GRANTED in part** and **DENIED** in part in accordance with this Memorandum–Decision and Order; [7] and the Court further

**ORDERS** that Plaintiff's request for leave to re-plead is **DENIED;** and the Court further

**ORDERS** that Plaintiff shall have **THIRTY (30) DAYS** from the filing date of this Memorandum–Decision and Order to

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 154 of 157

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

effect service on Defendant Gerould and file proof of such service with the Court; and the Court further

**ORDERS** that, if Plaintiff fails to effect service on Defendant Gerould within **THIRTY (30) DAYS** of the filing date of this Memorandum–Decision and Order, Defendant Gerould will be dismissed from this action, without further order of the Court.

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 6816787

## Footnotes

1    Although the EEOC charge states that the discrimination took place on March 16, 2012, this is apparently an error and the parties have treated the EEOC charge as filed on or about this date since no other indication of a date is included on the charge.

2    In March 2008, Plaintiff filed a discrimination charge with the DEC's Affirmative Action Office. In October 2008, Plaintiff filed hostile work environment and retaliation claims with DHR. On March 30, 2010, Plaintiff filed discrimination and retaliation charges with DHR. On May 18, 2012, Plaintiff filed a discrimination charge with the EEOC. On January 4, 2013, Plaintiff filed a hostile work environment and discrimination complaint with DEC's Affirmative Action Office.

3    The EEOC charge does not have a date on it and the parties have indicated that it was issued either on or around May 18, 2012 or sometime before May 2, 2012. Defendants argue that July 22, 2011 is the cutoff date for the statute of limitations. *See* Dkt. No. 11–13 at 18.

4    Plaintiff's HRL aid and abet claims against Defendants Tupaj and Gerould in their individual capacities are not dismissed on this ground.

5    This dismissal is only applicable to the HRL claims and does not have any impact on Plaintiff's Title VII or equal protection claims.

6    The Court notes that on May 28, 2013, Plaintiff apparently served Defendant Gerould with a summons and the amended complaint. *See* Dkt. No. 15–4. As Defendant correctly points out, this service was not effected within 120 days of filing the complaint. Rule 4(m) and the relevant case law, however, clearly articulate that the availability of a plaintiff to serve the complaint beyond the 120 day limit is a privilege that must be granted by the Court. *See* *Efaw v. Williams,* 473 F.3d 1038, 1041 (9th Cir.2007). As such, without first obtaining permission from the Court, Plaintiff's attempted service of the complaint on Defendant Gerould on May 28, 2013 was improper.

7    Plaintiff's remaining claims are Title VII retaliation, hostile work environment, and disparate treatment against Defendants Martens and DEC; Section 1983 equal protection claims against Defendants Gerould and Tupaj, individually; and HRL § 296(6) aid and abet claims against Defendants Gerould and Tupaj relating to events not mentioned in the 2008 DHR complaints.

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:22-cv-01398-LEK-ML    Document 14    Filed 08/30/23    Page 155 of 157

Jaffer v. Chemical Bank, Not Reported in F.Supp. (1994)

1994 WL 392260
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Shahsultan JAFFER, Plaintiff,

v.

CHEMICAL BANK, Stephen Donnelly, Hatter,
Donovan & McFaul; Margaret Taylor, individually
and as Judge of the Civil Court of the City of New
York, Small Claims Part, Administrative Office of
the Courts, City of New York, State of New York,
and "John & Jane Does" 1 Through 99, Defendants.

No. 93 CIV. 8459 (KTD).
|
July 26, 1994.

**Attorneys and Law Firms**

Shahsultan Jaffer, pro se.

Barry, McTiernan & Moore, New York City by Suzanne
M. Halbardier, for Chemical Bank, Stephen Donnelly, and
Hatter, Donovan & McFaul.

Paul A. Crotty, Corp. Counsel of the City of New York, New
York City by Bonnie Mussman, Susan Hartzell, for defendant
City of New York.

G. Oliver Koppell, Atty. Gen. of the State of New York, New
York City by Carolyn Cairns Olson, for New York State and
Judge Margaret Taylor.

*MEMORANDUM & ORDER*

KEVIN THOMAS DUFFY, District Judge:

**\*1**  Pursuant to 🚩 42 U.S.C. §§ 1981, 🚩1983, 🚩1985,
1986 and 🚩1988, plaintiff Jaffer ("Jaffer") claims that the
defendants have deprived her of constitutional rights, in
particular, access to the courts, the freedom to contract,
due process and equal protection. Defendants Chemical
Bank ("Chemical"), Stephen Donnelly ("Donnelly"), Hatter,
Donovan & McFaul ("the Hatter firm") move to dismiss
plaintiff Jaffer's complaint ("Jaffer") for lack of subject matter
jurisdiction and failure to state a claim upon which relief
can be granted pursuant to Rules 12(b)(1), 12(b)(6) and
12(c) of the Federal Rules of Civil Procedure. Defendant,

the City of New York ("City"), moves to dismiss Jaffer's
complaint for failure to state a claim upon which relief
can be granted pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure. Defendants the Honorable Margaret
Taylor, ("Judge Taylor"), the New York State Office of Court
Administration ("OCA") and the State of New York, ("the
State") move to dismiss Jaffer's complaint for lack of subject
matter jurisdiction and failure to state a claim upon which
relief may be granted pursuant to Rules 12(b)(1) and 12(b)
(6) of the Federal Rules of Civil Procedure. For the following
reasons, defendants' motions are granted.

*Facts*

Jaffer purchased a study course entitled "How to Buy a
Dollar for Forty–One Cents" for $535.84 at a seminar in
February, 1992. Jaffer charged this purchase to her Chemical
Master Card. Apparently, the study course was missing two
items. Jaffer notified Mr. Art Bob Carmano of this by letter
and requested a full refund. Jaffer then wrote to Chemical
Bank to credit her account for the full amount of the study
course. Chemical did so conditionally, and requested that
Jaffer supply Chemical with a copy of the purchase contract
and the applicable law stating that anything bought at a
seminar can be cancelled within five days. On May 2, 1992,
Jaffer outlined what she believed was the applicable law, but
was unable to supply a copy of the contract.

The seller of the study course, NuTech Enterprises, Inc.,
("NuTech") was willing to refund the cost of the course if
the course items received by Jaffer were returned to NuTech.
According to NuTech, however, the merchandise was never
returned and, consequently, Jaffer's Master Card account was
re-debited.

Plaintiff Jaffer then brought suit against Chemical in Small
Claims Court, New York County. Stephen Donnelly, of the
firm Hatter, Donovan & McFaul represented Chemical at
a hearing held before Judge Margaret Taylor on August
4, 1993. After hearing witnesses from both sides and
reviewing submitted documents, Judge Taylor ruled in favor
of Chemical Bank. On August 10, 1993 Jaffer filed a Notice
of Motion to Vacate the Judgment and for the Recusal of
Judge Taylor. Jaffer submitted a supporting affidavit alleging
fraud, illegality, and attorney and/or Court misconduct. Judge
Taylor denied Jaffer's motion to vacate on September 20,
1993. Subsequently, Jaffer filed a Notice of Findings of Fact
and Conclusions of Law which was opposed by Chemical

Bank. On October 19, 1993, Judge Taylor ruled that such findings of fact were unnecessary.

**\*2** Instead of appealing her case within the State's judicial system, Jaffer instituted this action in the Southern District of New York alleging civil rights violations pursuant to 42 U.S.C. §§ 1983, 1983, 1985, 1986 and 1988 and the Constitution and laws of the United States in December, 1993. Specifically, Jaffer alleges six causes of action, namely: (1) Constitutional and Civil Rights violations; (2) State Action; (3) Bad Faith and Tort Abuse of Process; (4) Fraud, Deceit and Bad Faith; (5) Intentional Infliction of Emotional Distress; and, (6) Breach of Fiduciary Duty.

### *Discussion*

This court has no subject matter jurisdiction in this instance. The jurisdiction possessed by this court is strictly limited. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923). As such, the district courts have no power to review state court proceedings. The only permissible review is by the superior state court and or the United States Supreme Court. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, (1983). In this instance, Jaffer was dissatisfied with Judge Taylor's decision on the merits of her case. In response to this adverse ruling, Jaffer sued not only Chemical Bank, but Chemical's lawyer Donnelly and his law firm, the Hatter firm, Judge Taylor and the City and the State and its agency the OCA in the Southern District of New York.[1]

Jaffer's claims against the New York State also must fail on an additional jurisdictional ground. The Eleventh Amendment bars federal courts from adjudicating § 1983 suits for legal or equitable relief brought by citizens against unconsenting states and agencies of such states. *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Alabama v. Pugh,* 438 U.S. 781, 782 (1978); *Edelman v. Jordan,* 415 U.S. 651, 662–63 (1974). The State has not consented to this suit. *See Dube v. State University of New York,* 900 F.2d 587, 594 (2d Cir.1990), *cert. denied,* 501 U.S. 1211 (1991); *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 40 (2d Cir.1977). Thus, plaintiff's claims against the State, and the OCA are barred on this ground as well. Furthermore, as Jaffer seeks money damages against Judge Taylor in her official capacity, the

State itself, in particular its Treasury, is the real party in interest. *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464 (1945). Thus, the suit against Judge Taylor is, in essence, a suit against the State, and again, cannot be maintained. *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989).

Although Jaffer's claims clearly fail in this court on jurisdictional grounds, they also fail on a number of other grounds as well. First, any allegation against Judge Taylor must fail as judges are immune for acts performed in their judicial capacity. *Mireles v. Waco,* 112 S.Ct. 286, 288 (1991). *See also Stump v. Sparkman,* 435 U.S. 349, 356 (1978). Here, Jaffer claims that Judge Taylor's adjudication of her case was unconstitutional. Indeed, "few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as the Supreme Court recognized when it adopted the doctrine in *Bradley v. Fisher,* 13 Wall. 335 (1872)." *Pierson v. Ray,* 386 U.S. 547, 553–54 (1967). Accordingly, Jaffer's claims against Judge Taylor would necessarily fail even if this court did have subject matter jurisdiction.

**\*3** Second, Jaffer also fails to state a valid cause of action against the City of New York. While *pro se* complaints are generally construed liberally for the purpose of Rule 12(b) (6) motions, *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Elliot v. Bronson,* 872 F.2d 20, 21 (2d Cir.1989), civil rights claims that are conclusory and factually unsupported may be dismissed. *See Thomas v. Beth Israel Hosp.,* 710 F.Supp. 935, 942 (S.D.N.Y.1989). Indeed, the City is only referred to once, and peripherally, in Jaffer's complaint and no allegation is made against it. When a complaint's caption names a defendant but the complaint does not indicate that the named party injured the plaintiff or violated the law, the motion to dismiss must be granted. *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981); *Rodriguez v. Chandler,* 641 F.Supp. 1292, 1294, n. 1 (S.D.N.Y.1986), *aff'd,* 841 F.2d 1117 (2d Cir.1988).

Third, even given the most liberal interpretation, Jaffer does not allege the existence of any policy or custom giving rise to a deprivation by the City of New York. Absent such an official policy or custom, a municipality or municipal corporation

**Jaffer v. Chemical Bank, Not Reported in F.Supp. (1994)**

Case 6:22-cv-01398-LEK-ML   Document 14   Filed 08/30/23   Page 157 of 157

may not be held liable under 42 U.S.C. § 1983. *Monell v. Dep't of Social Services,* 436 U.S. 658, 690 (1978). Thus, on these grounds as well, Jaffer's claims against the City must be dismissed.

Fourth, with regard to the private parties named as defendants in this action, the Complaint fails to support any allegation that these defendants acted under the color of state law to deprive Jaffer of her federal rights as required by 42 U.S.C. § 1983. *Rendell–Baker v. Kohn,* 457 U.S. 830, 838–42 (1982). Chemical, Donnelly and the Hatter firm are participants in a private state court litigation. They are not

working on behalf of the State or under color of State law and, consequently, are not subject to this suit for this reason as well as for the reasons discussed above.

For the foregoing reasons, the defendants' motion to dismiss Jaffer's complaint is granted.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1994 WL 392260

---

### Footnotes

1   While this complaint cannot survive defendants' Rule 12(b)(6), I believe it may be useful to discuss the other grounds upon which this action would falter. Jaffer is a *pro se* plaintiff who has brought at least one similar suit in this district. *See Jaffer v. Stone, et al.,* S.D.N.Y. 93 Civ 1865 (Patterson, J.) (Opinion and Order dated April 7, 1993). Hopefully, a somewhat detailed discussion of the legal issues presented may aid Jaffer in weighing the merits of bringing such suits in the future.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.